Clayeo C. Arnold, SBN 65070
M. Anderson Berry, SBN 262879
John T. Stralen, SBN 171227
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
carnold@justice4you.com
aberry@justice4you.com
jstralen@justice4you.com

*Attorneys for the Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JAMES LOH, SEAN MICHAEL SMITH, GIOVANY RICO, and BRADLEY REBER, individually, and on behalf of those similarly situated, | Case No.: 5:21-cv-06088 |
| | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| vs. | **DEMAND FOR JURY TRIAL** |
| FUTURE MOTION, INC., | |
| Defendant. | |

1.      Plaintiffs JAMES LOH, SEAN MICHAEL SMITH, GIOVANY RICO, and BRADLEY REBER ("collectively Plaintiffs") bring this action, on behalf of themselves and on behalf of all others similarly situated, against Defendant FUTURE MOTION, INC. ("Future Motion" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to Plaintiffs, individually, which are based on personal knowledge:

# I. NATURE OF THE ACTION

2.      This Class Action, as detailed herein, arises from the hazards and dangers posed by the manufacturing and design defects present in Defendant's Onewheel "electrically motorized board" and from Defendant's violations of state and federal consumer protection laws, and is brought on behalf of Plaintiffs and similarly situated Class Members who purchased or received the one-wheeled, electric powered "hoverboard" vehicles within the relevant time period.

3.      As detailed in this First Amended Complaint, each of the available Onewheel models (the Pint and the XR) have proven to be an *extreme* danger to riders.  Among other safety issues discussed herein, Defendant's Onewheel is riddled with inherent latent defects that, under certain foreseeable conditions cause the Onewheel to suddenly, and without sufficient warning, pitch forward and eject the rider at unsafe speeds.  When this phenomenon occurs, the vehicles throw the rider off of the board, face first toward the ground and/or into the surrounding terrain. This extremely hazardous – and in many cases *lethal* – event happens so consistently that users of the product coined the term "Nosedive" to describe such incidents.



4.      Defendant's Onewheel is marketed as a "safe" and "amazing riding experience" that riders can enjoy "with confidence every time you step on your board."  However, the product, among other hazards, has little-to-no practical safety measures and lacks sufficient warnings to prevent a rider from being forcefully ejected and seriously and/or permanently injured or killed by the Nosedive phenomenon.

5.    Plaintiffs by this action, on behalf of themselves and on behalf of those similarly situated Class Members, seek relief for the injuries they have sustained as the result of Defendant's violations of multiple federal and state laws, as recited herein.

## II. PARTIES

6.    Plaintiff JAMES LOH ("Mr. Loh" or "Plaintiff Loh") is a citizen of Hawaii, and resides in Honolulu, Hawaii.  Mr. Loh purchased a Onewheel Pint from Defendant, on or about April 1, 2021.  Mr. Loh used the product for personal transportation and recreational use on sidewalks, roads, paved paths, and beaches around his residence.  He reviewed the Onewheel's literature and safety manual. After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, Mr. Loh no longer operates the device. He is also unable to return the device, because it is no longer eligible for return.  Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Loh of the existence of the defect(s) set forth herein, prior to purchase.  Had Defendant disclosed such defects to him, or had such defects and dangers been known to him at the time of purchase, Mr. Loh would not have purchased the Onewheel.

7.    Plaintiff SEAN MICHAEL SMITH ("Mr. Smith" or "Plaintiff Smith") is a citizen of California, and resides in Acampo, California.  Mr. Smith purchased a Onewheel XR from Defendant, on or about July 10, 2020.  Mr. Smith used the product for personal transportation and recreational use on sidewalks, roads, and paved/unpaved paths around his residence and place of employment.  He reviewed the Onewheel's literature and safety manual.  After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, Mr. Smith no longer operates the device.  He is also unable to return the device, because it no longer eligible for return.  Mr. Smith did send the Onewheel back to Defendant for repair of the Nosedive issue, in or around October 2020; however, Defendant did not properly repair Mr. Smith's Onewheel XR and he still experienced Nosedive.  Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Smith of the existence of the defect(s) set forth herein, prior to purchase.  Had Defendant disclosed such defects to him, or

1  had such defects and dangers been known to him at the time of purchase, Mr. Smith would not

2  have purchased the Onewheel.

3      8.    Plaintiff GIOVANY RICO ("Mr. Rico" or "Plaintiff Rico") is a citizen of

4  California, and resides in Escondido, California.  Mr. Rico purchased a Onewheel Pint from

5  Defendant, on or about May 27, 2021.  Mr. Rico used the product for personal transportation and

6  recreational use on sidewalks, roads, parking lots, and paved paths around his residence and place

7  of employment in San Diego, California.  He reviewed the Onewheel's literature and safety

8  manual. After learning of and experiencing some of the hazards and dangers associated with the

9  foreseeable operation of the product, Mr. Rico no longer operates the device.  He is also unable

10 to return the device, because it is no longer eligible for return.  Neither Defendant, nor any of

11 Defendant's agents, dealers, or other representatives, informed Mr. Rico of the existence of the

12 defect(s) set forth herein, prior to purchase.  Had Defendant disclosed such defects to him, or had

13 such defects and dangers been known to him to him at the time of purchase, Mr. Rico would not

14 have purchased the Onewheel.

15     9.    Plaintiff BRADLEY REBER ("Mr. Reber" or "Plaintiff Reber") is a citizen of

16 Pennsylvania, and resides in Reading, Pennsylvania.  Mr. Reber purchased a Onewheel XR from

17 Defendant, on or about August 8, 2020.  Mr. Reber used the product for personal transportation

18 and recreational use on sidewalks, roads, parking lots, and paved paths around his residence.  He

19 reviewed the Onewheel's literature and safety manual.  After learning of and experiencing some

20 of the hazards and dangers associated with the foreseeable operation of the product, Mr. Reber

21 no longer operates the device.  He is also unable to return the device, as when he reached out to

22 return his defective product to Defendant they informed him that he would have to pay for

23 shipping and made no guarantees of repairing the device nor any offer of a refund.  Neither

24 Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Reber

25 of the existence of the defect(s) set forth herein, prior to purchase.  Had Defendant disclosed such

26 defects to him, or had such defects and dangers been known to him at the time of purchase, Mr.

27 Reber would not have purchased the Onewheel.

28

FIRST AMENDED COMPLAINT          4

10.     Defendant Future Motion, Inc. is a Delaware corporation, with all of its Onewheel vehicles being developed in, designed in, manufactured in, assembled in, and distributed from California.  Defendant Future Motion's principal business office and principal executive office are located at 1201 Shaffer Road, Santa Cruz, California, 95060.  Plaintiffs are informed and believe that decisions regarding Defendant Future Motion, Inc.'s development, design, manufacture, assembly, marketing, advertising and distribution were made in California.  Furthermore, Future Motion's website instructs that customer correspondence be directed to a California address.

11.     Moreover, at all times relevant to this First Amended Complaint, Defendant marketed, advertised, and sold its Onewheels in California, Hawaii, Pennsylvania, and throughout the remaining United States.

### III. JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) at least one Class Member is a citizen of a state difference than Defendant.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     The Northern District of California has personal jurisdiction over Defendant because Defendant conducts substantial business in California and in this District through online sales of the Onewheel vehicles.  Furthermore, Defendant Future Motion is headquartered in California and Defendant conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contacts with the State of California.

14.     Venue is proper under 28 U.S.C. § 1391, because Defendant does business in and is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  On information and belief, Defendant manufactures its products in Santa Cruz County and distributes its Onewheel vehicles throughout the United States, via online purchase platforms.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

**The Onewheel**

15.    Onewheel vehicles have been developed, designed, manufactured, assembled, tested, marketed, promoted, formulated, inspected, advertised, sold, and/or distributed by Defendant, since about 2013.  Upon information and belief, Defendant developed and designed not only the Onewheel products, but all of the subsystems that power it, including: motors, power electronics, battery modules, software and smartphone applications ("apps").  The product is marketed and advertised by Defendant as a form of safe transportation and recreation.

16.    Upon information and belief, Defendant developed, drafted, and published the owners' manuals, warranty booklets and information included with the Onewheel when purchased.  Furthermore, Defendant performed activities concerning but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of Onewheels throughout the United States, including but not limited to, the specific states of California, Hawaii, and Pennsylvania.

17.    The Onewheel is a self-balancing, battery-powered, electric transport, often referred to as an "electric skateboard."

18.    Defendant offers two models: the "Pint," which Defendant describes as small, light, nimble, and "for fun," and the "XR" which Defendant describes as fast, far, epic, and "for shredding."[1]

19.    Pricing for a Onewheel Pint starts at $950, and the Onewheel XR starts at $1,799. The complete package, called the "Elite Bundle," retails for $2,249.  Optional accessories, primarily enhanced colors and graphics, and other items can significantly increase the base prices for both models.

20.    Typically, "electrically motorized boards"[2] should go no more than 20 mph on a paved surface.  Defendant lists the "top speed" of the Pint model as 16 mph and the XR as 19

---

[1] *See* https://onewheel.com/pages/onewheel-pint-vs-onewheel-xr, "Compare," [last accessed September 15, 2021].

[2] For example, in California, an "electrically motorized board" is any wheeled device that has a floorboard designed to be stood upon when riding that is not greater than 60 inches deep and 18 inches wide, is designed to transport only one person, and has an electric propulsion system

mph.[3]    However, it is well-documented that Defendant's Onewheel vehicles are capable of carrying riders at greater speeds, as high as 26.1 mph or more.

21.    While these vehicles are also advertised and marketed as being capable of "go[ing] off-road" and "tackl[ing] almost any terrain,"[4] in practice, the Onewheel is most commonly ridden on paved surfaces (roads and sidewalks) near the flow of traffic, alongside pedestrian travel, and/or around other obstacles present in such environments.    Indeed, Defendant's website depicts users on the Onewheel in a variety of settings: crossing a street (with cars and pedestrians present), on dirt roads, on sidewalks, while carrying groceries in both hands,[5] at night, on the beach and in a variety of other settings.[6]



averaging less than 1,000 watts, the maximum speed of which, when powered solely by a propulsion system on a paved level surface, is no more than 20 miles per hour. The device may be designed to also be powered by human propulsion. (See Cal. Veh. Code, § 313.5.)

[3] See https://onewheel.com/pages/onewheel-pint-vs-onewheel-xr, "Compare," [last accessed September 15, 2021].

[4] See https://onewheel.com/pages/faq, "FAQ," "Can Onewheels go off-road?," [last accessed September 15, 2021].

[5] See https://onewheel.com/blogs/stories/meals-on-onewheels, 'Meals on Onewheels," [last accessed September 20, 2021].

[6] See https://onewheel.com/pages/about-us, "About Us," [last accessed September 15, 2021]; see also https://onewheel.com/pages/flowstate, "Flow State," [last accessed September 15, 2021].





22.     Users of Defendant's Onewheel can control certain basic aspects of and/or monitor the vehicle, in part, by using a smartphone application ("app") that the user downloads and installs on their smartphone.  The Onewheel app provides users with information about battery life, miles travelled, and speed, as well as other data.  The speed indicator in the app indicates that 26.1 is the maximum speed.  Defendant designed the app with knowledge, intention, and expectation that users will access, view, interact with, read, and evaluate information from the smartphone "app," while the users are concurrently riding the vehicle at speeds around 20 mph.

23.     Users of the Onewheel are still able to ride the vehicle without engaging with the app.  In such situations, there is no way for a user to know the precise speed they are traveling, miles traveled, battery charge, or other specifics regarding the "health" of the product while they are riding it.  These uses are only alerted to certain issues by warning lights that illuminate on the board, down by their feet.

24.     Future Motion's Onewheel vehicles are designed to accelerate when the front deck of the board is pushed downward.  Upon reaching its top speed, the front deck of the board automatically rises to level, and this action, defined by Defendant as "pushback," is supposed to be interpreted by the rider as a signal that the vehicle has reached its top speed.  "Pushback" can occur in other situations, as well.

25.     Defendant informs consumers that "pushback" is the board's way of telling riders that they are reaching the limits of performance and that the rider should ease up and/or slow down.  There are other warnings - lights at a user's feet (on the Onewheel vehicle itself) and on the app - that will provide similar information regarding speed, battery life, overcharge and other information.

26.     As described in the following paragraphs, Defendant's Onewheels have proven to be an extreme (and in many cases lethal) danger to riders, due to the aforementioned "pushback" feature often failing to warn riders by not activating at all, or by not activating at a noticeable level.  Moreover, Onewheels are extremely dangerous due to other latent defects that, under certain foreseeable conditions, cause the Onewheel to suddenly, and without sufficient warning,

seize and pitch forward, ejecting riders and throwing them off of the board, face-first toward the ground or launching them into traffic, objects, buildings, and/or other people nearby. This extremely hazardous event has happened to almost ever rider and has occurred with enough frequency *that it was the users of the product* that aptly coined the term "Nosedive" to describe it.

27.    While Nosedive appears to be the extreme danger experienced by most users, many users have also reported experiencing "tailspin," which is also a hazard that can result in severe injury and/or death.

**Onewheel's Dangerous Defects, Hazards, And Insufficient Warnings**

28.    As described herein, issues with the Onewheel's "pushback" and other design defects have caused numerous serious (and sometimes fatal) injuries to users in California, Hawaii, Pennsylvania, and throughout the United States. Said defects are present in each and every Onewheel, whether a user has actually experienced the hazard or not.

29.    As discussed in the preceding paragraphs, "pushback" purportedly warns the Onewheel user, during use, that the user is approaching the vehicle's limits. However, this "warning" can be too subtle for a rider to detect, or it completely fails to work at all, and the rider is launched into a Nosedive.

30.    In situations where "pushback" is unnoticed or fails, a rider will proceed to push the front deck of the board downward (to continue travelling forward) and the Onewheel will suddenly seize up. Riders experience this as a feeling that the motor simply seizes and cuts off, with the Onewheel coming to a complete and immediate halt. When this defect happens, riders are helpless to prevent their forward momentum from throwing them headfirst off the front of the Onewheel into Nosedive.

31.    The Onewheel is intentionally designed in a way that when it approaches its operational limits, the device has to work too hard to maintain operations and the less a rider is able to balance. The alternative causes damage to the unit. <u>The seize/halt of the Onewheel occurs because the vehicle is designed to protect itself from becoming damaged, rather than to protect the rider</u>.

32.    The Onewheel appears to seize/halt most often in the following scenarios: (1) when its battery fully discharges while underway, which the rider does not anticipate (due to the lack of an adequate warning signal or display that is visible to the rider and/or faulty components that fail to represent the true amount of available battery-life); (2) when the Onewheel reaches its top speed or is on an ascending or descending incline, where the rider does not receive, does not notice, or cannot heed "pushback" and attempts to further accelerate; (3) the Onewheel's battery (which is recharged while the rider is using the board, using kinetic energy) can become overcharged and trigger regeneration "pushback," which can also launch a rider into Nosedive, to save the battery from becoming damaged from said overcharge; and (4) if a rider attempts to accelerate too quickly.[7]

33.    A plethora of physical and mechanical factors can affect whether and how Nosedive (or the sensation of the board halting/seizing) can occur: battery health, how steep of a surface the rider is on, tire pressure, the rider's weight and/or position on the vehicle, an internal component failing, and other factors.  These variables make it virtually impossible for a rider to reasonably predict or detect how or when this inherently dangerous defect will activate.

34.    Other, similar electric board devices will continue to glide when and if there is a power cut off, shut down, or internal malfunction.  The Onewheel cannot glide, however, and it was not designed to do so.  It is constantly running power forward or pushing back.

35.    The Nosedive feature, pushback and seizure/halting of the vehicle, described herein, amongst other hazards, are part of the Onewheel's defective design and inherent dangerousness.

36.    Numerous Onewheel consumers have suffered serious injuries, and others have died, due to the Onewheel seizing and throwing them off the vehicle, without sufficient warning and despite proper use.  Others have gotten lucky and have only suffered minor scrapes and bruises, but are left in fear of what will happened the next time the vehicle seizes/halts and no

---

[7] Plaintiffs and Class Members, however, have experienced other types of device seizures/halting for no discernable reason.

longer will ride it.  This is especially true because Defendant is unable to fix the defect and/or has refused to fix it.

37.    Defendant knows, or should know, about this dangerous feature; however, there is inadequate warning about the "pushback" feature, and consequences of its failure, to give a rider sufficient notice – and, in some cases, any notice at all – that the vehicle may suddenly and abruptly stop.  Defendant failed to sufficiently disclose to and/or warn consumers of crucial facts regarding the Onewheel's exceptionally dangerous design features, which constitute patently unsafe defects.

38.    Defendant offered, for distribution and sale, the Onewheel XR and Pint models with the specific intention and purpose that these vehicles are used throughout the United States. In so conducting itself, Defendant represented to consumers that the Onewheels were safe, of merchantable quality, fit for their intended and reasonably foreseeable uses, and had sufficient protections and warnings regarding potential dangers and hazards which reasonable consumers, including Plaintiff and Class Members, would expect and assume to be provided, in order to make a decision whether to purchase or use a Onewheel.

39.    The defects and hazards described herein are inherent in every Onewheel made and could happened to any user, regardless of skill level and/or experience.

40.    Defendant's product was insufficiently tested and the product possessed one or more characteristics that give rise to an unreasonable risk of harm, and Future Motion intentionally, recklessly and/or failed to use reasonable care to provide an adequate warning of such dangerous characteristics of this product and its dangers to users of this product. Defendant's Onewheel products are unreasonably dangerous in construction and composition.

**Notice and Consumer Complaints**

41.    Reports of injuries, occurring due to the defects described herein, have been publicly posted on the internet for some years.  Despite Defendant's knowledge of the hazards posed by the Onewheel vehicles, Defendant failed to take any reasonable steps to prevent consumers such as Plaintiff and Class Members from injuring themselves.  Instead, Defendant continued to market its products online, representing that the device is a reliable, fun, and safe

device for transportation and recreation for all skill levels and most ages.  Meanwhile, incidents that could *and do* produce serious injuries continue to occur with remarkable frequency.

42.    In addition to the fact that Defendant knew or should have known of the dangers posed by the Onewheel's defects, droves of Onewheel owners have posted stories, pictures, and videos on social media websites and outlets,[8] as well as Defendant's website, and have requested that Defendant remedy and/or address the Nosedive and safety/warning issues and defects.  As such, Defendant is undoubtedly aware of these issues.

43.    Moreover, there is a feature on Future Motion's website where users can discuss issues in a forum.  There are over 240 posts related to the Nosedive phenomenon with over 70,000 views on Future Motion's website.  Many users have reported that they were not exceeding the speed limit and/or had sufficient battery life.  One consumer reported that the mono-wheel froze when riding at a slow speed with 50 percent battery.  Another consumer reported that the mono-wheel froze while riding on smooth pavement going only around 10 miles per hour.[9]  Other consumers who experienced the Onewheel seize/halt reported that they did not receive a warning through the device's pushback feature and were using the device as intended.

44.    The following posts are on the Defendant's website and on YouTube:

**"What is pushback", the one wheel talking head asks rhetorically. Pushback is a poorly thought out design feature where the board "warns" the rider that it will shut down to protect the motor (rider be damned). How about instead of the automatic nose dive to protect the motor, you engineer an auto slow down feature to protect the rider.**

**\*\*\***

**Yeah... my XR doesn't pushback. Ever. Does nosedive though. As my hospital bills can attest.**

---

[8] A search for "Onewheel crash," on YouTube, yields numerous pages of video footage and accounts of Onewheel crashes and injuries.  The same results occur when the same search is performed on Facebook, Google, Instagram, and Tiktok to name a few.

[9] *See* https://community.onewheel.com/tags/nosedive and
https://community.onewheel.com/tags/nose%20dive and
https://community.onewheel.com/topic/6944/nosediving and
https://community.onewheel.com/topic/8279/nosedive-on-flat-path-crash-3

\*\*\*

**You guys need to address the nosedive issue immediately. This is dangerous AF. If the OW is approaching it's limit it should give an alert sound and it should automatically slow down for 1min if it exceeds 19mph. Nosediving should NEVER happen!**

\*\*\*

**If a safety feature causes people to crash hard, head first, it's not rocket science to assume it's not a very good safety system. Kind of bedazzled why Onewheel hasn't figured that out yet and changed to a safer set up. Hard to take a company like that serious.**

\*\*\*

**push back is a joke it works some of the time but not all of the time. Going up hill especially it just releases and then you get thrown off like a bucking bronco. The app makes loud noises when you lift off the pad why does it not make loud noises when you are in push back? Seems like we need any update. All I can say people is WEAR PADS AND A HELMET PLEASE Flying off at 10mph is no joke.**[10]

45.     As demonstrated by these and other consumer complaints, Defendant either knows, or clearly should know, that its Onewheels are dangerously defective when being used as intended.    Notwithstanding this knowledge, Defendant took no reasonable steps to warn consumers of such dangers, because it realizes that it could not market and sell the Onewheel if it were to allow consumers to fully understand the severity of the hazard posed using its products.

46.     Despite its knowledge of the hazards posed by the Onewheel's defects, Defendant had failed, and continues to fail, to take reasonable steps to repair, recall, reasonably instruct, reasonably warn, disclose, and advise consumers – either before or after their purchase – of the extreme hazards associated with the vehicle.

47.     Despite notice and knowledge of the defect from the numerous complaints it has received: social media postings, videos and other complaints, and its own internal records, Defendant has not recalled and/or offered an adequate repair to the Onewheel, nor has it offered non-defective replacements to its customers.

---

[10] *See* https://onewheel.com/pages/faq and https://www.youtube.com/watch?v=WXYv3eq_9A4 (comments sections) [last accessed Aug. 6, 2021].

48.     Because Defendant advertises the vehicles as safe for almost any age and skill level, and because the literature provided with the Onewheel vehicles does not adequately disclose or address the dangerousness of the product, reasonable consumers are not likely to discover or have reason to discover what an unreasonably unsafe hazard their Onewheel poses. Neither Plaintiffs, the Class Members, nor any reasonable, objective consumer would have purchased a Onewheel, nor paid as much for them, had they known the true facts.  Facts which Defendant had to, did, and continues to intentionally conceal from Plaintiff and Class Members in order to be able to sell these extremely dangerous vehicles.

49.     Defendant sold and continues to sell the Onewheel to its significant financial gain, despite knowledge of the extreme danger posed by these sudden seizures and without taking reasonable steps to mitigate the unreasonable danger or disclose the danger to consumers like Plaintiffs and Class Members.

50.     As a result of Defendant's conduct and omissions, Plaintiff and Class Members purchased and/or otherwise came to own these inherently dangerous and defective vehicles.

51.     As discussed herein, when Class Members seek warranty coverage for the Defect, even within the warranty period, Defendant often fails to respond, fails to adequately respond, fails to repair the issue, and/or denies warranty coverage.  Despite Defendant's longstanding knowledge of the danger and defects as set forth herein, Defendant has refused to provide warranty coverage for the repairs when the such defects manifest.  Defendant further, with knowledge and deceptively, uses the defects set forth herein as a basis of voiding the warranty.

52.     Defendant has failed to institute any recall or supplemental warning to Plaintiffs and the Class Members, and Plaintiffs are informed and believe that Defendant has made no other efforts to mitigate for such known defects.

53.     Defendant intentionally, recklessly, and/or negligently: concealed, suppressed, and omitted the risks, dangers, defects, and disadvantages of its Onewheel Pint and XR models, and marketed, sold, and distributed these dangerous vehicles as a safe when, in fact, Defendant had reason to know, and did know, that the Onewheels were not safe or even useable at all for the intended purposes.  Defendant knew or should have known that the Onewheel  posed a serious

safety risk, including the risk of severe head injury, traumatic brain injury, broken bones, maiming, and other catastrophic physical injuries to all riders, including but not limited to Plaintiff and Class Members – and to persons or property in the vicinity, when the vehicles unexpectedly, suddenly, and inevitably seize and stop.

54.    Plaintiff and the Class Members have lost money and suffered monetary damages as a result of their purchases and use of Onewheel vehicles.  Plaintiff and Class Members paid a readily ascertainable amount for their Onewheels.  Plaintiff and Class Members have or will suffer further damage to the extent that they have or will incur the cost of replacing or retrofitting their Onewheels, and/or replacing them with other safe, merchantable products.

55.    As a result of Defendant's unfair, deceptive, and/or fraudulent business practices and other wrongful acts Onewheel owners, including Plaintiff and Class Members, have suffered injuries including an ascertainable loss of money and/or property and/or loss in value.

56.    This case seeks protection and relief for Onewheel owners for the harm they have suffered, and the safety risks they face, as the result of Defendant's breaches of express and implied warranties and Defendant's unfair, unlawful, and deceptive trade practices and violations of state and federal laws.

## V. CLASS ALLEGATIONS

57.    Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek to represent a Class defined as: all persons residing in the United States who purchased the Onewheel Pint or XR (the "Nationwide Class"), within the relevant statute of limitations period.  Excluded from the Class are persons who made such purchases for purpose of resale, all Court personnel involved in the handling of this case, Defendant, its affiliates, respective officers, directors and employees, and any entity that has a controlling interest in Defendant.

58.    Plaintiffs also seek, pursuant to Fed. R. Civ. P. 23(c)(5), to represent the following subclasses:

- All persons residing in the United States who purchased the Onewheel Pint or XR directly from Defendant Future Motion (the "Nationwide

Direct Purchase Subclass"), within the relevant statute of limitations period.

-All persons residing in California who purchased the Onewheel Pint or Onewheel XR (the "California Subclass"), within the relevant statute of limitations period.

-All persons residing in Hawaii who purchased the Onewheel Pint or Onewheel XR (the "Hawaii Subclass"), within the relevant statute of limitations period.

-All persons residing in Pennsylvania who purchased the Onewheel Pint or Onewheel XR (the "Pennsylvania Subclass"), within the relevant statute of limitations period.

59.    Together, all of the above subclasses shall be collectively referred to herein as "The Subclasses."

60.    Together, the California Subclass, the Hawaii Subclass, and the Pennsylvania Subclass shall be collectively referred to herein as the "State Subclasses."

61.    Together, the Nationwide Class, the Nationwide Direct Purchase Subclass, the California Subclass, the Hawaii Subclass, and the Pennsylvania Subclass shall be collectively referred to herein as the "Class."

62.    Subject to additional information obtained through further investigation and discovery, the above-described Class and Subclasses may be modified or narrowed as appropriate, including through the use of multi-state subclasses.  As such, Plaintiffs reserve the right to modify, change, or expand the Class definitions.

**Numerosity**

63.    Upon information and belief, the Class is so numerous and geographically dispersed that individual joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes that tens of thousands of Onewheels have been sold throughout the United States, including in California, Hawaii, and Pennsylvania.

**Existence and Predominance of Common Questions of Fact and Law**

64.     Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

- Whether the Onewheels are predisposed to the defects;

- Whether Defendant knowingly failed to disclose the existence and cause of the defects;

- When Defendant first learned of the defects;

- Whether Defendant's conduct constitutes a violation of the state consumer protection statutes and counts asserted herein;

- Whether Defendant's conduct violates the Magnuson-Moss Warranty Act;

- Whether Defendant's conduct constitutes a breach of express warranty;

- Whether Defendant's conduct constitutes a breach of implied warranty;

- Whether Defendant's conduct constitutes unjust enrichment; and

- Whether Plaintiffs and Class Members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

**Typicality**

65.     All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased a Onewheel with the defects.  Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

**Adequacy**

66.     Plaintiffs are adequate representatives because Plaintiffs' interests do not conflict with the interests of the Class and Sub-Classes that Plaintiffs seeks to represent, Plaintiffs have retained counsel that are competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the Class and Sub-Classes will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority**:

67.    A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's sales records, warranty claims, registration records, and the database of complaints.

**Injunctive Relief**

68.    Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

**COUNT ONE**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

69.    Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

70.    Defendant provided Plaintiffs and Class Members with the express warranties set forth herein.

71.    Specifically, Defendant warranted that its Onewheels were free from defects in materials or workmanship; and that in the event the said vehicles suffered from defects in either

of these respects, Defendant would correct such defects at no cost to Plaintiffs or Class Members.

72.     Additionally, Defendant further represented "Future Motion provides paid repairs for faulty products which are out of warranty."

73.     Defendant's Onewheels were not free from defects in materials or workmanship because the vehicles suffer from the defects alleged herein.

74.     Defendant has refused to and continues to refuse to comply with the terms of its warranty to correct the defects outlined herein.

75.     Plaintiffs have complied with their obligations under the express warranty at all times relevant herein.

76.     As a result of Defendant's breach of express warranty, Plaintiffs and Class Members have suffered damages.

77.     Defendant's conduct was done knowingly, wantonly, maliciously, and/or in conscious disregard for the rights of Plaintiffs and the Class and/or State Classes, justifying the imposition of punitive damages.

## COUNT TWO
## BREACH OF IMPLIED WARRANTY

### (On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)

78.     Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

79.     Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Onewheel vehicles. Defendant knew or had reason to know of the specific use for which the Onewheel vehicles were purchased.

80.     Defendant provided Plaintiffs and the Class Members with an implied warranty that the Onewheel vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Onewheel vehicles are not fit for their ordinary purpose of providing fun and safe transportation / recreation, at the time of sale or thereafter, because, *inter alia*, the Onewheel vehicles suffer from the defects set forth herein.

Therefore, the Onewheel vehicles are not fit for their particular purpose of providing fun and safe transportation / recreation.

81.    Defendant impliedly warranted that the Onewheel vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Onewheel vehicles and their components were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable and would not experience defects of the nature set forth herein; and (ii) a warranty that the Onewheel vehicles and their components would be fit for their intended use while the Onewheel vehicles were being operated.

82.    Contrary to the applicable implied warranties, the Onewheel vehicles and their components, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe product. Instead, the Onewheel vehicles suffer from defect(s).

83.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**COUNT THREE**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq*.)**
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

84.    Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

85.    Plaintiffs and the Class are "consumers" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(3).

86.    Defendant is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

87.    The Onewheel vehicles discussed herein are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

88.    The warranties described above are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

FIRST AMENDED COMPLAINT                21

89.    Defendant breached the express warranties by, amongst other breaches:

    a.    Providing warranties with the purchase of the vehicle, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    b.    Selling Onewheels that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

    c.    Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the component parts in order to remedy the defects.

90.    Plaintiff and the Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Onewheels.

91.    Defendant's breach of the express warranties has deprived Plaintiffs and the Class Members of the benefit of their bargain and have caused Onewheel vehicles to depreciate in value.

92.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

93.    Defendant has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiffs and the Class Members were not required to do so because affording Defendant a reasonable opportunity to cure its breach of written warranties would have been futile.  Defendant was also on notice of the alleged defects from the complaints and service requests it received from Class Members, as well as from their own warranty claims, customer complaint data, parts sales data and/or the numerous social media postings.

94.    As a direct and proximate cause of Defendant's breach of the written warranties, Plaintiffs and the Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and the Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

95.     Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

96.     Defendant has been, and continues to be, unjustly enriched, to the detriment of the Class, as a result of its conduct directed against Plaintiff and the Class Members and its resulting collection of money from the sale of the Onewheels.

97.     Defendant has unjustly benefitted through the unlawful and/or wrongful collection of money from the sale of the Onewheels, and continues to so benefit to the detriment and at the expense of Class Members.

98.     Defendant had knowledge that this benefit was conferred upon them.

99.     Accordingly, Defendant should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and Class Members, who seek disgorgement of Defendant's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution and/or rescission for the benefit of the Plaintiff and Class Members, in an equitable and efficient fashion to be determined by the Court.

100.    Plaintiff and the Class Members are entitled to the imposition of a constructive trust upon Defendant such that their enrichment, benefit and ill-gotten gains may be allocated and distributed equitably by the Court to and/or for the benefit of Class Members.

**COUNT FIVE**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -**
**BREACH OF EXPRESS WARRANTY**
**(Cal. Civ. Code §§ 1791.2 & 1793.2(d))**
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)**

101.    Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

102.    Plaintiffs and the Class Members who purchased Onewheels are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

FIRST AMENDED COMPLAINT                    23

103.    The Onewheels are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

104.    Defendant is a "manufacturer" of the Onewheels within the meaning of Cal. Civ. Code § 1791(j).

105.    Defendant made express warranties to Plaintiffs and the Class Members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

106.    Class Members have requested repairs of the defects set forth herein, pursuant to the express warranty, but have failed to receive such repairs.

107.    Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiffs and the Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Onewheels, or the overpayment or diminution in value of the vehicles.

108.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the Class Members are entitled to costs and attorneys' fees.

<u>**COUNT SIX**</u>
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF IMPLIED WARRANTY**
**(Cal. Civ. Code §§ 1791.2 & 1792)**
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)**

109.    Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

110.    Plaintiffs and the Class Members who purchased Onewheels are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

111.    The Onewheels are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

112.    Defendant is a "manufacturer" of the Onewheels within the meaning of Cal. Civ. Code § 1791(j).

113.    Defendants impliedly warranted to Plaintiffs and the other Class Members that the Onewheel vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

114.    However, the Onewheel vehicles do not have the quality that a reasonable purchaser would expect.

115.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; and (4) conform to the promises or affirmations of fact made on the container or label.

116.    The Onewheel vehicles would not pass without objection in the trade because of the defects alleged herein.

117.    The Onewheel vehicles are not fit for the ordinary purpose for which they are used because of the defects alleged herein.

118.    The Onewheel vehicles do not conform to the promises or affirmations of fact made by Defendant.

119.    Defendant breached the implied warranty of merchantability by manufacturing and selling Onewheel vehicles containing the defects alleged herein.   The existence of said defects have caused Plaintiffs and the other Class Members to not receive the benefit of their bargain and have caused Onewheel vehicles to depreciate in value.

120.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially impairs their value to Plaintiffs and the other Class Members.  Plaintiffs and the other Class Members have been damaged as a result of the diminished value of the Onewheel vehicles.

121.    Plaintiffs and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Onewheel vehicles, or the overpayment or diminution in value of their Onewheel vehicles.

122.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class Members are entitled to costs and attorneys' fees.

## COUNT SEVEN
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
#### (Cal. Bus. & Prof. Code § 17200, *et seq*.)
#### (On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)

123.    Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

124.    California Business & Professions Code section 17200, *et seq*., precludes unfair competition, i.e., the employment of any unlawful, unfair or fraudulent business acts or practices; and any unfair, deceptive, untrue or misleading advertising violate Cal. Bus. & Prof. Code section 17500.  This prohibition extends to any act, omission or conduct or pattern of activity engaged in within California which affects the rights of consumers within the State of California and elsewhere.

125.    In marketing and selling the Onewheel vehicles, and in otherwise causing the Onewheel vehicles to be placed into the stream of commerce for use by consumers nationally, in the State of California, and elsewhere without disclosing the serious hazard they posed, and in continuing to conceal this critical safety information regarding the dangers associated with the use of the Onewheels, Defendant knowingly made available for consumer use an inherently dangerous and patently unsafe product which is not safely useable for its intended purpose. Defendant was and remains obligated to disclose the hazards associated with the Onewheels because of the Class Members' reasonable expectation that the Onewheels would not, amongst other defects, under normal and expected use, suddenly and abruptly, halt, thereby ejecting riders into a Nosedive, creating the risk of permanent bodily injury or death.  In failing to disclose this and other critical safety issues, which were known and apparent to Defendant, but not reasonable consumers, including Plaintiffs and the Class Members, Defendant engaged in fraudulent, unlawful, and unfair conduct under Cal. Bus. & Prof. Code section 17200, as set forth herein.

126.    The conduct alleged in this First Amended Complaint is unlawful within the meaning of the UCL in that Defendant knowingly violated the state and federal laws addressed herein.

127. Defendant's conduct is unfair within the meaning of the UCL in that the alleged consumer injury is substantial, creating an unreasonable risk for catastrophic physical injury to any persons using the Onewheels. There is no countervailing benefit to having or continuing to conduct themselves in the wrongful manner averred to herein.

128. Were it not for the unfair competition of Defendant, Plaintiffs and the Class Members would not have purchased Onewheels and would not have subjected themselves to the risks inherent in the use thereof.

129. The Class Members have and will continue to suffer injury in fact and monetary loss as a direct result of Defendant's unfair competition in that each has expended money to purchase Onewheels and has potentially or actually expended money for the treatment of injuries sustained due to the use thereof.

130. As a result of Defendant's unfair competition, Plaintiffs and the Class Members are entitled to appropriate equitable relief including injunctive relief (including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and the Class Members with appropriate curative notice regarding the existence and cause of the design defect; and to correct its advertising and marketing practices as described herein), and available monetary relief in the form of restitution (including fluid recovery if certified as a class action). Plaintiffs are also entitled to recover penalties as well as an award of attorneys' fees for prosecuting this action.

## COUNT EIGHT
### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
(Cal. Bus. & Prof. Code § 17500, *et seq.*)
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)**

131. Plaintiffs and the Class Members repeat and reallege all other paragraphs, as though fully set forth in this Count.

132. California Business & Professions Code § 17500 states:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or

> disseminate or cause to be made or disseminated . . . from this state
> before the public in any state, in any newspaper or other publication,
> or any advertising device, . . . or in any other manner or means
> whatever, including over the Internet, any statement . . . which is
> untrue or misleading, and which is known, or which by the exercise
> of reasonable care should be known, to be untrue or misleading.

133.    Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

134.    Defendant has violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Onewheels as set forth in this Complaint were material and likely to deceive a reasonable consumer.

135.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, because of Defendant's unfair, unlawful, and/or deceptive practices.  In purchasing their Onewheels, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Defendant with respect to the safety and reliability of the vehicles.  Defendant's representations were untrue because the Onewheels are distributed with defects that can cause sudden stoppage that hurls the rider headfirst into the ground. Had Plaintiffs and the Class Members known this, they would not have purchased their Onewheels and/or paid as much for them.  Accordingly, Plaintiffs and the Class Members overpaid for their Onewheels and did not receive the benefit of their bargain and have caused Onewheel vehicles to depreciate in value.

**COUNT NINE**
**VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES &**
**CONSUMER PROTECTION LAW**
**(73 Pa. Stat. Ann. §§ 201-11, *et seq.*)**
**(On Behalf of the Pennsylvania Subclass)**

136.    Plaintiff Reber and the Pennsylvania Subclass repeat and reallege all other paragraphs, as though fully set forth in this Count.

137.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce ..." 73 PA. STAT. ANN. § 201-3.

138.    The Onewheel's design, manufacture, distribution, marketing, advertising, labeling, and sale of the Onewheel vehicles constitutes "trade and commerce" under 73 PA. STAT. ANN. § 201-2(3).

139.    Defendant violated the UTPCPL by: representing that the Onewheel vehicles have certain safety characteristics and benefits that they do not have (73 PA. STAT. ANN. § 201-2(4)(v)); failing to comply with the terms of a written guarantee or warranty given to the buyer (73 PA. STAT. ANN. § 201-2(4)(xiv)); and engaging in deceptive conduct which creates a likelihood of confusion or misunderstanding about the Onewheel vehicles (73 PA. STAT. ANN. § 201-2(4)(xxi)).

140.    Defendant's deceptive conduct and its false and misleading statements about Onewheel vehicle safety and dependability and omissions regarding the Nosedive and other defects set forth herein are facts that a reasonable person would have considered material in deciding whether or not to purchase (or how much they were willing to pay to purchase) the Onewheel vehicles.

141.    Defendant's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff Reber and members of the Pennsylvania Subclass, and were likely to mislead reasonable consumers, including Plaintiff Reber and the Pennsylvania Subclass.

142.    Had Defendant disclosed all material information regarding the Onewheel vehicle's defects, as alleged in this First Amended Complaint, Plaintiff Reber and the Pennsylvania Subclass would not have purchased the Onewheel vehicles or would have paid less to do so.

143.    Defendant's deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiff Reber, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Pennsylvania Subclass.

144.    Plaintiff Reber and the Pennsylvania Subclass justifiably acted or relied to their detriment upon Defendant's misrepresentations and omissions of fact, as evidenced by Plaintiff Reber's and the Pennsylvania Subclass' purchasing of Onewheel vehicles.

145.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Reber and the Pennsylvania Subclass have suffered ascertainable loss and actual damages.  Plaintiff Reber and the Pennsylvania Subclass would not have purchased the Onewheel vehicles or would have paid less for them had Defendant disclosed the truth about the defects alleged herein.  Plaintiffs Reber and the Pennsylvania Subclass also suffered diminished value of their Onewheel vehicles.

146.    Defendant had notice of its conduct as alleged herein.

147.    Pursuant to 73 PA. STAT. ANN. § 201-9.2(a), Plaintiff Reber and the Pennsylvania Subclass also seek an order for: actual and treble damages; appropriate injunctive relief (including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff Reber and the Pennsylvania Subclass with appropriate curative notice regarding the existence and cause of the design defect; and to correct their advertising and marketing practices as described herein); costs; and reasonable attorneys' fees.

**COUNT TEN**
**BREACH OF EXPRESS WARRANTY**
**(13 Pa. C.S. § 2101, *et seq*.)**
**(On Behalf of the Pennsylvania Subclass)**

148.    Plaintiff Reber and the Pennsylvania Subclass repeat and reallege all other paragraphs, as though fully set forth in this Count.

149.    Pursuant to 13 PA. C.S. § 2104, Defendant is and was at all relevant times a merchant with respect to the Onewheel vehicles.

150.    Pursuant to 13 PA. C.S. § 2313(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

151.    In its written express warranties, Defendant expressly warranted, amongst other warranties that it would "provide[] paid repairs for faulty products which are out of warranty."

152.    Defendant's written express warranties formed the basis of the bargain that was reached when Plaintiff Reber and the Pennsylvania Subclass purchased their Onewheel vehicles.

153.    Defendant breached its express warranty to repair defective parts and issues in the Onewheel vehicles.

154.    Further, Defendant has refused to provide an adequate warranty repair for the defects set forth in this First Amended Complaint, thus rendering the satisfaction of any notice requirement futile.  On information and belief customers that have presented their Onewheel vehicles for warranty repair due to the defects disclosed herein have been denied adequate repairs.

155.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Reber and the Pennsylvania Subclass whole and because Defendant has failed and/or has refused to adequately provide effective remedies within a reasonable time.

156.    Accordingly, recovery by Plaintiff Reber and the Pennsylvania Subclass is not limited to the limited remedy of repair, and Plaintiff Reber, individually and on behalf of the Pennsylvania Subclass, seeks all remedies as allowed by law.

157.    Also, as alleged in more detail in this First Amended Complaint, at the time that Defendant warranted and sold or leased the Onewheel vehicles, it knew that the vehicles did not conform to the warranty and were inherently defective, and Defendant improperly concealed material facts regarding its Onewheel vehicles.  Plaintiff Reber and the Pennsylvania Subclass were therefore induced to purchase or lease the Onewheel vehicles under false pretenses.

158.    Defendant had notice of its breach, as alleged herein.

159.    As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff Reber and the Pennsylvania Subclass have been damaged in an amount to be determined at trial.

**COUNT ELEVEN**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(13 Pa. Cons. Stat. §§ 2314 and 2A212)**
**(On Behalf of the Pennsylvania Subclass)**

160.    Plaintiff Reber and the Pennsylvania Subclass repeat and reallege all other paragraphs, as though fully set forth in this Count.

161.    Defendant is and was at all relevant times a "merchant" with respect to Onewheel vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of Onewheel vehicles under § 2103(a).

162.    The Onewheel vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

163.    A warranty that the Onewheel vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied in law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

164.    Onewheel vehicles, when sold and at all times hereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Onewheel vehicles are to be used. The Onewheel vehicles are inherently defective, as detailed in this First Amended Complaint.

165.    Plaintiff Reber and the Pennsylvania Subclass suffered injuries due to the defective nature of the Onewheel vehicles and Defendant's breach of the implied warranty of merchantability.

166.    Defendant had notice of its breach as alleged herein.

167.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Reber and the Pennsylvania Subclass have been damaged in an amount to be proven at trial.

**COUNT TWELVE**
**VIOLATION OF HAWAII'S UNFAIR**
**DECEPTIVE ACTS & PRACTICES STATUTE**
**(H.R.S. §§ 481A, et seq.)**
**(On Behalf of the Hawaii Subclass)**

168.    Plaintiff Loh and the Hawaii Subclass repeat and reallege all other paragraphs, as though fully set forth in this Count.

FIRST AMENDED COMPLAINT                32

169.    This cause of action is brought pursuant to Hawaii's UDAP, H.R.S. §§ 481A-1, et seq.

170.    Defendant is a "person" under H.R.S. § 481A-2, because it is a corporation.

171.    Defendant violated the UDAP by misrepresenting and omitting material facts regarding Subject Vehicles, and by engaging in the following practices proscribed by H.R.S. § 481A-3 in transactions that were intended to result in, and did result in, the sale of Onewheel vehicles:

      a.  representing that Onewheel vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

      b.  representing that Onewheel vehicles are of a particular standard, quality, or grade if they are of another;

      c.  advertising Onewheel vehicles with intent not to sell them as advertised; and

      d.  engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

172.    Defendant violated the UDAP by selling Onewheel vehicles it knew possessed defects, as set forth herein, exposing riders, pedestrians, and others on the road (cars, bicycles, etc.) to an unreasonable safety risk.  Defendant omitted from Plaintiff Loh and the Hawaii Subclass, to whom it had a duty to disclose, the material fact that the Onewheel vehicles were sold with defects, as set forth herein, that created an unreasonable safety risk.  This is a fact that a reasonable consumer would consider important in their purchase decision.

173.    Pursuant to H.R.S. § 481A-4(a), Plaintiff Loh the Hawaii Subclass seeks a court order enjoining the above-described wrongful acts and practices of Defendants, ordering Defendants to extend repair remedies to the Hawaii Subclass, and awarding restitution and disgorgement.

174.    Pursuant to H.R.S. § 481A-4(b), Plaintiff Loh and the Hawaii Subclass, seeks reasonable attorney's fees together with costs of suit.  Defendant willfully engaged in the above trade practices knowing them to be deceptive.

## COUNT THIRTEEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (H.R.S. § 490:2-314)
### (On Behalf of the Hawaii Subclass)

175.    Plaintiff Loh and the Hawaii Subclass repeat and reallege all other paragraphs, as though fully set forth in this Count.

176.    Defendant is and was, at all relevant times, a "merchant" with respect to Onewheel vehicles as defined by H.R.S. § 490:2-104, and manufactured, distributed, warrantied and/or sold Onewheel vehicles.

177.    Pursuant to H.R.S. § 490:2-314, a warranty that Onewheel vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold was implied by law in the instant transactions.

178.    Plaintiff Loh and the Hawaii Subclass purchased Onewheel vehicles manufactured and sold by Defendant in consumer transactions.

179.    Onewheel vehicles, when sold and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which they are used.  Onewheel vehicles left Defendant's possession and control with the defects alleged hererin and renders them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to public safety.  Plaintiff Loh and the Hawaii Subclass used their Onewheel vehicles in the normal and ordinary manner for which they were distributed and advertised.

180.    Defendant knew before selling or leasing the Onewheel vehicles to Plaintiff Loh and the Hawaii Subclass, or earlier, that the Onewheel vehicles were manufactured with the defects alleged herein that may cause the vehicles to among other things to inexplicably Nosedive, rendering Onewheel vehicles unfit for their ordinary purpose.

181.    Despite Plaintiff Loh and the Hawaii Subclass normal and ordinary use, maintenance, and upkeep, the Onewheel vehicles had defect that existed at the time Defendant transferred the Onewheel vehicles from its possession or control.  The defect rendered Onewheel vehicles unfit for their ordinary use and incapable of performing the tasks they were distributed, sold, and advertised to perform.

182.    As a result, the Onewheel vehicles are not of fair or average quality.  Nor would the vehicles pass without objection in the recreational transportation industry.  The fact that the defects set forth herein can cause and have caused death (and can and have resulted in numerous life-altering injuries) renders the Onewheel vehicles unsafe to use, and requires repair or replacement before safe, ordinary use can resume.

183.    All conditions precedent have occurred or been performed.

184.    Defendant had actual notice of its breach of warranty.  Through consumer complaints, warranty records, communications with its agents and employees *inter alia*, Defendant knew of the defect, the existence and ubiquity of which it knew much earlier.

185.    Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect.  Defendant knew when it first issued these warranties and their limitations that the defect existed, and that certain defects would void said warranties.  Defendant also failed to take necessary actions to adequately disclose or cure the defects after the existence of the defects came to the public's attention, and squandered its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses.  Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, cure its breaches of warranty, or otherwise attempt to resolve or address Plaintiff Loh's and the Hawaii Subclass' claims.

186.    As a direct and foreseeable result of the defect in Onewheel vehicles, as set forth herein.  Plaintiff Loh and the Hawaii Subclass have suffered diminution in the value of Onewheel vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Onewheel vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

187.    Plaintiff Loh and the Hawaii Subclass have had sufficient direct dealings with Defendant or its agents to establish privity of contract between themselves and Defendant.  Privity, nevertheless, is not required in this case because Plaintiff and the other Class Members were intended third-party beneficiaries of contracts between Defendant and its dealers;

specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of Onewheel vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff Loh and the Hawaii Subclass. Privity is also not required because Plaintiff Loh and the Hawaii Subclass' Onewheel vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

**COUNT FOURTEEN**
**BREACH OF EXPRESS WARRANTY**
**(H.R.S. § 490:2-313)**
**(On Behalf of the Hawaii Subclass)**

188.    Plaintiff Loh and the Hawaii Subclass repeat and reallege all other paragraphs, as though fully set forth in this Count.

189.    Defendant is and was, at all relevant times, a "merchant" with respect to Onewheel vehicles as defined by H.R.S. § 490:2-104, and manufactured, distributed, warrantied, and/or sold Onewheel vehicles.

190.    Defendant's written express warranties formed the basis of the bargain that was reached when Plaintiff Loh and the Hawaii Subclass purchased their Onewheel vehicles.

191.    When marketing, distributing, and selling Onewheel vehicles, Defendant expressly warranted to repair defective parts and issues in the Onewheel vehicles.

192.    Further, Defendant has refused to provide an adequate warranty repair for the defects set forth in this First Amended Complaint, thus rendering the satisfaction of any notice requirement futile. On information and belief, customers that have presented their Onewheel vehicles for warranty repair due to the defects disclosed herein have been denied adequate repairs.

193.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Loh and the Hawaii Subclass whole and because Defendant has failed and/or has refused to adequately provide effective remedies within a reasonable time.

194.    Defendant knew that the Onewheel vehicles had the defects set forth herein at the time of sale. Defendant breached express warranties when Defendant delivered Onewheel

FIRST AMENDED COMPLAINT                    36

vehicles that did not conform to its affirmations of fact and industry standards. Specifically, the Onewheel vehicles were not safe for ordinary use contrary to Defendant's advertising campaign and other written and oral representations that Onewheel vehicles are safe.

195.    Defendant breached its express warranty to repair defective parts and issues in the Onewheel vehicles.

196.    Defendant failed to adequately repair the Nosedive issue and other defects set forth herein. Specifically, despite Defendant's knowledge of the problem, Defendant failed to notify Plaintiff Loh and the Hawaii Subclass of the defect and to adequately repair, at no charge to said defects.

197.    All conditions precedent have occurred or been performed.

198.    Defendant had actual notice of its breach of warranty. Through consumer complaints, warranty records, inter alia, Defendant knew of the Nosedive and other defects, the existence and ubiquity of which it knew much earlier.

199.    Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed.

200.    Defendant also failed to take any actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, its breaches of warranty, or otherwise attempt to resolve or address Plaintiff Loh's and the Hawaii Subclass's claims.

201.    Plaintiff Loh and the Hawaii Subclass were damaged as a result of Defendant's breach of express warranty. As a direct and foreseeable result of Defendant's failure to repair the Onewheel vehicles, Plaintiff Loh and the Hawaii Subclass suffered diminution in the value of the Onewheel vehicles, out-of-pocket losses related to the repairing, maintaining, and

servicing their defective Onewheel vehicles, costs associated with arranging other forms of transportation, and other incidental and consequential damages recoverable under the law.

## **VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class and Subclasses as defined above;

B. Appoint Plaintiffs as the representatives of the Class and Subclasses and their counsel as counsel for the Class and Subclasses;

C. Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs, Class Members, and Subclass Members are entitled;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class and Subclass members with appropriate curative notice regarding the existence and cause of the design defect; and to correct the advertising and marketing practices as described herein;

F. Award reasonable attorney's fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.


Dated: September 28, 2021                    Respectfully submitted,


                                             */s/ M. Anderson Berry*
                                             M. Anderson Berry, Esq.

FIRST AMENDED COMPLAINT                    38

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clayeo C. Arnold, Esq.
John T. Stralen, Esq.
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
carnold@justice4you.com
jstralen@justice4you.com

*Attorneys for the Plaintiffs and the Class*