1  Clayeo C. Arnold, SBN 65070
   M. Anderson Berry, SBN 262879
2  John T. Stralen, SBN 171227
   **CLAYEO C. ARNOLD,**
3  **A PROFESSIONAL LAW CORPORATION**
   865 Howe Avenue
4  Sacramento, CA 95825
   Telephone: (916) 777-7777
5  Facsimile: (916) 924-1829
   carnold@justice4you.com
6  aberry@justice4you.com
   jstralen@justice4you.com
7
8  *Attorneys for the Plaintiffs and the Class*

9              **UNITED STATES DISTRICT COURT**
10            **NORTHERN DISTRICT OF CALIFORNIA**
                   **SAN JOSE DIVISION**
11

| | |
|---|---|
| 12 JAMES LOH, SEAN MICHAEL SMITH, GIOVANY RICO, and BRADLEY REBER, individually, and on behalf of those similarly situated, | Case No.: 5:21-cv-06088-EJD |
| | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| FUTURE MOTION, INC., | |
| Defendant. | |

22        1.    Plaintiffs JAMES LOH, SEAN MICHAEL SMITH, GIOVANY RICO, and

23  BRADLEY REBER ("collectively Plaintiffs") bring this SECOND AMENDED CLASS

24  ACTION COMPLAINT, on behalf of themselves and on behalf of all others similarly situated,

25  against Defendant FUTURE MOTION, INC. ("Future Motion" or "Defendant"). Plaintiffs make

26  the following allegations pursuant to the investigation of their counsel and based upon

27  information and belief, except as to the allegations specifically pertaining to Plaintiffs,

28  individually, which are based on personal knowledge:

## I. NATURE OF THE ACTION

2.      This Class Action, as detailed herein, arises from the hazards and dangers posed by the manufacturing and design defects present in Defendant's Onewheel "electrically motorized board" and from Defendant's violations of state and federal consumer protection laws, and is brought on behalf of Plaintiffs and similarly situated Class Members who purchased or received the one-wheeled, electric powered "hoverboard" vehicles within the relevant time period.

3.      As detailed in this Second Amended Complaint, each of the Onewheel models (the Pint and the XR) have proven to be an *extreme* danger to riders.  Among other safety issues discussed herein, Defendant's Onewheel is riddled with inherent latent defects that, under certain foreseeable conditions cause the Onewheel to suddenly, and without sufficient warning, pitch forward and eject the rider at unsafe speeds.  When this defect occurs, the vehicles throw the rider off of the board, face first toward the ground and/or into the surrounding terrain.  This extremely hazardous – and in some cases *lethal* – event happens so consistently that users of the product coined the term "Nosedive" to describe such incidents.



4.      Defendant's Onewheel is marketed as a "safe" and "amazing riding experience" that riders can enjoy "with confidence every time you step on your board."  However, the product, among other hazards, has little-to-no practical safety measures and lacks sufficient warnings to prevent a rider from being forcefully ejected and seriously and/or permanently injured or killed by the Nosedive phenomenon.

5.     Plaintiffs by this action, on behalf of themselves and on behalf of those similarly situated Class Members, seek relief for the injuries they have sustained as the result of Defendant's violations of multiple federal and state laws, as recited herein.

## II. PARTIES

6.     Plaintiff SEAN MICHAEL SMITH ("Mr. Smith" or "Plaintiff Smith") is a citizen of California, and resides in Acampo, California.  Mr. Smith purchased a Onewheel XR from Defendant on or about June 19, 2020.  Mr. Smith used the product for personal transportation and recreational use on sidewalks, roads, and paved/unpaved paths around his residence and place of employment.  He reviewed the Onewheel's literature and safety manual.  After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, Mr. Smith no longer operates the device.  He is also unable to return the device, because it is no longer eligible for return.  Mr. Smith contacted Defendant, worked with them on attempts to repair the device remotely, and even sent the Onewheel back to Defendant for physical examination and another repair attempt of the Nosedive issue, in or around October 2020; however, after those multiple attempts to fix the Nosedive issue, Defendant could not properly repair Mr. Smith's Onewheel XR and he still experienced Nosedive.

7.     Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Smith of the existence of the defect(s) set forth herein prior to purchase.  Had Defendant disclosed such defects to him, or had such defects and dangers been known to him at the time of purchase, Mr. Smith would not have purchased the Onewheel.

8.     Plaintiff GIOVANY RICO ("Mr. Rico" or "Plaintiff Rico") is a citizen of California, and resides in Escondido, California.  Mr. Rico purchased a Onewheel Pint from Defendant on or about May 27, 2021.  Mr. Rico used the product for personal transportation and recreational use on sidewalks, roads, parking lots, and paved paths around his residence and place of employment in San Diego, California.  He reviewed the Onewheel's literature and safety manual. After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, Mr. Rico no longer operates the device.  He is also unable to return the device, because it is no longer eligible for return.  Neither Defendant, nor any of

1   Defendant's agents, dealers, or other representatives, informed Mr. Rico of the existence of the

2   defect(s) set forth herein prior to purchase.  Had Defendant disclosed such defects to him, or had

3   such defects and dangers been known to him at the time of purchase, Mr. Rico would not have

4   purchased the Onewheel.

5       9.      Plaintiff BRADLEY REBER ("Mr. Reber" or "Plaintiff Reber") is a citizen of

6   Pennsylvania, and resides in Reading, Pennsylvania.  Mr. Reber purchased a Onewheel XR from

7   Defendant on or about August 8, 2020.  Mr. Reber used the product for personal transportation

8   and recreational use on sidewalks, roads, parking lots, and paved paths around his residence.  He

9   reviewed the Onewheel's literature and safety manual.  After learning of and experiencing some

10  of the hazards and dangers associated with the foreseeable operation of the product, Mr. Reber

11  no longer operates the device.  He is also unable to return the device; when he reached out to

12  return his defective product to Defendant, Defendant's representative informed him that he would

13  have to pay for shipping and made no guarantees of repairing the device nor any offer of a refund.

14  Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed

15  Mr. Reber of the existence of the defect(s) set forth herein prior to purchase.  Had Defendant

16  disclosed such defects to him, or had such defects and dangers been known to him at the time of

17  purchase, Mr. Reber would not have purchased the Onewheel.

18      10.     Plaintiff JAMES LOH ("Mr. Loh" or "Plaintiff Loh") is a citizen of Hawaii, and

19  resides in Honolulu, Hawaii.  Mr. Loh purchased a Onewheel Pint from Defendant, on or about

20  April 1, 2021.  Mr. Loh used the product for personal transportation and recreational use on

21  sidewalks, roads, paved paths, and beaches around his residence.  He reviewed the Onewheel's

22  literature and safety manual. After learning of and experiencing some of the hazards and dangers

23  associated with the foreseeable operation of the product, Mr. Loh no longer operates the device.

24  He is also unable to return the device, because it is no longer eligible for return.  Neither

25  Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Loh of

26  the existence of the defect(s) set forth herein prior to purchase.  Had Defendant disclosed such

27  defects to him, or had such defects and dangers been known to him at the time of purchase, Mr.

28  Loh would not have purchased the Onewheel.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

11.     Defendant FUTURE MOTION, INC. is a Delaware corporation, with all of its Onewheel vehicles being developed in, designed in, manufactured in, assembled in, and distributed from California.  Defendant's principal business office and principal executive office are located at 1201 Shaffer Road, Santa Cruz, California, 95060.  Plaintiffs are informed and believe that decisions regarding Defendant Future Motion, Inc.'s development, design, manufacture, assembly, marketing, advertising and distribution were made in California.  Furthermore, Future Motion's website instructs that customer correspondence be directed to a California address.

12.     Moreover, at all times relevant to this Second Amended Complaint, Defendant marketed, advertised, and sold its Onewheel XR and Pint models in California, Hawaii, Pennsylvania, and throughout the remaining United States.

### III. JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) at least one Class Member is a citizen of a state difference than Defendant, including Plaintiff Loh who resides in Hawaii and Plaintiff Reber who resides in Pennsylvania.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     The Northern District of California has personal jurisdiction over Defendant because Defendant conducts substantial business in California and in this District through online sales of the Onewheel vehicles.  Furthermore, Defendant Future Motion is headquartered in California and Defendant conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contacts with the State of California.

15.     Venue is proper under 28 U.S.C. § 1391, because Defendant does business in and is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  On information and belief, Defendant

manufactures its products in Santa Cruz County and distributes its Onewheel vehicles throughout the United States, via online purchase platforms.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

**The Onewheel**

16.     Onewheel vehicles have been developed, designed, manufactured, assembled, tested, marketed, promoted, formulated, inspected, advertised, sold, and/or distributed by Defendant since in or around 2013.  Upon information and belief, Defendant developed and designed not only the Onewheel products, but all of the subsystems that power it, including: motors, power electronics, battery modules, software and smartphone applications ("apps").  The product is marketed and advertised by Defendant as a form of safe transportation and recreation.

17.     Upon information and belief, Defendant developed, drafted, and published the owners' manuals, warranty booklets and information included with the Onewheel when purchased.   Furthermore, Defendant performed activities concerning but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of Onewheels throughout the United States, including but not limited to, the specific states of California, Hawaii, and Pennsylvania.

18.     The Onewheel is a self-balancing, battery-powered, electric transport, often referred to as an "electric skateboard."

19.     Until recently, Defendant offered two models: the "Pint," which Defendant describes as small, light, nimble, and "for fun," and the "XR," which Defendant describes as fast, far, epic, and "for shredding."[1]

20.     In late 2021, after the filing of the First Amended Complaint but before filing the Second Amended Complaint, Defendant introduced two new models of Onewheel boards.[2]

21.     Pricing for a Onewheel Pint starts at $950 and the Onewheel XR started at $1,799.  The complete package for the XR, called the "Elite Bundle," retails for $2,249.   Optional

---

[1] *See* https://onewheel.com/pages/onewheel-pint-vs-onewheel-xr, "Compare," [last accessed February 4, 2022].
[2] It is currently unknown whether the new Onewheel models have the same defects as the "XR" and "Pint" at issue in this lawsuit.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

accessories, primarily enhanced colors and graphics, and other items can significantly increase the base prices for both models.

22.     Typically, "electrically motorized boards"[3] should go no more than 20 mph on a paved surface.  Defendant lists the "top speed" of the Pint model as 16 mph and the XR as 19 mph.[4]  It is well-documented, however, that Defendant's Onewheel vehicles are capable of carrying riders at speeds as high as 26.1 mph or more.

23.     While these vehicles are also advertised and marketed as being capable of "go[ing] off-road" and "tackl[ing] almost any terrain,"[5] in practice the Onewheel is most commonly ridden on paved surfaces (roads and sidewalks) near the flow of traffic, alongside pedestrian travel, and/or around other obstacles present in such environments.

24.     Defendant does not market its Onewheels for extreme sports. Instead, Defendant markets them to everyday people and advertise the Onewheels as a fun and safe mode of transportation.  Defendant's website depicts users on a Onewheel in a variety of settings: crossing a street (with cars and pedestrians present), on dirt roads, on sidewalks, while carrying groceries in both hands,[6] at night, on the beach and in a variety of other settings.[7]

---

[3] For example, in California, an "electrically motorized board" is any wheeled device that has a floorboard designed to be stood upon when riding that is not greater than 60 inches deep and 18 inches wide, is designed to transport only one person, and has an electric propulsion system averaging less than 1,000 watts, the maximum speed of which, when powered solely by a propulsion system on a paved level surface, is no more than 20 miles per hour. The device may be designed to also be powered by human propulsion. (*See* Cal. Veh. Code, § 313.5.)

[4] *See* https:// https://onewheel.com/pages/faq, "What is the difference between Onewheel+ XR and Onewheel Pint?," [last accessed February 4, 2022].

[5] *See* https://onewheel.com/pages/faq, "FAQ," "Can Onewheels go off-road?," [last accessed February 4, 2022].

[6] *See* https://onewheel.com/blogs/stories/meals-on-onewheels, 'Meals on Onewheels," [last accessed February 4, 2022].

[7] *See* https://onewheel.com/pages/about-us, "About Us," [last accessed February 4, 2022]; *see also* https://onewheel.com/pages/flowstate, "Flow State," [last accessed February 4, 2022].

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD







25.     Defendant Future Motion's founder and CEO, Kyle Doerksen, who also invented, designed, and engineered the Onewheels, states that when he is asked, "Is a Onewheel [. . .] for fun or is it for going places?" that he responds, "Well, is your iPhone for work or for play," because "[y]ou can't really pick one, right, it is for both." [8]

26.     Defendant's Onewheels are further advertised and marketed for safe and easy transportation in highly populated urban areas. Mr. Doerksen states "you go to the mega cities and you see people zooming up and down the avenues on Onewheels," and that there are even Onewheel "experience centers," "the most notable which is at the Four Seasons in Kona in Hawaii," where vacationers can "can go on a sunset Onewheel cruise along the golf course." [9]

27.     Mr. Doerksen further states that the Onewheel is a great product for "people in Hollywood" to "use Onewheels to get around the lot," which he says "makes sense when you think about it, right? They're always carrying stuff, and so with Onewheel you don't have any

---

[8] *See* transcript of Piaggio Fast Forward podcast, Jeffrey Schnapp interview of Kyle Doerksen, Inventor and Chief Engineer of Onewheel and Founder and CEO of Future Motion, Inc., Episode 12, available at: https://www.piaggiofastforward.com/podcast/episode-12, August 28, 2020 [last accessed January 28, 2022].
[9] *Id.*

hand control or handlebars or whatever, so you've got both hands free to carry a tray of sandwiches or some fancy camera gear across the set."[10]

28.     Users of Defendant's Onewheel purportedly can control certain basic aspects of and/or monitor the vehicle, in part, by using a smartphone app that the user downloads and installs on their smartphone.  The Onewheel app provides users with information about battery life, miles travelled, and speed, as well as other data.  The speed indicator in the app indicates that 26.1 is the maximum speed.  Defendant designed the app with knowledge, intention, and expectation that users will access, view, interact with, read, and evaluate information from the smartphone app, while the users are riding the vehicle at speeds around 20 mph.[11]

29.     Users of the Onewheel are able to ride the vehicle without concurrently using the app.  However, there is no way for a rider to know the precise speed they are traveling, miles traveled, battery life, or other specifics regarding the "health" of the product while they are riding unless they consult the app.  Riders are only alerted to certain issues by warning lights that illuminate on the board, down by their feet.

30.     Future Motion's Onewheel vehicles are designed to accelerate when the front deck of the board is pushed downward.  Upon reaching its top speed, the front deck of the board is supposed to automatically rise to level, and this action, defined by Defendant as "pushback," is supposed to be interpreted by the rider as a signal that the vehicle has reached its top speed. But "pushback" can occur in other situations, as well.

31.     Defendant informs consumers that "pushback" is a safety mechanism and is the board's way of telling riders that they are reaching the limits of performance and that the rider should ease up and/or slow down.  There are other warnings - lights at a user's feet (on the Onewheel vehicle itself) and on the app - that will provide similar information regarding speed, battery life, overcharge and other information.

32.     As described in the following paragraphs, Defendant's Onewheels have proven to be an extreme (and in some cases lethal) danger to riders due to the aforementioned "pushback"

---

[10] *Id.*

[11] Vehicle Code § 23123.5 makes it illegal to hold a cellular telephone while operating a motor vehicle.

feature often failing to warn riders by not activating, or by not activating at a noticeable level. Moreover, Onewheels are extremely dangerous due to other latent defects that, under certain foreseeable conditions, cause the Onewheel to suddenly, and without any and/or sufficient warning, seize and pitch forward, ejecting riders and throwing them off of the board, face-first toward the ground or launching them into traffic, objects, buildings, and/or other people. This extremely hazardous event has occurred with enough frequency *that it was the users of the product* that aptly coined the term "Nosedive" to describe the defect.

## Onewheel's Dangerous Defects, Hazards, And Insufficient Warnings

33.    As described herein, issues with the Onewheel's faulty and inconsistent "pushback" function, along with potential other design and manufacturing defects that may be obscured by the defective "pushback" mechanism, have caused numerous serious (and sometimes fatal) injuries to users in California, Hawaii, Pennsylvania, and throughout the United States. These defects are present in each and every Onewheel XR and Pint, whether a user has actually experienced the hazard or not.

34.    As discussed in the preceding paragraphs, "pushback" purportedly warns the Onewheel user, during use, that the user is approaching the vehicle's limits. This purported "safety feature" is influenced by tire pressure, wind direction/speed, battery level, surface condition, velocity, grade, terrain, moisture, and the rider's stance/weight.

35.    This multitude of factors affects the performance of the product and informs the software's evaluation of whether the Onewheel is conforming to or exceeding its operational parameters. As a result, there is no way for a rider to determine or predict which factors are causing "pushback" when they experience it, if they can even detect it.

36.    "Pushback" is frequently too subtle for a rider to detect, or it completely fails to work at all, and the board's motor shuts down without any and/or any sufficient warning, which in turn causes the rider to be launched into a Nosedive.

37.    In situations where "pushback" is unnoticed or fails, a rider will proceed to push the front deck of the board downward (to continue travelling forward) and the Onewheel will suddenly stop. Riders experience this as a feeling that the motor simply seizes and cuts off and

the wheel locks in place, with the Onewheel coming to a complete and immediate halt. When the defect triggers this, riders are helpless to prevent their forward momentum from throwing them headfirst off the front of the Onewheel.

38.    The Onewheel is intentionally designed in a way that when it approaches its operational limits, the device has to work too hard to maintain operations and the less a rider is able to balance. The alternative causes damage to the unit. <u>The seize/halt of the Onewheel occurs because the vehicle is designed to protect itself from becoming damaged, rather than to protect the rider</u>.

39.    The Onewheel is supposed to first "pushback," but then if "pushback" goes unheeded,  it will seize/halt most often in the following scenarios, among others: (1) when its battery fully discharges while underway, which the rider does not anticipate (due to the lack of an adequate warning signal or display that is visible to the rider and/or faulty components that fail to represent the true amount of available battery life); (2) when the Onewheel reaches its top speed or is on an ascending or descending incline, where the rider does not receive, does not notice, or cannot heed "pushback" and attempts to further accelerate; (3) the Onewheel's battery (which is recharged while the rider is using the board, using kinetic energy) can become overcharged and trigger regeneration "pushback," which can also launch a rider into Nosedive, to save the battery from becoming damaged from overcharging; and (4) if a rider attempts to accelerate too quickly.

40.    By design the Onewheel also appears to seize/halt almost at random without any predictability as to when it will do so and without any detectable warning, such as "pushback" to alert the user that such a seizure is coming. As detailed throughout, Plaintiffs and many Class Members have experienced this seizure/halting at nowhere near the limits of the Onewheel's performance levels and without having received any warning that the board is about to stop. They had substantial charge in their batteries, but were nowhere near a full charge, none of them were traveling at top speed, they were all traveling along a level surface, and none of them were attempting to rapidly accelerate.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

41.    Nosedive appears to happen under two circumstances: (1) by design when the Onewheel boards are approaching the limits of their performance and either allegedly should or do "pushback" according to a complex (and unknown to the rider) combination of battery health, surface grade, tire pressure, rider weight and/or position on the vehicle, internal component health, vehicle speed, wind, weather, and other factors that make it virtually impossible for a rider to reasonably predict or detect how or when this inherently dangerous defect will activate; and (2) randomly and unpredictably, even at nowhere near any of the limits of the board's performance and under entirely normal "safe" operating conditions without any warning to the user, without any "pushback" and/or detectable "pushback," without any of Defendant's materials indicating that "pushback" should be occurring under such conditions, or predictability as to what conditions might lead to it occurring.

42.    The design of the Onewheel, which creates the circumstances and hazards set forth herein to occur, results in the Onewheel failing to perform as safely as an ordinary consumer would have expected it to perform when is used, or misused, in an intended and/or reasonably foreseeable way.

43.    Other, similar electric board devices will continue to glide when and if there is a power cut off, shut down, or internal malfunction.  This allows the rider to safely stop the device or step off. The Onewheel cannot glide, however, and it was not designed to do so.  It is constantly running power forward or pushing back.

44.    The Nosedive feature, "pushback" and seizure/halting of the vehicle, described herein, amongst other hazards, are part of the Onewheel's defective design and inherent dangerousness.

45.    Numerous Onewheel consumers have reported they have suffered serious injuries, and others have died, due to the Onewheel seizing and throwing them off the vehicle without sufficient warning and despite proper use.  Others have gotten lucky and have only suffered minor scrapes and bruises, but are left in fear of what will happened the next time the vehicle seizes and no longer will ride it.  This is especially true because Defendant is unable to fix the defect and/or has refused to fix it, despite nearly every rider of a Onewheel having experienced

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

a fall, as a result of this phenomenon. Despite knowing of the Onewheel's defects, Defendant continues to conceal this design flaw and perpetuates the misrepresentation that the incidents with Nosedive are almost always user error.

46.    Defendant represents that "ignoring safety warnings, including pushback, may result in loss of control, serious injury or death." Defendant actively conceals the dangerousness of the Onewheel, however, by repeatedly communicating to consumers and the public that users' Nosedive experiences (with the board seizing, failure of pushback, coming to a dead stop despite a sufficiently charged battery, etc.) are almost always the result of "user error" and a refusal of the rider to heed/respect the "pushback" warning. However, even experienced, athletic, highly skilled riders, with backgrounds in dangerous sports like skateboarding, snowboarding, and surfing have experienced the terrifying Nosedive phenomenon without user-error being a factor.

47.    Moreover, the Nosedive phenomenon happens often without any "pushback" or detectable "pushback" to be heeded by the user.

48.    Not only does "pushback" fail to warn riders that their boards are about to suddenly seize up and violently throw them from the board when it does activate, but it often does not activate at all and leaves users looking for a warning signal that never comes, making it impossible for them to avoid a nosedive.

49.    Defendant knows, or should have known, about this dangerous phenomenon; however, there is inadequate warning about the "pushback" feature, and/or regarding the consequences of its failure, to give a rider sufficient notice – and, in some cases, any notice at all – that the vehicle may suddenly and abruptly stop. Defendant failed to sufficiently disclose to and/or warn consumers of crucial facts regarding the Onewheel's exceptionally dangerous design features, which constitute patently unsafe defects.

50.    Defendant offered, for distribution and sale, the Onewheel XR and Pint models with the specific intention and purpose that these vehicles are used throughout the United States by individuals of almost any age, without any specific training beyond their website and app. In conducting itself as described throughout this Second Amended Complaint, Defendant represented to consumers that the Onewheels were safe, of merchantable quality, fit for their

intended and reasonably foreseeable uses, and had sufficient protections and warnings regarding potential dangers and hazards which reasonable consumers, including Plaintiff and Class Members, would expect and assume to be provided, in order to make a decision whether to purchase or use a Onewheel.

51.     The defects and hazards described herein are inherent in every Onewheel and happens to all user, regardless of skill level and/or experience.

52.     Defendant's product was insufficiently tested.   This is likely because the Onewheel's developers, as reported by Kyle Doerksen, Inventor and Chief Engineer of Onewheel and Founder/CEO of Future Motion, Inc., were "going about it as fast as [they could] in terms of developing and scaling."[12]

53.     Additionally, the product possesses one or more characteristics that give rise to an unreasonable risk of harm, and Future Motion intentionally, recklessly and/or failed to use reasonable care to provide an adequate warning of such dangerous characteristics of this product and its dangers to users of this product.   Defendant's Onewheel products are unreasonably dangerous in construction and composition.

**Plaintiffs' Experiences**

**Plaintiff Smith's Experiences With His Onewheel**

54.     Plaintiff Smith is a veteran of the United States Army and served both as an infantryman and as a pilot.  During his time in the Army Plaintiff Smith was trained in, among other things, various techniques for how to fall and/or jump out of vehicles without experiencing serious injuries.

55.     On or about June 19, 2020 Plaintiff purchased a Onewheel XR from Defendant.

56.     Plaintiff Smith first was exposed to the Onewheel by seeing other people using them.  After seeing this, and immediately prior to purchasing a Onewheel XR from Defendant,

---

[12] *See* transcript of Piaggio Fast Forward podcast, Jeffrey Schnapp interview of Kyle Doerksen, Inventor and Chief Engineer of Onewheel and Founder and CEO of Future Motion, Inc., Episode 12, available at: https://www.piaggiofastforward.com/podcast/episode-12, August 28, 2020 [last accessed January 28, 2022].

Plaintiff Smith visited Defendant's website and viewed the material Defendant posted on its website to research whether to purchase the Onewheel.

57.    The material Plaintiff Smith examined included videos and images of people riding Onewheels in various settings, including off road and in urban areas. In these videos and images people were shown carrying objects while riding Onewheels, and the Onewheel was made to appear to be easy to ride safely across these various uses and environments.

58.    Before purchasing his Onewheel XR, Plaintiff Smith watched Defendant's instructional videos on Defendant's website, including those on "pushback," how to safely charge, and how to use the Onewheel.

59.    From viewing this information on Defendant's website, Plaintiff Smith was left with the belief that so long as the user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding "pushback" when it occurred, the Onewheel would be safe and reliable.

60.    Additionally, in viewing this information on Defendant's website, including representations by Defendant that failure to heed "pushback" was the primary cause of accidents involving the Onewheel, Plaintiff Smith formed the belief that user error was the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's "pushback" feature. Plaintiff Smith relied on these images, videos, and instructions provided on Defendant's website in forming these beliefs.

61.    These beliefs were the basis for Plaintiff Smith's decision to purchase a Onewheel XR, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable. His beliefs were formed based on the images, videos, and instructions provided on Defendant's website.

62.    After purchasing his Onewheel XR, Plaintiff Smith downloaded the app for his mobile device that Defendant instructs its customers to use. On that app there are additional videos and demonstrations on how to use and operate the Onewheel XR including instructions regarding the "pushback" feature.

63.     It was only after viewing the safety and instructional videos provided and/or made available by Defendant and reading the literature provided by Defendant did Plaintiff Smith begin using his Onewheel XR.

64.     Plaintiff Smith followed Defendant's instructions and guidance for the safe operation of the Onewheel including never attempting to reach maximum speed, making sure to charge his Onewheel as directed, and being prepared to heed "pushback" if he experienced it.

65.     On or about July 4, 2020 Plaintiff Smith was operating his Onewheel XR on a level dirt trail in Sacramento County, California. On that day, Plaintiff Smith was following the instructions and guidance provided by Defendant for the safe operation of the Onewheel, including not attempting to reach maximum speed, having made sure to charge his Onewheel as directed, and was prepared to heed "pushback" if he experienced it.

66.     The trail Plaintiff Smith was traveling on was a man-made trail along the American River intended for bicycles, pedestrians, scooters, and other personal transportation devices.

67.     Plaintiff Smith was traveling less than 10 miles per hour, with approximately 50 percent charge in his Onewheel's battery, along this level dirt path when, without any warning, his Onewheel shut off and stopped short, coming to an immediate and full stop without any slowdown period at all. One moment his Onewheel was traveling at nearly 10 miles per hour, and the next moment it was completely stopped.

68.     As his Onewheel came to this sudden, violent, stop, Plaintiff Smith was thrown from straight into the ground, into a Nosedive, and received substantial lacerations and bruising to both legs.

69.     Plaintiff Smith did not experience any "pushback" at any point before or during his Nosedive.

70.     Plaintiff Smith received no warnings of any kind from the device, or the app connected to the device.

71.     After his Nosedive, despite the lack of warning, Plaintiff Smith relied on Defendant's communications, advertisements, and instructions and presumed that his incident was the result of user error.

72.     Over the next couple of months Plaintiff Smith's Onewheel continued to suddenly stop without warning while he was operating it.

73.     In one such incident Plaintiff Smith was traveling at approximately 12-15 miles per hour with approximately 40 percent charge in his Onewheel's battery and was fully prepared to heed "pushback," if he experienced it.  Plaintiff Smith was following all instructions provided by Defendant to operate the Onewheel safely.

74.     Despite following these instructions Plaintiff Smith's Onewheel, without any warning, shut off and stopped "short," coming to an immediate and full stop without any "slowdown" period at all.  One moment his Onewheel was traveling at approximately 12 miles per hour, and the next moment it was completely stopped.

75.     Plaintiff Smith was thrown from his Onewheel and would have hit the ground if he had not been able to use his military training to "run if off" without falling.

76.     Plaintiff Smith did not experience any "pushback" at any point prior to or during his Nosedive.

77.     Plaintiff Smith received no warnings of any kind from the device, or the app connected to the device.

78.     Having then concluding that the problems he was experiencing were not user-error after all, Plaintiff Smith contacted Defendant regarding his Onewheel's failures, transmitting the "diagnostic reports" that were generated by the device through the app.

79.     After several communications with Defendant and attempts by Defendant to repair his Onewheel remotely, Plaintiff Smith, on Defendant's instructions, made one final attempt to repair his Onewheel by sending it back to Defendant so that Defendant could examine the physical hardware and replace or correct any defective parts.

80.     Plaintiff Smith was informed by Defendant that, allegedly, there was a defect in the motherboard and charging system of his Onewheel.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

81.    After Defendant sent Plaintiff Smith his Onewheel back, claiming to have fixed the defect, Plaintiff Smith continued to experience the same problems with his Onewheel: it would, without any warning or "pushback," come to a sudden and violent stop.

82.    After these repeated failures to repair the Onewheel, initially remotely through instructing him on working through the diagnostics, and finally through Defendant physically attempting to repair his Onewheel directly, Plaintiff Smith determined that his Onewheel was inherently defective, not repairable, and unsafe to ride, no matter the precautions he took.

83.    Over the course of time when Plaintiff Smith rode his Onewheel, including multiple times when it came to a sudden, violent, stop, both before and after Defendant's attempts to repair it, Plaintiff Smith never once experienced the "pushback" safety feature Defendant focused so heavily in the instructional and marketing materials Plaintiff Smith relied on in deciding to purchase and use a Onewheel.

84.    Had Plaintiff Smith known that the Onewheel was defective, that the pushback feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning, he would not have bought one.

**Plaintiff Rico's Experiences With His Onewheel**

85.    Plaintiff Rico is an experienced skateboarder and roller-blader, having done both for most of his life.

86.    On or about May 27, 2021 Plaintiff Rico purchased a Onewheel Pint from Defendant.

87.    Plaintiff Rico was first exposed to the Onewheel by seeing people riding them in public and at his place of employment, the U.S. Naval Base in San Diego.

88.    Plaintiff Rico had a long walk (of nearly three miles) through a paved parking lot from where he was able to park his car to his place of work and thought that a Onewheel might save him time and effort.

89.    Plaintiff Rico decided to further investigate the Onewheel by going to Defendant's website and viewing the promotional and instructional videos and other materials found there.

90.    Plaintiff Rico viewed all of the promotional and instructional videos and other materials on Defendant's website that he was able to while he was investigating the Onewheel for purchase.  This includes having seen images, provided by Defendant, of children riding Onewheel devices and other images of people riding Onewheels while carrying various objects.

91.    From viewing this information on Defendant's website, Plaintiff Rico was left with the belief that so long as the user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding "pushback" when it occurred, the Onewheel would be safe and reliable to use.  Plaintiff Rico relied on these images, videos, and instructions provided on Defendant's website in forming these beliefs.

92.    Additionally, in viewing this information on Defendant's website, including representations by Defendant that failure to heed "pushback" was the primary cause of accidents involving the Onewheel, Plaintiff Rico formed the belief that user error was the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's "pushback" feature.

93.    These beliefs were the basis for Plaintiff Rico deciding to purchase a Onewheel Pint, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable, beliefs that were formed based on the images, videos, and instructions provided on Defendant's website.

94.    Based on these beliefs, Plaintiff Rico formed a plan to purchase a Onewheel Pint, familiarize himself with the device, and then give his Pint to his minor son and to purchase a Onewheel XR for himself, as a potential father-son bonding activity.

95.    After purchasing his Onewheel Pint, Plaintiff Rico downloaded the app for his mobile device that Defendant instructs its customers to use.  On that app there are additional videos and demonstrations on how to use and operate the Onewheel Pint, including instructions regarding the "pushback" feature.

96.    It was only after viewing the safety and instructional videos provided and/or made available by Defendant, and reading the literature provided by Defendant, did Plaintiff Rico begin using his Onewheel Pint.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

97.　Not having ridden a Onewheel before, and being aware of the potential dangers from operating such a device without familiarity with it, Plaintiff Rico decided to take his Onewheel Pint on a series of "test rides" on the cul-de-sac in front of his house when there was no traffic.

98.　As Plaintiff Rico grew more confident in riding the Onewheel through these test rides, he still noted that the device seemed to require a far greater deal of attention and focus than Defendant's promotional and instructional materials presented.

99.　In or around June 2021, while on one of his "test rides" of the Onewheel Pint (and traveling along a level surface at only 2-3 miles per hour), while making a gentle and wide turn, Plaintiff Rico hit a very small bump or rock in the road.

100.　Upon hitting this small bump or rock Plaintiff Rico's Onewheel immediately and rapidly accelerated and then equally rapidly decelerated throwing Plaintiff Rico from his Onewheel and into a sidewalk.

101.　Plaintiff Rico sustained injuries including scrapes and bruises on his back and legs.

102.　Plaintiff Rico's Onewheel continued moving after ejecting him and struck the curb.

103.　After this point, Plaintiff Rico's Onewheel would no longer function.

104.　Plaintiff Rico called Defendant to report the errors and request that his Onewheel be fixed. Defendant informed him that he would have to pay to ship his Onewheel to Defendant, and that they would charge him for any repairs, other than those found to be inherent defects in the device.

105.　Plaintiff Rico decided that he considered the Onewheel inherently unsafe and that it was not worth the cost to repair it, as he did not wish to continue to ride his Onewheel anyway.

106.　Had Plaintiff Rico known that the Onewheel was defective, that the "pushback" feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning, he would not have bought one.

1

**Plaintiff Reber's Experiences With His Onewheel**

2   107.   Plaintiff Reber is also an experienced skateboarder and roller-blader, having done

3   both for most of his life.

4   108.   On or about August 8, 2020 Plaintiff Reber purchased a Onewheel XR from

5   Defendant.

6   109.   Prior to purchasing his Onewheel, Plaintiff Reber watched many videos of people

7   using Onewheel devices, including, upon information and belief, videos posted by Defendant to

8   social media websites such as YouTube.

9   110.   Plaintiff Reber also went to Defendant's website to research the Onewheel device

10  and the available accessories.

11  111.   During Plaintiff Reber's research, he viewed promotional and instructional

12  materials regarding the Onewheel, including photographs of people riding Onewheel devices on

13  various surfaces, including off road and dirt surfaces, and carrying various objects while riding.

14  112.   In the course of this research, Plaintiff Reber became aware of the "pushback"

15  feature and how it was supposed to work to alert a rider when the device was approaching any of

16  a number of conditions that would make it unsafe to continue to operate including, but not limited

17  to, an overcharged or undercharged battery, excessive speed, and other conditions.

18  113.   From viewing this information on Defendant's website and information posted to

19  social media, including by Defendant, Plaintiff Reber was left with the belief that so long as the

20  user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding

21  "pushback" when it occurred, the Onewheel would be safe and reliable to use.

22  114.   Plaintiff Reber relied on these images, videos, and instructions provided on

23  Defendant's website and posted on social media by Defendant in forming these beliefs.

24  115.   Additionally, in viewing this information on Defendant's website and social

25  media, including representations by Defendant that failure to heed "pushback" was the primary

26  cause of accidents involving the Onewheel, Plaintiff Reber formed the belief that user error was

27  the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's

28  "pushback" feature.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

116.    These beliefs were the basis for Plaintiff Reber deciding to purchase a Onewheel Pint, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable. His beliefs were formed based on the images, videos, and instructions provided on Defendant's website and on social media postings by Defendant.

117.    On or about August 8, 2020 Plaintiff Reber purchased a Onewheel XR. Concurrently, he purchased multiple accessories from Defendant including substantial safety equipment.

118.    This safety equipment and other accessories included wrist guards, a helmet, rail guards, and bumpers.

119.    After purchasing his Onewheel XR, Plaintiff Reber downloaded the app for his mobile device that Defendant instructs its customers to use.  On that app there are additional videos and demonstrations on how to use and operate the Onewheel XR including instructions regarding the "pushback" feature.

120.    In all of the material he saw regarding "pushback" and Nosedives, Plaintiff Reber saw that Defendant blamed Nosedives on riders failing to heed "pushback" and that such Nosedives were therefore the result of operator error.

121.    It was only after feeling he understood "pushback" that Plaintiff Reber started to ride his Onewheel XR.

122.    After using the Onewheel XR for several months, always being careful while riding, in or about May 2021 Plaintiff Reber was riding his Onewheel XR on a level asphalt surface at approximately 15 miles per hour with approximately 10-15 percent charge remaining in his battery.

123.    Without any warning, and without any recent changes in his riding of the Onewheel XR, Plaintiff Reber's Onewheel XR came to a sudden, violent, stop.  One moment it was traveling at 15 miles per hour on a flat level surface and the next moment it just shut off and stopped.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

124.    When Plaintiff Reber's Onewheel XR came to a sudden, violent stop, it threw him forward into the pavement causing significant bruising and causing substantial damage to the helmet he was wearing (which he had purchased from Defendant).  (see image below)

125.    Plaintiff Reber's Onewheel XR did not "pushback" at all before coming to a



sudden and violent stop, without warning.

126.    In fact, in the nine months Plaintiff Reber owned his Onewheel XR prior to the above described "nosedive" Plaintiff Reber never experienced "pushback."

127.    Until his Onewheel XR decided to send him in a Nosedive, Plaintiff Reber had believed, based on Defendant's representations, that his never having experienced "pushback" was due to his caution and skill in riding his Onewheel, not due to the Onewheel's defects and the defective nature of the "pushback" feature.

128.    Based on this incident, and after Plaintiff Reber realized that the "pushback" feature was defective and would not notify him of immediate danger, Plaintiff Reber determined that his Onewheel XR was inherently unsafe and he never rode it again.

129.    Plaintiff Reber contacted Defendant to see if they would repair or replace his Onewheel XR with a non-defective product, but when he reached out, he was told that he would have to pay for the significant shipping expense.

130.    Plaintiff Reber did not believe he should have to pay such expenses and did not send his Onewheel back to Defendant.

131.    Had Plaintiff Reber known that the Onewheel was defective, that the "pushback" feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning, he would not have bought one.

**Plaintiff Loh's Experiences With His Onewheel**

132.    Plaintiff Loh is an experienced skateboarder.

133.    On or about April 1, 2021, Plaintiff Loh purchased a Onewheel Pint from Defendant.

134.    Plaintiff Loh viewed all of the promotional and instructional videos and other materials on Defendant's website, that he was able to, while he was investigating the Onewheel for purchase.  This includes having seen images, provided by Defendant, of people riding Onewheels while carrying various objects.

135.    From viewing this information on Defendant's website Plaintiff Loh was left with the belief that so long as the user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding "pushback" when it occurred, the Onewheel would be safe and reliable to use.  Plaintiff Loh relied on these images, videos, and instructions provided on Defendant's website in forming these beliefs.

136.    Additionally, in viewing this information on Defendant's website, including representations by Defendant that failure to heed "pushback" was the primary cause of accidents involving the Onewheel, Plaintiff Loh formed the belief that user error was the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's "pushback" feature.

137.    These beliefs were the basis for Plaintiff Loh deciding to purchase a Onewheel Pint, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable. His beliefs were formed based on the images, videos, and instructions provided on Defendant's website.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

138.    After purchasing his Onewheel Pint, Plaintiff Loh downloaded the app for his mobile device that Defendant instructs its customers to use.  On that app there are additional videos and demonstrations on how to use and operate the Onewheel Pint including instructions regarding the "pushback" feature.

139.    It was only after viewing the safety and instructional videos provided and/or made available by Defendant and reading the literature provided by Defendant did Plaintiff Loh begin using his Onewheel Pint.

140.    On or about July 18, 2021 Plaintiff Loh was riding his Onewheel Pint on a level surface in a park near his home.  He had approximately 24 percent charge in his battery and was traveling at only 7 or 8 miles per hour.

141.    Without any warning, and without any recent changes in his riding of the Onewheel Pint, Plaintiff Loh's Onewheel Pint came to a sudden, violent, stop.  One moment it was traveling at 7 or 8 miles per hour on a flat level surface and the next moment it shut off and stopped.

142.    When his Onewheel Pint came to this sudden, violent, and unexpected stop, Plaintiff Loh was thrown from his Onewheel onto the ground.

143.    Plaintiff Loh suffered significant injuries from his Nosedive, which included fracturing his elbow.

144.    Plaintiff Loh did not experience any pushback before his Onewheel Pint came to a sudden and violent stop; one moment his Onewheel Pint was functioning normally, under typical and not extreme operating conditions, the next moment it stopped and threw him to the ground.

145.    Plaintiff Loh has not used his Onewheel Pint since the Nosedive.

146.    Had Plaintiff Loh known that the Onewheel was defective, that the "pushback" feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning he would not have bought one.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

**Notice and Consumer Complaints**

147.    Reports of injuries occurring due to the defects described herein have been publicly posted on the internet for years.  Despite Defendant's knowledge of the hazards posed by the Onewheel, Defendant failed to take any reasonable steps to prevent consumers such as Plaintiffs and Class Members from injuring themselves.  Instead, Defendant continued to market its products online, representing that the device is a reliable, fun, and safe device for transportation and recreation for all skill levels and most ages.  Meanwhile, incidents that could *and do* produce serious injuries continue to occur with remarkable frequency.

148.    In addition to the fact that Defendant knew or should have known of the dangers posed by the Onewheel's defects, droves of Onewheel owners have posted stories, pictures, and videos on social media websites and outlets,[13] as well as Defendant's website, and have requested that Defendant remedy and/or address the Nosedive and safety/warning issues and defects.  As such, Defendant is undoubtedly aware of these issues.

149.    Moreover, there is a feature on Future Motion's website where users can discuss issues in a forum.  There are over 240 posts related to the Nosedive phenomenon with over 70,000 views on Future Motion's website.  Many users have reported that they were not exceeding the speed limit and/or had sufficient battery life.  One consumer reported that the Onewheel froze when riding at a slow speed with 50 percent battery.  Another consumer reported that the Onewheel froze while riding on smooth pavement going only around 10 miles per hour.[14]  Other consumers who experienced the Onewheel seize reported that they did not receive a warning through the device's "pushback" feature and were using the device as intended.

---

[13] A search for "Onewheel crash," on YouTube, yields numerous pages of video footage and accounts of Onewheel crashes and injuries.  The same results occur when the same search is performed on Facebook, Google, Instagram, and Tiktok to name a few.  Discovering voluminous consumer complaints regarding, and videos of severe injury occurring because of, the defects alleged herein takes little effort.

[14] *See* https://community.onewheel.com/tags/nosedive and https://community.onewheel.com/tags/nose%20dive and https://community.onewheel.com/topic/6944/nosediving and https://community.onewheel.com/topic/8279/nosedive-on-flat-path-crash-3

150.     The following posts are representative of many on the Defendant's website and on YouTube:

> **"What is pushback", the one wheel talking head asks rhetorically. Pushback is a poorly thought out design feature where the board "warns" the rider that it will shut down to protect the motor (rider be damned). How about instead of the automatic nose dive to protect the motor, you engineer an auto slow down feature to protect the rider.**

> **\*\*\***

> **Yeah... my XR doesn't pushback. Ever. Does nosedive though. As my hospital bills can attest.**

> **\*\*\***

> **You guys need to address the nosedive issue immediately. This is dangerous AF. If the OW is approaching it's limit it should give an alert sound and it should automatically slow down for 1min if it exceeds 19mph. Nosediving should NEVER happen!**

> **\*\*\***

> **If a safety feature causes people to crash hard, head first, it's not rocket science to assume it's not a very good safety system. Kind of bedazzled why Onewheel hasn't figured that out yet and changed to a safer set up. Hard to take a company like that serious.**

> **\*\*\***

> **push back is a joke it works some of the time but not all of the time. Going up hill especially it just releases and then you get thrown off like a bucking bronco. The app makes loud noises when you lift off the pad why does it not make loud noises when you are in push back? Seems like we need any update. All I can say people is WEAR PADS AND A HELMET PLEASE Flying off at 10mph is no joke.[15]**

151.     The following complaints are excerpts of numerous negative reviews found on Amazon:

> **[I]t breaks my heart to say that the Onehweel should be recalled and prohibited from being distributed because of its dangerous emergency stopping mechanism…..**

---

[15] *See* https://onewheel.com/pages/faq and https://www.youtube.com/watch?v=WXYv3eq_9A4 (comments sections) [last accessed February 4, 2022].

The nature of my bitchh comes with its emergency brake mechanism. While in motion the motor turns off forcing the board to anchor to the ground sending the person on it flying off like a dart. There's a pushback mechanic wich will indicate the to slow down or the battery is below 30% to prevent shut off. In my case there wasn't any warning. The board shut off at 90% battery while I was riding at 25 miles per hour. Now I know the counter argument some plev will make is don't ride at 20 miles an hour but once you sync with the board its so easy to become one with it thus losing perception of speed. Like riding a car on the high way….

The worst part about it was how I could have potentially broken my bones once it anchored to the ground at full speed without warning and I could have potentially died. Fortunately I was wearing a helmet……

This is the first time I've fallen in years. The Onewheel is simply not reliable or safe at what I call fun mode. The mechanism is designed to save the board NOT the rider.[16]

***

Easy to learn, excellent ride quality, versatile terrain choices, awesome. On the other hand, based on my experience and what hundreds of users say on forums: you will fall and likely be injured, it is just a matter of time. The frustrating part is that it could be prevented by adding some simple safety features: 1. Fangs (wheels) under front 2. Audio warning when the motor senses that is being overloaded. When the motor is overloaded, it stops resulting in a sudden "nosedive". I suffered major injuries due to an unexpected nosedive. There was no discernible "pushback" it happened 2-3 seconds after accelerating from a dead stop. The manufacturer is quick to say it is "user error" but I read all instructions, watched a dozen instructional videos and had 50+ miles of experience already when this happened. Snowboarded, skateboarded, surfed, windsurfed for over 20 years and never had injuries from those activities - except from this one. Wear a lot of protective equipment, and do not trust the board…[17]

***

---

[16]   *See*   https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_arp_d_viewpnt_rgt?filterByStar=critical&pageNumber=1, reviewed in the United States, April 27, 2019, by user "Charles Sullivan," entitled "1.0 out of 5 stars DO NOT purchase a onewheel if you're a serious rider," [last accessed January 31, 2022].

[17]   *See*   https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_arp_d_viewpnt_rgt?filterByStar=critical&pageNumber=1, reviewed in the United States, October 11, 2019, by user "adallos," entitled "2.0 out of 5 stars Great Ride but very Dangerous," [last accessed January 31, 2022].

Loved my onewheel until it powered off abruptly and tossed me on the ground. I suffered major knee injuries due to over-rotation of the lower leg. I'm now unable to walk and may require surgery for full recovery. The worst part is I didn't do anything wrong, meaning there is nothing I could've done differently to prevent this (or another) episode. There was no warning, no "push-back", nothing - the board just powered off while accelerating. It was going in a straight line so no heel/toe lift to cause erroneous disengagement. In fact, after I climbed back up, the lights were completely off indicating it's not a disengagement - but a full power-down. I even turned it back on to check the app, and it says it has 40% battery left.

I was lucky we mainly use the onewheel to move around the office only, so the accident happened on a nice flat surface. Otherwise I don't know how many stitches I'm going to need, in addition to the knee over-rotation that no kneepads or helmets could prevent. On hindsight, I should've realized this product is inherently unstable and if anything goes wrong (which it did), the rider is paying for it. The momentum you carry during such accidents are significant, that no amount of "fitness" can save you from injuring yourself (because of the suddenness and speed to which it happens). Your body simply cannot react fast enough.

It was fun while it lasted, but I really cannot recommend such a buggy product that involves a high level of risk. Had it powered off somewhere other than my office, I could've died... and that did happen to another unfortunate soul - I learned that he was killed after his one wheel powered off just like mine. That thought send chills down my spine. Long story short, buy at your own risk - you've been warned.[18]

***

Please do not purchase this device! Contrary to Onewheel's literature, the motor can and has shut off at any time without warning. Riding responsibly is not enough to keep you safe from unexpected shut-offs. I expect many riders have never experienced this problem, but unfortunately riding the onewheel is essentially playing Russian roulette. Please do not risk your life![19]

---

[18]  *See*  https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_arp_d_viewpnt_rgt?filterByStar=critical&pageNumber=1, reviewed in the United States, May 23, 2021, by user "Makkuro," entitled "1.0 out of 5 stars My medical bill will cost more than the board.," [last accessed January 31, 2022].

[19]  *See*  https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_getr_d_paging_btm_next_2?filterByStar=critical&pageNumber=2, reviewed in the United States, October 11, 2021, by user "Jonathan Van Wickle," entitled "1.0 out of 5 stars Do Not Purchase," [last accessed January 31, 2022].

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

152.    As demonstrated by these and other consumer complaints, Defendant either knows, or clearly should know, that its Onewheels are dangerously defective when being used as intended. Notwithstanding this knowledge, Defendant took no reasonable steps to warn consumers of such dangers, because it realizes that it could not market and sell the Onewheel if it were to allow consumers to fully understand the severity of the hazard posed using its products.

153.    Despite its knowledge of the hazards posed by the Onewheel's defects, Defendant had failed, and continues to fail, to take reasonable steps to repair, recall, reasonably instruct, reasonably warn, disclose, and advise consumers – either before or after their purchase – of the extreme hazards associated with the vehicle.

154.    Despite notice and knowledge of the defect from the numerous complaints it has received: social media postings, videos and other complaints, and its own internal records, Defendant has not recalled and/or offered an adequate repair to the Onewheel, nor has it offered non-defective replacements to its customers.

155.    Like other activities, riders assume a number of basic risks associated with operating a mobility device; however, that does not include the risk of operating a defective device.

156.    A number of such riders have narrowly escaped and/or sustained traumatic injuries because of the "pushback" defect.  Because the risk of shut off and Nosedive, without warning (or without a sufficiently detectable warning), is so substantial and unpredictable, it is not the kind of risk that is inherent or that should be assigned to a consumer who engages in recreation or sports that are innately dangerous.

157.    Because Defendant advertises and markets the vehicles as safe for almost any age[20] and skill level, and because the literature provided with the Onewheel vehicles does not

---

[20] CEO and founder of Onewheel, Kyle Doerksen certainly sees the Onewheel as appropriate for children, as he states that Defendant saw an uptake in Onewheel purchases during the Pandemic because people "need stuff to do with their kids." *See* transcript of Piaggio Fast Forward podcast, Jeffrey Schnapp interview of Kyle Doerksen, Inventor and Chief Engineer of Onewheel and Founder and CEO of Future Motion, Inc., Episode 12, available at: https://www.piaggiofastforward.com/podcast/episode-12, August 28, 2020 [last accessed January 28, 2022].

adequately disclose or address the dangerousness of the product, reasonable consumers are not likely to discover, or have reason to discover, before purchase, what an unreasonably unsafe hazard their Onewheel poses. The Onewheels are not the safe, fun, and reliable transportation that Defendant represents the vehicles to be, and the Onewheels do not have safety features that perform as Defendant represents that those features do (e.g., heed the "pushback" warnings, and you will be safe).

158. Neither Plaintiffs, Class Members, nor any reasonable, objective consumer would have purchased a Onewheel, nor paid as much for them, had they known the true facts. Facts which Defendant had to, did, and continues to intentionally conceal from Plaintiff and Class Members to be able to sell these extremely dangerous vehicles.

159. Defendant sold and continues to sell the Onewheel to its significant financial gain, despite knowledge of the extreme danger posed by these sudden seizures and without taking reasonable steps to mitigate the unreasonable danger or disclose the danger to consumers like Plaintiffs and Class Members.

160. As a result of Defendant's conduct and omissions, Plaintiff and Class Members purchased and/or otherwise came to own these inherently dangerous and defective vehicles.

161. As discussed herein, when Class Members seek warranty coverage for the Defect, even within the warranty period, Defendant often fails to respond, fails to adequately respond, fails to repair the issue, and/or denies warranty coverage. Despite Defendant's longstanding knowledge of the danger and defects as set forth herein, Defendant has an internal policy of refusing to provide warranty coverage for the repairs, when the design defects are encountered by consumers. Defendant further, with knowledge and deceptively, uses the defects set forth herein as a basis of voiding the warranty.

162. Defendant has failed to institute any recall or supplemental warning to Plaintiffs and the Class Members, and Plaintiffs are informed and believe that Defendant has made no other efforts to mitigate for such known defects.

163. Defendant intentionally, recklessly, and/or negligently concealed, suppressed, and omitted the risks, dangers, defects, and disadvantages of its Onewheel Pint and XR models,

and marketed, sold, and distributed these dangerous vehicles as a safe when, in fact, Defendant had reason to know, or did know, that the Onewheels were not safe or even useable at all for the intended purposes. Defendant knew or should have known that the Onewheel posed a serious safety risk, including the risk of severe head injury, traumatic brain injury, broken bones, maiming, and other catastrophic physical injuries to all riders, including but not limited to Plaintiff and Class Members – and to persons or property in the vicinity, when the vehicles unexpectedly, suddenly, and inevitably seize and stop.

164.    Plaintiff and the Class Members have lost money and suffered monetary damages as a result of their purchases and use of Onewheel vehicles. Plaintiff and Class Members paid a readily ascertainable amount for their Onewheels. Plaintiff and Class Members have or will suffer further damage to the extent that they have or will incur the cost of replacing or retrofitting their Onewheels, and/or replacing them with other safe, merchantable products.

165.    As a result of Defendant's unfair, deceptive, and/or fraudulent business practices and other wrongful acts Onewheel owners, including Plaintiff and Class Members, have suffered injuries including an ascertainable loss of money and/or property and/or loss in value.

166.    This case seeks protection and relief for Onewheel owners for the harm they have suffered, and the safety risks they face, as the result of Defendant's breaches of express and implied warranties and Defendant's unfair, unlawful, and deceptive trade practices and violations of state and federal laws.

## V. CLASS ALLEGATIONS

167.    Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek to represent a Class defined as:

> - All persons residing in the United States who purchased the Onewheel Pint or XR (the "Nationwide Class"), within the relevant statute of limitations period.

Excluded from the Class are persons who made such purchases for purpose of resale, all Court personnel involved in the handling of this case, Defendant, its affiliates, respective officers, directors and employees, and any entity that has a controlling interest in Defendant.

168.    Plaintiffs also seek, pursuant to Fed. R. Civ. P. 23(c)(5), to represent the following subclasses:

- All persons residing in the United States who purchased the Onewheel Pint or XR directly from Defendant Future Motion (the "Nationwide Direct Purchase Subclass"), within the relevant statute of limitations period.

-All persons residing in California who purchased the Onewheel Pint or Onewheel XR (the "California Subclass"), within the relevant statute of limitations period.

-All persons residing in Hawaii who purchased the Onewheel Pint or Onewheel XR (the "Hawaii Subclass"), within the relevant statute of limitations period.

-All persons residing in Pennsylvania who purchased the Onewheel Pint or Onewheel XR (the "Pennsylvania Subclass"), within the relevant statute of limitations period.

169.    Together, all of the above subclasses shall be collectively referred to herein as "The Subclasses."

170.    Together, the California Subclass, the Hawaii Subclass, and the Pennsylvania Subclass shall be collectively referred to herein as the "State Subclasses."

171.    Together, the Nationwide Class, the Nationwide Direct Purchase Subclass, the California Subclass, the Hawaii Subclass, and the Pennsylvania Subclass shall be collectively referred to herein as the "Class."

172.    Subject to additional information obtained through further investigation and discovery, the above-described Class and Subclasses may be modified or narrowed as appropriate, including through the use of multi-state subclasses. As such, Plaintiffs reserve the right to modify, change, or expand the Class definitions.

**Numerosity**

173.    Upon information and belief, the Class is so numerous and geographically dispersed that individual joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes that tens of thousands of Onewheels have been sold throughout the United States, including in California, Hawaii, and Pennsylvania.

**Existence and Predominance of Common Questions of Fact and Law**

174.    Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to:

- Whether the Onewheels are predisposed to the defects;

- Whether Defendant knowingly failed to disclose the existence and cause of the defects;

- When Defendant first learned of the defects;

- Whether Defendant's conduct constitutes a violation of the state consumer protection statutes and counts asserted herein;

- Whether Defendant's conduct constitutes a breach of express warranty;

- Whether Defendant's conduct constitutes a breach of implied warranty;

- Whether Defendant's conduct constitutes unjust enrichment; and

- Whether Plaintiffs and Class Members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

**Typicality**

175.    All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased a Onewheel with the defects.  Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

**Adequacy**

176.    Plaintiffs are adequate representatives because Plaintiffs' interests do not conflict with the interests of the Class and Sub-Classes that Plaintiffs seeks to represent, Plaintiffs have retained counsel that are competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the Class and Sub-Classes will be fairly and adequately protected by Plaintiffs and their counsel.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

**Superiority**:

177.     A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's sales records, warranty claims, registration records, and the database of complaints.

**Injunctive Relief**

178.     Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

**COUNT ONE**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

179.     Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

180.     Defendant provided Plaintiffs and Class Members with the express warranties set forth herein.

181.    Specifically, Defendant warranted that its Onewheels were free from defects in materials or workmanship; and that in the event the said vehicles suffered from defects in either of these respects, Defendant would correct such defects at no cost to Plaintiffs or Class Members.

182.    Additionally, Defendant further represented "Future Motion provides paid repairs for faulty products which are out of warranty."

183.    Defendant's Onewheels were not free from defects in materials or workmanship because the vehicles suffer from the defects alleged herein.

184.    Defendant has refused to and continues to refuse to comply with the terms of its warranty to correct the defects outlined herein.

185.    Plaintiff(s) have complied with their obligations under the express warranty at all times relevant herein.

186.    As a result of Defendant's breach of express warranty, Plaintiffs and Class Members have suffered damages.

187.    Defendant's conduct was done knowingly, wantonly, maliciously, and/or in conscious disregard for the rights of Plaintiffs and the Class and/or State Classes, justifying the imposition of punitive damages.

## COUNT TWO
### BREACH OF IMPLIED WARRANTY
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

188.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

189.    Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Onewheel vehicles.  Defendant knew or had reason to know of the specific use for which the Onewheel vehicles were purchased.

190.    Defendant provided Plaintiffs and the Class Members with an implied warranty that the Onewheel vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Onewheel vehicles are not fit for their ordinary purpose of providing fun, reliable, and safe transportation / recreation, at the time of sale or

thereafter, because, *inter alia*, the Onewheel vehicles suffer from the defects set forth herein. Therefore, the Onewheel vehicles are not fit for their particular purpose of providing fun and safe transportation / recreation.

191.    Defendant impliedly warranted that the Onewheel vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Onewheel vehicles and their components were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable and would not experience defects of the nature set forth herein; and (ii) a warranty that the Onewheel vehicles and their components would be fit for their intended use while the Onewheel vehicles were being operated.

192.    Contrary to the applicable implied warranties, the Onewheel vehicles and their components, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe product. Instead, the Onewheel vehicles suffer from defect(s).

193.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**COUNT THREE**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

194.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

195.    Defendant has been, and continues to be, unjustly enriched, to the detriment of the Class, as a result of its conduct directed against Plaintiff and the Class Members and its resulting collection of money from the sale of the Onewheels.

196.    Defendant has unjustly benefitted through the unlawful and/or wrongful collection of money from the sale of the Onewheels, and continues to so benefit to the detriment and at the expense of Class Members.

197.    Defendant had knowledge that this benefit was conferred upon them.

198.    Accordingly, Defendant should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and Class Members, who seek disgorgement of

Defendant's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution and/or rescission for the benefit of the Plaintiff and Class Members, in an equitable and efficient fashion to be determined by the Court.

199.    Plaintiff and the Class Members are entitled to the imposition of a constructive trust upon Defendant such that their enrichment, benefit and ill-gotten gains may be allocated and distributed equitably by the Court to and/or for the benefit of Class Members.

## COUNT FOUR
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF EXPRESS WARRANTY
### (Cal. Civ. Code §§ 1791.2 & 1793.2(d))
### (On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)

200.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

201.    Plaintiffs and the Class Members who purchased Onewheels are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

202.    The Onewheels are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

203.    Defendant is a "manufacturer" of the Onewheels within the meaning of Cal. Civ. Code § 1791(j).

204.    Defendant made express warranties to Plaintiffs and the Class Members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

205.    Plaintiff Smith and Class Members have requested repairs of the defects set forth herein, pursuant to the express warranty, but have failed to receive such repairs.

206.    Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiffs and the Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Onewheels, or the overpayment or diminution in value of the vehicles.

207.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the Class Members are entitled to costs and attorneys' fees.

**COUNT FIVE**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -
BREACH OF IMPLIED WARRANTY**
**(Cal. Civ. Code §§ 1791.2 & 1792)**
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase
Subclass and the California Subclass)**

208.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

209.    Plaintiffs and the Class Members who purchased Onewheels are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

210.    The Onewheels are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

211.    Defendant is a "manufacturer" of the Onewheels within the meaning of Cal. Civ. Code § 1791(j).

212.    Defendant impliedly warranted to Plaintiffs and the other Class Members that the Onewheel vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

213.    However, the Onewheel vehicles do not have the quality that a reasonable purchaser would expect.

214.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; and (4) conform to the promises or affirmations of fact made on the container or label.

215.    The Onewheel vehicles would not pass without objection in the trade because of the defects alleged herein.

216.    The Onewheel vehicles are not fit for the ordinary purpose for which they are used because of the defects alleged herein.

217.    The Onewheel vehicles do not conform to the promises or affirmations of fact made by Defendant.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

-40-

218.    Defendant breached the implied warranty of merchantability by manufacturing and selling Onewheel vehicles containing the defects alleged herein.  The existence of said defects have caused Plaintiffs and the other Class Members to not receive the benefit of their bargain and have caused Onewheel vehicles to depreciate in value.

219.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially impairs their value to Plaintiffs and the other Class Members.  Plaintiffs and the other Class Members have been damaged as a result of the diminished value of the Onewheel vehicles.

220.    Plaintiffs and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Onewheel vehicles, or the overpayment or diminution in value of their Onewheel vehicles.

221.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class Members are entitled to costs and attorneys' fees.

## COUNT SIX
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. Code § 17200, *et seq.*)
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)**

222.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

223.    California Business & Professions Code section 17200, *et seq.*, precludes unfair competition, i.e., the employment of any unlawful, unfair or fraudulent business acts or practices; and any unfair, deceptive, untrue or misleading advertising violate Cal. Bus. & Prof. Code section 17500.  This prohibition extends to any act, omission or conduct or pattern of activity engaged in within California which affects the rights of consumers within the State of California and elsewhere.

224.    In marketing and selling the Onewheel vehicles, and in otherwise causing the Onewheel vehicles to be placed into the stream of commerce for use by consumers nationally, in

the State of California, and elsewhere without disclosing the serious hazard they posed, and in continuing to conceal this critical safety information regarding the dangers associated with the use of the Onewheels, Defendant knowingly made available for consumer use an inherently dangerous and patently unsafe product which is not safely useable for its intended purpose. Defendant was and remains obligated to disclose the hazards associated with the Onewheels because of the Class Members' reasonable expectation that the Onewheels would not, amongst other defects, under normal and expected use, suddenly and abruptly, halt, thereby ejecting riders into a Nosedive, creating the risk of permanent bodily injury or death. In failing to disclose this and other critical safety issues, which were known and apparent to Defendant, but not reasonable consumers, including Plaintiffs and the Class Members, Defendant engaged in fraudulent, unlawful, and unfair conduct under Cal. Bus. & Prof. Code section 17200, as set forth herein.

225.    The conduct alleged in this Second Amended Complaint is unlawful within the meaning of the UCL in that Defendant knowingly violated the state and federal laws addressed herein.

226.    Defendant's conduct is unfair within the meaning of the UCL in that the alleged consumer injury is substantial, creating an unreasonable risk for catastrophic physical injury to any persons using the Onewheels. There is no countervailing benefit to having or continuing to conduct themselves in the wrongful manner averred to herein.

227.    Were it not for the unfair competition of Defendant, Plaintiffs and the Class Members would not have purchased Onewheels and would not have subjected themselves to the risks inherent in the use thereof.

228.    The Class Members have and will continue to suffer injury in fact and monetary loss as a direct result of Defendant's unfair competition in that each has expended money to purchase Onewheels and has potentially or actually expended money for the treatment of injuries sustained due to the use thereof.

229.    As a result of Defendant's unfair competition, Plaintiffs and the Class Members are entitled to appropriate equitable relief including injunctive relief (including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to

extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and the Class Members with appropriate curative notice regarding the existence and cause of the design defect; and to correct its advertising and marketing practices as described herein), and available monetary relief in the form of restitution (including fluid recovery if certified as a class action). Plaintiffs are also entitled to recover penalties as well as an award of attorneys' fees for prosecuting this action.

<u>COUNT SEVEN</u>
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase**
**Subclass and the California Subclass)**

230.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

231.    California Business & Professions Code § 17500 states:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

232.    Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

233.    Defendant has violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Onewheels as set forth in this Complaint were material and likely to deceive a reasonable consumer.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

234.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, because of Defendant's unfair, unlawful, and/or deceptive practices.  In purchasing their Onewheels, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Defendant with respect to the safety and reliability of the vehicles.  Defendant's representations were untrue because the Onewheels are distributed with defects that can cause sudden stoppage that hurls the rider headfirst into the ground. Had Plaintiffs and the Class Members known this, they would not have purchased their Onewheels and/or paid as much for them.  Accordingly, Plaintiffs and the Class Members overpaid for their Onewheels and did not receive the benefit of their bargain and have caused Onewheel vehicles to depreciate in value.

**COUNT EIGHT**
**VIOLATIONS OF CAL. CONSUMER LEGAL REMEDIES ACT  ("CLRA")**
**(Cal. Civ. Code § 1750, et seq.)**
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and/or the California Subclass)**

235.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

236.    Defendant is a person as that term is defined in California Civil Code § 1761(c).

237.    Plaintiffs and the Class Members are "consumers" as that term is defined in California Civil Code §1761(d), and the Onewheels, described herein, constitute goods within the meaning of the CLRA.

238.    Defendant has violated, and continues to violate, the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale of the Onewheels to Plaintiff Smith, Plaintiff Rico, and the Class Members in violation of, *inter alia*, the following provisions:

      a.    Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

      b.    Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

c. Advertising goods and services with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d. Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

e. Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

239. Plaintiffs and the Class Members, in purchasing and using Defendant's Onewheels, did reasonably act in response to Defendant's above representations or would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiffs and the Class Members have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

240. Defendant's unfair and/or deceptive acts and/or practices occurred repeatedly in Defendant's business, were and are capable of deceiving a substantial portion of the purchasing public, and imposed, and still impose, a serious safety risk on the public.

241. Defendant knew that the subject Onewheels and, specifically, the purported safety feature "pushback" were defectively designed and/or manufactured and were inconsistent, unpredictable, and would fail, endangering unsuspecting consumers (by the board immediately shutting off and sending riders into Nosedive), and were not suitable for their intended use.

242. Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the subject Onewheels and, specifically, the defective nature of the pushback feature and insufficient safety warnings, which result in the Onewheels abruptly stopping and "Nosediving," because:

a. Defendant was in a superior position to know the true state of facts about the defects set forth herein;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Onewheels and had dangerous safety defects until manifestation of the defect; and

c.   Defendant actively concealed the safety defect and the associated repair costs by asserting to Plaintiffs and Class Members that the cause of their problems with "pushback" and Nosedive was the result of "user error."

243.    In failing to disclose the defects and the associated safety risks and resulting repair costs, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

244.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Onewheel vehicle or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Onewheels and their safety issues, they would not have purchased the Onewheels or would have paid less for them.

245.    In accordance with California Civil Code § 1780(a), Plaintiffs and Class Members seek injunctive relief for Defendant's violations of the CLRA.

246.    On or about December 10, 2021, on behalf of Plaintiffs Smith and Rico, Plaintiffs' counsel provided Defendant with notice of their violations of the CLRA, pursuant to California Civil Code § 1782(a) and (d), regarding the defect in the Onewheel models set forth herein. Defendant has not responded to Plaintiffs' requests and has refused to provide any relief requested to Plaintiffs or Class Members.

247.    Plaintiffs and the other Class Members' injuries were proximately caused by Defendant's violations, acts, and/or omissions, as set forth herein.

248.    As a result, Plaintiffs and the other Class Members seek all relief available under the CLRA. Plaintiffs seeks for themselves, and the Class Members, compensatory and punitive damages under the CLRA, and also seek to recover attorneys' fees and costs pursuant to California Civil Code §§ 1780 and 1781.

## COUNT NINE
### VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW
#### (73 Pa. Stat. Ann. §§ 201-11, *et seq.*)
#### (On Behalf of the Pennsylvania Subclass)

249.    Plaintiff Reber and the Pennsylvania Subclass repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

250.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce ..." 73 PA. STAT. ANN. § 201-3.

251.    The Onewheel's design, manufacture, distribution, marketing, advertising, labeling, and sale of the Onewheel vehicles constitutes "trade and commerce" under 73 PA. STAT. ANN. § 201-2(3).

252.    Defendant violated the UTPCPL by: representing that the Onewheel vehicles have certain safety characteristics and benefits that they do not have (73 PA. STAT. ANN. § 201-2(4)(v)); failing to comply with the terms of a written guarantee or warranty given to the buyer (73 PA. STAT. ANN. § 201-2(4)(xiv)); and engaging in deceptive conduct which creates a likelihood of confusion or misunderstanding about the Onewheel vehicles (73 PA. STAT. ANN. § 201-2(4)(xxi)).

253.    Defendant's deceptive conduct and its false and misleading statements about Onewheel vehicle safety and dependability and omissions regarding the Nosedive and other defects set forth herein are facts that a reasonable person would have considered material in deciding whether or not to purchase (or how much they were willing to pay to purchase) the Onewheel vehicles.

254.    Defendant's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff Reber and members of the Pennsylvania Subclass, and were likely to mislead reasonable consumers, including Plaintiff Reber and the Pennsylvania Subclass.

255.    Had Defendant disclosed all material information regarding the Onewheel vehicle's defects, as alleged in this Second Amended Complaint, Plaintiff Reber and the

Pennsylvania Subclass would not have purchased the Onewheel vehicles or would have paid less to do so.

256.    Defendant's deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiff Reber, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Pennsylvania Subclass.

257.    Plaintiff Reber and the Pennsylvania Subclass justifiably acted or relied to their detriment upon Defendant's misrepresentations and omissions of fact, as evidenced by Plaintiff Reber's and the Pennsylvania Subclass' purchasing of Onewheel vehicles.

258.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Reber and the Pennsylvania Subclass have suffered ascertainable loss and actual damages.  Plaintiff Reber and the Pennsylvania Subclass would not have purchased the Onewheel vehicles or would have paid less for them had Defendant disclosed the truth about the defects alleged herein.  Plaintiffs Reber and the Pennsylvania Subclass also suffered diminished value of their Onewheel vehicles.

259.    Defendant had notice of its conduct as alleged herein.

260.    Pursuant to 73 PA. STAT. ANN. § 201-9.2(a), Plaintiff Reber and the Pennsylvania Subclass also seek an order for: actual and treble damages; appropriate injunctive relief (including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff Reber and the Pennsylvania Subclass with appropriate curative notice regarding the existence and cause of the design defect; and to correct their advertising and marketing practices as described herein); costs; and reasonable attorneys' fees.

## COUNT TEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. §§ 2314 and 2A212)
### (On Behalf of the Pennsylvania Subclass)

261.    Plaintiff Reber and the Pennsylvania Subclass repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

262.    Defendant is and was at all relevant times a "merchant" with respect to Onewheel vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of Onewheel vehicles under § 2103(a).

263.    The Onewheel vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

264.    A warranty that the Onewheel vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied in law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

265.    Onewheel vehicles, when sold and at all times hereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Onewheel vehicles are to be used. The Onewheel vehicles are inherently defective, as detailed in this Second Amended Complaint.

266.    Plaintiff Reber and the Pennsylvania Subclass suffered injuries due to the defective nature of the Onewheel vehicles and Defendant's breach of the implied warranty of merchantability.

267.    Defendant had notice of its breach as alleged herein.

268.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Reber and the Pennsylvania Subclass have been damaged in an amount to be proven at trial.

**COUNT ELEVEN**
**VIOLATION OF HAWAII'S UNFAIR**
**DECEPTIVE ACTS & PRACTICES STATUTE**
**(H.R.S. §§ 481A, *et seq*.)**
**(On Behalf of the Hawaii Subclass)**

269.    Plaintiff Loh and the Hawaii Subclass repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

270.    This cause of action is brought pursuant to Hawaii's UDAP, H.R.S. §§ 481A-1, et seq.

271.    Defendant is a "person" under H.R.S. § 481A-2, because it is a corporation.

272.    Defendant violated the UDAP by misrepresenting and omitting material facts regarding Subject Vehicles, and by engaging in the following practices proscribed by H.R.S. §

481A-3 in transactions that were intended to result in, and did result in, the sale of Onewheel vehicles:

    a.  representing that Onewheel vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

    b.  representing that Onewheel vehicles are of a particular standard, quality, or grade if they are of another;

    c.  advertising Onewheel vehicles with intent not to sell them as advertised; and

    d.  engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

273.    Defendant violated the UDAP by selling Onewheel vehicles it knew possessed defects, as set forth herein, exposing riders, pedestrians, and others on the road (cars, bicycles, etc.) to an unreasonable safety risk.  Defendant omitted from Plaintiff Loh and the Hawaii Subclass, to whom it had a duty to disclose, the material fact that the Onewheel vehicles were sold with defects, as set forth herein, that created an unreasonable safety risk.  This is a fact that a reasonable consumer would consider important in their purchase decision.

274.    Pursuant to H.R.S. § 481A-4(a), Plaintiff Loh the Hawaii Subclass seeks a court order enjoining the above-described wrongful acts and practices of Defendant, ordering Defendant to extend repair remedies to the Hawaii Subclass, and awarding restitution and disgorgement.

275.    Pursuant to H.R.S. § 481A-4(b), Plaintiff Loh and the Hawaii Subclass, seeks reasonable attorney's fees together with costs of suit.  Defendant willfully engaged in the above trade practices knowing them to be deceptive.

## COUNT TWELVE
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (H.R.S. § 490:2-314)
### (On Behalf of the Hawaii Subclass)

276.    Plaintiff Loh and the Hawaii Subclass repeat and reallege paragraphs 1-178, as though fully set forth in this Count.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

277.     Defendant is and was, at all relevant times, a "merchant" with respect to Onewheel vehicles as defined by H.R.S. § 490:2-104, and manufactured, distributed, warrantied and/or sold Onewheel vehicles.

278.     Pursuant to H.R.S. § 490:2-314, a warranty that Onewheel vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold was implied by law in the instant transactions.

279.     Plaintiff Loh and the Hawaii Subclass purchased Onewheel vehicles manufactured and sold by Defendant in consumer transactions.

280.     Onewheel vehicles, when sold and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which they are used. Onewheel vehicles left Defendant's possession and control with the defects alleged hererin and renders them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to public safety. Plaintiff Loh and the Hawaii Subclass used their Onewheel vehicles in the normal and ordinary manner for which they were distributed and advertised.

281.     Defendant knew before selling or leasing the Onewheel vehicles to Plaintiff Loh and the Hawaii Subclass, or earlier, that the Onewheel vehicles were manufactured with the defects alleged herein that may cause the vehicles to among other things to inexplicably Nosedive, rendering Onewheel vehicles unfit for their ordinary purpose.

282.     Despite Plaintiff Loh and the Hawaii Subclass normal and ordinary use, maintenance, and upkeep, the Onewheel vehicles had defect that existed at the time Defendant transferred the Onewheel vehicles from its possession or control. The defect rendered Onewheel vehicles unfit for their ordinary use and incapable of performing the tasks they were distributed, sold, and advertised to perform.

283.     As a result, the Onewheel vehicles are not of fair or average quality. Nor would the vehicles pass without objection in the recreational transportation industry. The fact that the defects set forth herein can cause and have caused death (and can and have resulted in numerous life-altering injuries) renders the Onewheel vehicles unsafe to use, and requires repair or replacement before safe, ordinary use can resume.

284.    All conditions precedent have occurred or been performed.

285.    Defendant had actual notice of its breach of warranty.  Through consumer complaints, warranty records, communications with its agents and employees *inter alia*, Defendant knew of the defect, the existence and ubiquity of which it knew much earlier.

286.    Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect.  Defendant knew when it first issued these warranties and their limitations that the defect existed, and that certain defects would void said warranties.  Defendant also failed to take necessary actions to adequately disclose or cure the defects after the existence of the defects came to the public's attention, and squandered its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses.  Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, cure its breaches of warranty, or otherwise attempt to resolve or address Plaintiff Loh's and the Hawaii Subclass' claims.

287.    As a direct and foreseeable result of the defect in Onewheel vehicles, as set forth herein.  Plaintiff Loh and the Hawaii Subclass have suffered diminution in the value of Onewheel vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Onewheel vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

288.    Plaintiff Loh and the Hawaii Subclass have had sufficient direct dealings with Defendant or its agents to establish privity of contract between themselves and Defendant. Privity, nevertheless, is not required in this case because Plaintiff and the other Class Members were intended third-party beneficiaries of contracts between Defendant and its dealers; specifically, they are the intended beneficiaries of Defendant's implied warranties.  The dealers were not intended to be the ultimate consumers of Onewheel vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff Loh and the Hawaii Subclass.  Privity is also not required because Plaintiff Loh and the Hawaii

Subclass' Onewheel vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class and Subclasses as defined above;

B. Appoint Plaintiffs as the representatives of the Class and Subclasses and their counsel as counsel for the Class and Subclasses;

C. Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs, Class Members, and Subclass Members are entitled;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class and Subclass members with appropriate curative notice regarding the existence and cause of the design defect; and to correct the advertising and marketing practices as described herein;

F. Award reasonable attorney's fees and costs as permitted by law; and

G. Grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 4, 2022                          Respectfully submitted,


                                        /s/ M. Anderson Berry
                                        M. Anderson Berry, Esq.
                                        Clayeo C. Arnold, Esq.
                                        John T. Stralen, Esq.
                                        **CLAYEO C. ARNOLD,**

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:21-cv-06088-EJD

**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
carnold@justice4you.com
jstralen@justice4you.com

*Attorneys for the Plaintiffs and the Class*