Clayeo C. Arnold, SBN 65070
M. Anderson Berry, SBN 262879
John T. Stralen, SBN 171227
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
carnold@justice4you.com
aberry@justice4you.com
jstralen@justice4you.com

*Attorneys for the Plaintiffs and the Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JAMES LOH, SEAN MICHAEL SMITH, GIOVANY RICO, and BRADLEY REBER, individually, and on behalf of those similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>FUTURE MOTION, INC.,<br><br>     Defendant. | Case No.: 5:21-cv-06088<br><br>**THIRD AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1.    Plaintiffs JAMES LOH, SEAN MICHAEL SMITH, GIOVANY RICO, and BRADLEY REBER ("collectively Plaintiffs") bring this action, on behalf of themselves and on behalf of all others similarly situated, against Defendant FUTURE MOTION, INC. ("Future Motion" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information learned to date through investigation, except as to the

allegations specifically pertaining to Plaintiffs, individually, which are based on personal knowledge:

## I. NATURE OF THE ACTION

2.     This Class Action, as detailed herein, arises from the hazards and dangers posed by the design defects present in Defendant's Onewheel "electrically motorized board" and from Defendant's violations of state and federal consumer protection laws, and is brought on behalf of Plaintiffs and similarly situated Class Members who purchased or received the one-wheeled, electric powered vehicles within the relevant time period.

3.     As detailed in this Third Amended Complaint, each of the Onewheel models (the Pint and the XR) have proven to be an *extreme* danger to riders due to a defective Pushback warning system which fails to adequately warn, or warn at all, riders that the Onewheel is about to suddenly shut down and stop moving. Upon this sudden shut down and stop, the vehicles throw the rider off of the board, face first toward the ground and/or into the surrounding terrain. This extremely hazardous – and in some cases *lethal* – event has been coined "Nosedive." When the defective Pushback warning system fails to warn the rider this event is coming, it results in "Unwarned Nosedives."

 

4.     As described herein, this defective Pushback warning system combines and is exacerbated by issues with the Onewheel's underpowered motor and battery that lacks sufficient capacity, has caused numerous serious (and

sometimes fatal) injuries to users in California, Hawaii, Pennsylvania, and throughout the United States. These design defects are present in each and every Onewheel XR and Pint.

5.     Plaintiffs by this action, on behalf of themselves and on behalf of those similarly situated Class Members, seek relief for the injuries and monetary damages they have sustained as the result of Defendant's violations laws as recited herein.

## II. PARTIES

6.     Plaintiff SEAN MICHAEL SMITH ("Mr. Smith" or "Plaintiff Smith") is a citizen of California, and resides in Acampo, California. Mr. Smith purchased a Onewheel XR from Defendant on or about June 19, 2020. Mr. Smith used the product for personal transportation and recreational use on sidewalks, roads, and paved/unpaved paths around his residence and place of employment. He reviewed the Onewheel's literature and owner's manual. After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, as discussed in detail below, Mr. Smith no longer operates the device. He is also unable to return the device because it is no longer eligible for return. Mr. Smith contacted Defendant, worked with them on attempts to repair the device remotely, and even sent the Onewheel back to Defendant for physical examination and another repair attempt of the Unwarned Nosedive and defective Pushback warning system issues, in or around October 2020; however, after those multiple attempts to fix these issues, Defendant could not properly repair Mr. Smith's Onewheel XR, and he still experienced an Unwarned Nosedive after failing to receive any detectible warning from the Pushback warning system.

7.     Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Smith of the existence of the defect(s) set forth herein prior to purchase. Had Defendant disclosed such defects to him, or had such defects and dangers been known to him at the time of purchase, Mr. Smith would not have purchased the Onewheel.

8.    Plaintiff GIOVANY RICO ("Mr. Rico" or "Plaintiff Rico") is a citizen of California, and resides in Escondido, California. Mr. Rico purchased a Onewheel Pint from Defendant on or about May 27, 2021. Mr. Rico used the product for personal transportation and recreational use on sidewalks, roads, parking lots, and paved paths around his residence and place of employment in San Diego, California. He reviewed the Onewheel's literature and owner's manual. After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, as described in detail below, Mr. Rico no longer operates the device. He is also unable to return the device because it is no longer eligible for return. Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Rico of the existence of the defect(s) set forth herein prior to purchase. Had Defendant disclosed such defects to him, or had such defects and dangers been known to him at the time of purchase, Mr. Rico would not have purchased the Onewheel.

9.    Plaintiff BRADLEY REBER ("Mr. Reber" or "Plaintiff Reber") is a citizen of Pennsylvania, and resides in Reading, Pennsylvania. Mr. Reber purchased a Onewheel XR from Defendant on or about August 8, 2020. Mr. Reber used the product for personal transportation and recreational use on sidewalks, roads, parking lots, and paved paths around his residence. He reviewed the Onewheel's literature and owner's manual. After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, as described in detail below, Mr. Reber no longer operates the device. He is also unable to return the device; when he reached out to return his defective product to Defendant, Defendant's representative informed him that he would have to pay for shipping and made no guarantees of repairing the device, replacing the device, or any offer of a refund. Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Reber of the existence of the defect(s) set forth herein prior to purchase. Had Defendant disclosed such defects

to him, or had such defects and dangers been known to him at the time of purchase, Mr. Reber would not have purchased the Onewheel.

10.     Plaintiff JAMES LOH ("Mr. Loh" or "Plaintiff Loh") is a citizen of Hawaii, and resides in Honolulu, Hawaii. Mr. Loh purchased a Onewheel Pint from Defendant, on or about April 1, 2021. Mr. Loh used the product for personal transportation and recreational use on sidewalks, roads, paved paths, and beaches around his residence. He reviewed the Onewheel's literature and owner's manual. After learning of and experiencing some of the hazards and dangers associated with the foreseeable operation of the product, as described in detail below, Mr. Loh no longer operates the device. He is also unable to return the device because it is no longer eligible for return. Neither Defendant, nor any of Defendant's agents, dealers, or other representatives, informed Mr. Loh of the existence of the defect(s) set forth herein prior to purchase. Had Defendant disclosed such defects to him, or had such defects and dangers been known to him at the time of purchase, Mr. Loh would not have purchased the Onewheel.

11.     Defendant FUTURE MOTION, INC. is a Delaware corporation, with all of its Onewheel vehicles being developed in, designed in, manufactured in, assembled in, and distributed from California. Defendant's principal business office and principal executive office are located at 1201 Shaffer Road, Santa Cruz, California, 95060. Plaintiffs are informed and believe that decisions regarding Defendant Future Motion, Inc.'s development, design, manufacture, assembly, marketing, advertising, and distribution were made in California. Furthermore, Future Motion's website instructs that customer correspondence be directed to a California address.

12.     Moreover, at all times relevant to this Third Amended Complaint, Defendant marketed, advertised, and sold its Onewheel XR and Pint models in California, Hawaii, Pennsylvania, and throughout the remaining United States.

///

## III. JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) at least one Class Member is a citizen of a state difference than Defendant, including Plaintiff Loh who resides in Hawaii and Plaintiff Reber who resides in Pennsylvania. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     The Northern District of California has personal jurisdiction over Defendant because Defendant conducts substantial business in California and in this District through online sales of the Onewheel vehicles. Furthermore, Defendant Future Motion is headquartered in California and Defendant conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contacts with the State of California.

15.     Venue is proper under 28 U.S.C. § 1391, because Defendant does business in and is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. On information and belief, Defendant manufactures its products in Santa Cruz County and distributes its Onewheel vehicles throughout the United States, via online purchase platforms.

## IV. FACTUAL BACKGROUND

16.     The Onewheel is a self-balancing, battery-powered, electric transport, often referred to as an "electric skateboard."

17.     Onewheel vehicles have been developed, designed, manufactured, assembled, tested, marketed, promoted, formulated, inspected, advertised, sold, and/or distributed by Defendant since in or around 2013. Defendant developed and designed not only the Onewheel products, but all of the subsystems that power it, including: motors, power electronics, battery modules, firmware and smartphone

applications ("apps").

18.     Defendant developed, drafted, and published the owners' manuals, warranty booklets and information included with the Onewheel when purchased. Furthermore, Defendant performed activities concerning but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of Onewheels throughout the United States, including but not limited to, the specific states of California, Hawaii, and Pennsylvania.

19.     Until recently, Defendant offered two models: the "Pint," which Defendant describes as small, light, nimble, and "for fun," and the "XR," which Defendant describes as fast, far, epic, and "for shredding."[1] In late 2021, Defendant introduced two new models of Onewheel boards.[2]

20.     Pricing for a Onewheel Pint started at $950 and the Onewheel XR started at $1,799. The complete package for the XR, called the "Elite Bundle," retailed for $2,249. Optional accessories, primarily enhanced colors and graphics, and other items offered by Defendant can significantly increase the base prices for both models.

21.     Typically, "electrically motorized boards"[3] should go no more than 20 mph on a paved surface. Defendant lists the "top speed" of the Pint model as 16 mph and the XR as 19 mph.[4] It is well-documented, however, that Defendant's

---

[1] *See* https://web.archive.org/web/20210615230023/https://onewheel.com/pages/onewheel-pint-vs-onewheel-xr "Compare," [last accessed Aug. 1, 2022].

[2] It is currently unknown whether the new Onewheel models have the same defects as the "XR" and "Pint" at issue in this lawsuit.

[3] For example, in California, an "electrically motorized board" is any wheeled device that has a floorboard designed to be stood upon when riding that is not greater than 60 inches deep and 18 inches wide, is designed to transport only one person, and has an electric propulsion system averaging less than 1,000 watts, the maximum speed of which, when powered solely by a propulsion system on a paved level surface, is no more than 20 miles per hour. The device may be designed to also be powered by human propulsion. (*See* Cal. Veh. Code, § 313.5.)

[4] *See* https://https://onewheel.com/pages/faq, "What is the difference between Onewheel+ XR and Onewheel Pint?," [last accessed Aug. 1, 2022].

Onewheel vehicles are capable of carrying riders at speeds as high as 26.1 mph or more.

22.    While these vehicles are also advertised and marketed as being capable of "go[ing] off-road" and "tackl[ing] almost any terrain,"[5] in practice, the Onewheel is most commonly ridden on paved surfaces (roads and sidewalks) near the flow of traffic, alongside pedestrian travel, and/or around other obstacles present in such environments.

23.    Defendant's website depicts users on a Onewheel in a variety of settings: crossing a street (with cars and pedestrians present), on dirt roads, on sidewalks, while carrying groceries in both hands,[6] at night, on the beach and in a variety of other settings.[7]



---

[5] *See* https://onewheel.com/pages/faq, "FAQ," "Can Onewheels go off-road?," [last accessed February 4, 2022].

[6] *See* https://onewheel.com/blogs/stories/meals-on-onewheels, 'Meals on Onewheels," [last accessed Aug. 1, 2022].

[7] *See* https://onewheel.com/pages/about-us, "About Us," [last accessed Aug. 1, 2022]; *see also* https://onewheel.com/pages/flowstate, "Flow State," [last accessed Aug. 1, 2022].





///
///

24.    An analysis of the defects that exist in the Onewheel devices that are the subject of this case begins with an understanding of the term "Nosedive" that is unique to, and coined by, Onewheel riders.

**What Is A "Nosedive"**

25.    Nosedive: Nosedives occur when the electric current sensors governing the motor and battery and electrical systems in the Onewheel detect that the motor, motor circuits, motor components, the battery, or a combination thereof, are too close to their functional limits that they are at risk of failure, damaging the motor and its components, melting wires, rendering the electric motor inoperable, or overheating the lithium battery and causing it to catch fire. To stop the Onewheel's motor from failing or the battery from overheating due to an overload of electrical current, the electrical system circuit sensors are programed to shut the motor down before this occurs. This immediately results in the failure of the Onewheel board to maintain its ability to self-balance the rider. Due to the rider's forward momentum, the front of the Onewheel, or it nose, slams into the ground while the board is still traveling forward, ejecting the rider from the board. For purposes of this lawsuit, Nosedives fall into two categories: those that are "Forewarned" by a properly operating "Pushback" warning system, and those that occur without warning or an inadequate warning, as a result of defects that cause "Pushback" to be an unreliable warning system and fail to adequately warn riders the Onewheel of an imminent shut down and Nosedive. Plaintiffs refer to this as an "Unwarned" Nosedive.

**Two Different Types Of "Nosedives"**

26.    Forewarned Nosedive: A Forewarned Nosedive occurs when the operational limits of the board's motor or battery, or both, are near the end range of their capacity, and a properly working "Pushback" safety warning sufficiently engages long enough before the board shuts down for the rider to perceive the Pushback warning, determine what action is necessary to take, and take that

appropriate action to avoid the Onewheel shutting down. If, instead, the rider ignores the Pushback warning, the electrical sensors will shut the motor down. As described above, this results in the failure of the board's ability to self-balance. Due to the rider's forward momentum, the front of the Onewheel board, or it nose, slams into the ground while the board is still traveling forward, immediately stopping the board and ejecting the rider.

27.     Unwarned Nosedive: Unwarned Nosedives occur under normal, anticipated riding conditions when, due to one of the defects described below, the Pushback safety warning system either fails to engage at all, fails to engage strongly enough to be perceived, or fails to engage so as to provide sufficient time for the rider to perceive the Pushback warning and react appropriately to avoid a nosedive. When this occurs, the rider is unaware of the need to react to avoid an impending nosedive. The electrical system's current sensors shut down the motor, the front of the board Nosedives into the ground, stopping the board abruptly, ejecting the rider from the board. In any of these situations the Pushback warning system fails as a warning mechanism to alert a rider to avoid an impending Nosedive and thus avoid being ejected from the board. Unwarned Nosedives stem from defects described in this Complaint and are caused under certain circumstances by the motor's insufficient torque, the battery's insufficient capacity, or both. Unwarned Nosedives pose an extreme safety risk to the rider because the rider is spontaneously ejected from the board without warning.

**Basic Principles Of The Onewheel And Other Self-Balancing Vehicles**

28.     The Onewheel Pint and XR are motorized, short-range (between 6-8 miles for the Pint and 12-18 miles for the XR) transportation devices that are powered by an electric motor with a rechargeable lithium battery. The devices are comprised of a platform deck (similar to skateboard deck or small snowboard), aluminum frame, and a single go-cart wheel that is placed in the center of the platform.  The electric motor is housed inside the go-cart wheel. The device's single

lithium battery is underneath one side of the board's platform where the rider stands. The motor's control model is housed underneath the other side of the board's platform.

29.   A Onewheel is ridden in a similar fashion to a traditional skateboard or snowboard. The rider stands on the platform with both feet straddling the single go-cart wheel in the middle of the platform.

30.   Important to the understanding of the defects described herein, Onewheel vehicles are "self-balancing" in that the vehicle's electric motor, powered by a single lithium battery, both of which are governed by complex firmware, works to keep the rider balanced over the single wheel at all times.

31.   In other words, the system operates as an unstable "inverted pendulum." Normal pendulums, such as those found in a grandfather clock, are relatively stable. With a normal pendulum, the axis of rotation is at the top of the arm of the pendulum, with the weight (center of mass) below. After a few seconds of swinging motion, the weight settles below the axis, pulled by the force of gravity.

32.   On the other hand, with an inverted pendulum, the system is unstable because the center of mass is *above* the axis of rotation. Thus, the axis must be in constant motion to keep the axis under the center of gravity of the mass. In case of the Onewheel, the rider is the mass situated above the single wheel, which serves as the axis. When the rider is on the Onewheel, in order to keep the inverted pendulum stable and balanced so the rider stays on the board, the Onewheel's electric motor, single lithium battery, and firmware must remain operable and work in concert perfectly, making split second, constant adjustments, in order to keep the inverted pendulum balanced and safely maintain the rider's center of gravity above the board's single wheel.

33.   This basic principle applies to all self-balancing vehicles. In order to balance the inverted pendulum, self-balancing vehicles, including the Onewheel, utilize tilt sensors, which are mounted on their controller boards. This sensor (an

accelerometer and gyroscope) measures the tilt angle relative to the center of the earth. The tilt angle is then read by the device's firmware, which is written to control the vehicle so that it continually keeps that tilt angle on zero. More specifically, the firmware constantly directs the vehicles' electric motor to accelerate forward or backward, to keep the pendulum's axis of rotation under the rider (or center of mass).

34. To propel a self-balancing vehicle forward, the rider must fight the system's objective to return to the tilt angle to zero. Thus, accelerating forward is accomplished by the rider physically preventing the vehicle from returning to zero by leaning forward. This interaction propels the vehicle forward as the board powers the motor to accelerate in a forward direction in an attempt to return the rider's center of gravity to be above the wheel. Applying these principles, a Onewheel is propelled by the rider leaning to apply weight on the front of the board to accelerate and leaning to apply weight on the back of the board to slow down.

**The Onewheel Is Unique**

35. In general, self-balancing vehicles fall into two separate categories. Those with handlebars and those without handlebars that are essentially "hands-free."

36. <u>Handlebar style</u>: With handlebar style self-balancing vehicles, like the Segway Scooter, (which has a top speed of only 12 mph) when the vehicle



approaches its operational power limits, the device's firmware instructs the motor to speed up the wheel briefly and *pushes the handlebars back into the rider's chest*. This feature physically forces the rider to the rear of the center of balance. Once the rider is physically moved (pushed back into position), the vehicle slows down, while also maintaining safe balance and not exceeding operational limits, avoiding damage to the vehicle's motor and electrical system.

37. <u>Hands-Free Style</u>: The Onewheel falls into the hands-free category. However, except for the Onewheel, the hands-free, platform-style, single-wheel vehicles that are currently available to consumers, position the rider on much shorter platforms that are on each side of the single wheel and their body directly above the wheel. Compared to the Onewheel's much longer platform approximately two feet in length, the shorter platform of other single-wheel self-balancing vehicles minimizes the rider's ability to locate their body weight ahead of the balance point. Thus, the rider is not physically able to position themselves so far forward of the axis point where the vehicle is required to expend excessive power that exceeds the electric motor's and battery's operational limits while accelerating to return the rider to the center of gravity and maintain self-balance. An example of this design is shown in the illustration below.



38. <u>The Onewheel</u>: However, the Onewheel's design is unique, creating several challenges to design a skateboard style, hands-free self-balancing vehicle that will operate safely under all normal, anticipated riding conditions. Unlike other hands-free self-balancing vehicles, the hands-free platform of the Onewheel is akin

to a two-foot-long skateboard with a wheel at the center. This design requires the rider to stand on the board with one foot at the front of the platform, and the other foot at the back of the platform. The rider's stance, while necessarily leaning their body weight on their front foot, places the rider's weight (and corresponding momentum) much farther ahead of the balance point, in order to propel the vehicle into forward motion. This design means that the Onewheel allows the rider to stand over 12" in front of the center of the wheel axle, which then requires significant mechanical force to balance the Onewheel against the rider's weight, leading to the system struggling to stay "ahead" of the rider and for the system to easily overload and fail.

39.     The following diagram and description from an online article, helps to explain the physics of how a nosedive occurs.[8]



40.     The above illustration helps to explain the mechanism of a Onewheel nosedive:

> Nosedives are caused by too much force A. To counteract a nosedive event, the motor torque must exert a force B by increasing D to keep the wheel under the rider.

---

[8] https://shreddlabs.com/2019/07/12/nosedives/ [last accessed Aug. 1, 2022]

E and F are equal.  So, where the board is required to "slow down" (decreasing force F), E (the rider's center of mass) remains constant due to momentum.

With F diminished (or removed), the more E there is, the more A will occur. To avoid A, D has to use enough torque (power) to keep the board from disengaging and forcing the rider into nosedive.

41.     With the rider up to 12" in front of the axel of the wheel, a mechanical lever is created with the wheel axel as the fulcrum.  The rider has a mechanically enhanced ability to overdrive the capacity of the system to keep the platform in balance, both by having the rider's own force on the Onewheel increased by the lever action and by having the force the Onewheel must exert to balance rider increased by the same proportion.  This causes the board to be prone to exceed its operational limits and be unable to avoid "A", leading to a Nosedive.



## Onewheel's Pushback Feature Is A Dangerously Unreliable Warning System.

42.     Onewheel publishes a maximum rider's weight of 250lbs (Pint Model) and 275lbs (XR Model). However, the front portion of the Onewheel (the foot-long lever arm), on which the rider places their weight to propel the vehicle, acts as a lever and significantly increases the need for torque from the motor and power from the battery when compared to other single-wheel self-balancing

vehicles that are designed with shorter platforms that position the rider's body directly over the center of the wheel.

43. The Onewheel's physical design (the length of the board, the wheel, the position of the rider) has its motor and battery often functioning too close to the maximum capacity of their performance, because those systems are not powerful enough to consistently channel the power necessary to self-balance and provide the intended Pushback "warning" to the rider 100% of the time Pushback as needed. Nor do such systems have enough power to physically lift or push the rider back into a safe position.

44. In other words, the Onewheel's motor and battery encounter scenarios under normal use where they struggle on the edge of their performance abilities to support the rider's position on the platform. When that occurs and there is an event that momentarily requires an additional burst of energy, there is simply not enough capacity to lift the rider up to drive the single wheel back under the center of balance without overloading the electrical system and causing a shutdown and an Unwarned Nosedive.

45. This entire situation is made even more dangerous for the rider because the Onewheel's motor lacks the enough torque to force the rider's center of mass behind the wheel axle center to force a slowdown, which is what "push back" type features in other single-wheel electric boards are designed to do. Due to the potential imbalance of the rider placing weight up to 12" in front of the center of the wheel axle and the insufficient motor torque and battery power for the Onewheel, the Onewheel entirely relies on the (unreliable) "warning" aspects of the "Pushback" to be the only safety mechanism to induce a change in rider behavior. Unlike other self-balancing vehicles, Onewheels are unable to re-center the rider's mass by themselves.

///

///

46.     As an example, at 12 miles per hour, the torque the Onewheel delivers to support and balance a rider leaning out over the front of the board falls below 29 foot-pounds. This is already troublesome for the rider. However, at greater speeds near the upper limits of the board, precisely when Defendant is relying on Pushback to notify the rider of a dangerous condition, the available torque drops below 15 foot-pounds, under certain circumstances rendering Pushback unnoticeable.

47.     In fact, this dynamic of the available power for Pushback dropping as the Onewheel's power and motor system are under higher levels of strain means that Pushback is weakest and least detectible when the rider most needs to heed it in order to avoid a Nosedive.

48.     As a result of the insufficient motor and battery power, and the inherent design of the board, every rider of the Onewheel Pint and XR is exposed to the faulty and insufficient Pushback warning system and, after riding the board enough, will eventually experience an Unwarned Nosedive.

49.     Onewheel vehicles are defective insofar as they routinely experience Unwarned Nosedives--sudden, unintended and uncontrollable abrupt stops at speeds as high as 15-20mph, while being operated under normal circumstances. This issue is the result of the motor and battery not being equipped with sufficient power capability and capacity to perform all of the functions of the board consistently (self-balancing, propulsion, slow-down, detectable rider Pushback "warning") without being in jeopardy of system overload and shutdown to avoid fire or damage to the electrical system. This defect causes unsafe riding conditions by exposing the rider to Unwarned Nosedives and the possibility of serious or even fatal injury.

**Onewheel Electric Motor Current Sensors And Lithium Battery**

50.     To protect the Onewheel's electric motor and battery from failure or catching fire, a sophisticated set of monitoring systems are in place. These are comprised of physical sensors connected to inputs on the main control processor

which continuously scans the electrical systems for problems, including overload, every time the firmware cycles. One critical component is a sensor that measures the system's electrical current. The current sensor, which is a solid-state silicon chip, sits in the electrical current path between the battery and the motor.

51.    Electrical current is tracked by the current sensor as the power moves either toward the motor (spikes going up) or during braking, away from the motor to the battery (spikes going down). In the firmware there is a complicated averaging algorithm which tries to analyze the spikes of power over time to decide what the root-mean-square (RMS) value is of the current, to know when to trigger a Pushback (shown in red) or shut the motor off, ejecting the rider from the board. (See example illustration.)

52.    These RMS calculations are constantly looking at the number of peaks which pass the threshold over time to form an average, which a decision can be made from. If ALL the peaks go above the threshold, the system is saturated and



risks being shut down. The only way to reduce the demand for power and keep the electrical current from maxing out the current sensor, or the motor, is to position the rider off the front of the vehicle and allow the tilt angle to return closer to zero, allowing the board to slow down, decreasing the need for torque from the motor and power from the battery.

**Pushback, Nosedive, And Onewheel's Inadequate Motor Torque And Battery Power Systems**

53.    An important matter to keep in mind with regard to the Onewheel's unique design that allows the rider to place exponentially more leverage on the front of the board when compared to other hands-free single-wheeled vehicles is that even under normal, anticipated riding conditions, the electric motor of any self-

balancing vehicle must remain active and engaged at all times. Thus, a self-balancing vehicle cannot simply "slow down" to reduce speed if the motor and battery are approaching operational limits. If such were the case, the self-balancing nature of the vehicle would no longer be present, and the vehicle would pitch forward and eject the rider. In the case of the Onewheel, this would create a Nosedive situation. As with any inverted pendulum, the self-balancing vehicle's motor and battery must be ready and able to apply enough power 100% of the time to keep the rider balanced. In other words, absent the rider leaning rearward, the only way for the firmware to decelerate the vehicle, is for the electric motor to accelerate and get a bit ahead of the rider to move the center of gravity rearward. The motor slowing down to avoid exceeding operational limits is not an option and doing so would cause a Onewheel to Nosedive because the board is no longer maintaining a state of self-balancing.

**The Pushback Warning System**

54.     Because the amount of downward force a Onewheel rider places on the front of the approximately two-foot board that extends out approximately 12 inches on both sides of the wheel, responsibility is placed riders to not *intentionally* allow their Onewheels to exceed their operational limits, to avoid causing the circuit sensors to shut the motor down. The design method chosen by Defendant was to incorporate a single warning feature, Pushback.

55.     Defendant states in its Onewheel Owners' Manual that:

Like everything in life, Onewheel+ has its limits. If at any time you attempt to go too fast, descend a very steep hill or ride with a low battery, your Onewheel+ will "push back." In a push-back situation, the nose of the board will lift to slow the rider down. The only way to avoid push back is to decrease your speed by leaning back. If you'd like to go a bit faster, you can switch your Digital Shaping to a more aggressive setting. This will have a higher threshold for push back.

WARNING: Ignoring safety warnings, including push back, may result in loss of control, serious injury or death.

///

56.    The Onewheel's Pushback "warning" is purportedly triggered in situations where the battery is too full, too low, the rider is descending a steep hill, or the rider is travelling too fast.  When working properly, riders are told by Defendant that Pushback is supposed to engage and warn the rider when they are reaching operational limits of the Onewheel and shutdown of the motor is imminent. Defendant states that Pushback is a warning to the rider that they must shift their weight to the back foot and slow down.

## Pushback Is The Only Warning System On The Onewheel To Prevent Nosedives

57.    Future Motion's Onewheel vehicles are designed to accelerate when the front deck of the board is pushed downward. Upon reaching its top speed or other operational limits, the front deck of the board is supposed to automatically rise to level, and this action, Pushback, is supposed to be interpreted by the rider as a signal that the vehicle has reached its operational limit. Defendant informs consumers that Pushback is a safety mechanism and is the board's way of telling riders that they are reaching the limits of performance and that the rider should ease up and/or slow down.

58.    However, unlike other self-balancing, single-wheeled vehicles, the Onewheel's Pushback is not strong enough to physically push the rider back to a stable position over the wheel by itself. Thus, for the Onewheel, Pushback can only serve as a warning mechanism to the rider of the need to change their orientation on the board. There are no other warnings, such as a sound, or a sound increasing in frequency, volume, or pitch as the board approaches shut down.  There are no visual cues, such as a light that gets increasingly bright or changes color as the board approaches shut down.

59.    Defendant's "one warning for all dangers" approach means that the rider has no certain way of knowing what actions are necessary to take to address whatever danger is causing the Pushback or if the dangerous condition is getting

better or worse as a result of their response to the Pushback. There is no other warning, just Pushback, which is all the Onewheel relies on to warn the rider of impending spontaneous ejection from the board and a risk of catastrophic injury or death.

60. Additionally, enhanced warnings such as sounds or lights, or both, could have been added at little cost. The new GT model recently released by Defendant in late 2021 incorporates an audible warning in addition to Pushback. Recognizing the insufficient warning system in the Onewheel XR and Pint, several aftermarket products have been developed by third parties that can be added, such as warning lights and alarms.

**Dangers Of Unwarned Nosedives**

61. All nosedives are dangerous, since the result is the rider is abruptly ejected from the moving board due to its abrupt stop. Defendant recognizes that even Forewarned Nosedives, those where Pushback engaged sufficiently and for long enough to warn the rider in time to take appropriate action, as being a critically dangerous. As the Onewheel Owner's Manual states: "[i]gnoring safety warnings, including push back, may result in loss of control, serious injury or death."

62. However, Defendant's literature that comes with the board and Defendant's information published online completely ignores the regular occurrence of Unwarned Nosedives.

63. As discussed in the preceding paragraphs, Pushback purportedly warns the Onewheel user, during use, that the user is approaching the vehicle's limits. This purported "safety feature" is influenced by tire pressure, wind direction/speed, battery level, surface condition, velocity, grade, terrain, moisture, and the rider's stance/weight, and anything else that can influence the power system electrical "load" of the board.

///

///

64. This multitude of factors affects the performance of the product and informs the firmware's evaluation of whether the Onewheel is conforming to or exceeding its operational parameters. As a result, there is no way for a rider to determine or predict which factors are causing Pushback when they experience it, if they can even detect it.

65. In various circumstances, Pushback can be too subtle for a rider to detect, especially at higher speeds when the available torque to push back is reduced due to the under-powered system already being taxed by the power requirements to maintain speed and balance, or it completely fails to work at all, because the board lacks sufficient power reserves to initiate a Pushback, and the board's motor shuts down without any warning, or a sufficient warning, which in turn causes the rider to be launched by the board as the result of an Unwarned Nosedive.

66. In situations where Pushback is unnoticed or fails to engage entirely, a rider will proceed to push the front deck of the board downward (to continue travelling forward) and the Onewheel will suddenly stop. Riders experience this as a feeling that the motor simply seizes and cuts off and the wheel locks in place, with the Onewheel coming to a complete and immediate halt, and the rider will experience an Unwarned Nosedive. When the defects discussed herein trigger an Unwarned Nosedive, riders are helpless to prevent their forward momentum from throwing them headfirst off the front of the Onewheel. Based on online reports, thousands of riders have suffered some type of injury following an Unwarned Nosedive, many have suffered catastrophic, life altering injuries, and some have died.

**Summary Of Defects That Cause Unwarned Nosedives In Every XR And Pint Onewheel Sold During The Class Period**

67. The design of the Onewheel, which creates the circumstances and hazards set forth above to occur, results in the Onewheel failing to perform as safely

as an ordinary consumer would have expected it to perform when is used in an intended or reasonably foreseeable manner.

68.  The following summarizes the known defects that exist in all Onewheel XR and Pint models sold by Defendant within the class period:

69.  Under normal, anticipated riding conditions the following defects exists with Defendant's "Pushback" warning system in all subject XR and Pint Onewheel models:

(1) At times, Pushback fails to engage at all before the motor exceeds capacity and the sensors shut the motor down and the board fails to self-balance, thus providing no warning to the rider of the impending nosedive. This results in an Unwarned Nosedive that ejects the rider from the board.

(2) At times, Pushback engages with too little time before the motor is overloaded and the sensors shut the motor down and the board fails to self-balance, resulting in an Unwarned Nosedive occurring before the rider (or any human) can perceive the Pushback warning and react to avoid the impending nosedive. This results in an Unwarned Nosedive that ejects the rider from the board.

(3) At times, the energy being consumed by the motor leaves too little energy left in the battery for the battery to supply the additional energy needed for Pushback to engage forcefully enough to become a sufficient warning, thus making Pushback too subtle for the rider to perceive before the system's electrical current sensors are overloaded and the sensors shut the motor down, the board fails to self-balance, and the board nosedives. This results in an Unwarned Nosedive that ejects the rider from the board.

///

1     70. An additional defect relates to the lithium battery in that the battery has insufficient capacity to prevent Unwarned Nosedives under normal, anticipated riding conditions, in certain circumstances, even at lower speeds and while riding on flat surfaces. This occurs, in substantial part, because of Defendant's design decisions, including designing the XR and Pint models with a battery that does not always have sufficient capacity to provide enough power for the motor to continue to self-balance the board and to also provide sufficient power necessary to engage Pushback in order to avoid an Unwarned Nosedive. When this occurs, the battery's inability to supply the necessary energy for the motor causes the motor to lack sufficient torque to maintain the board's self-balancing state, and the forward momentum of the board and rider results in a Nosedive.

71. The electric motor also lacks sufficient torque to prevent Unwarned Nosedives under normal, anticipated riding conditions, even at lower speeds and on flat surfaces. These types of Nosedives are, in substantial part, a result of Defendant's design decisions, including designing the XR and Pint models with an underpowered electric motor that does not always provide sufficient torque when needed for the motor to continue to self-balance the board to avoid Unwarned Nosedives.

72. Compounding the defects identified herein is an additional defect in that Defendant designed "Pushback" to be the *only* warning system to alert a rider that the motor or battery is exceeding its capacity to continue to self-balance the board, and the board is about to nosedive. For the XR and Pints models that are the subject of this case, Defendant chose to not include a back-up or secondary warning system, such as lights or sounds, to service as a potential fail-safe secondary method to alert a rider of an impending nosedive.[9]

///

---

[9] However, Defendant has developed and recently brought to market a new model, the GT that now has a beeping sound as a secondary warning system.

**Defendant's Misrepresentations And Concealment Of These Defects Increased The Danger To Consumers**

73.     In addition to the issue of defect, as set forth in the preceding paragraphs, Defendant has engaged in the wrongful conduct of misrepresenting and concealing that the inconsistent Pushback warning system exists and that it exists due to insufficient power in both the Onewheel's motor and battery.

74.     As specifically alleged in the following paragraphs, Defendant has both misrepresented the safety of the Onewheel and concealed the fact that Defendant's cannot consistently provide a rider with notice that the board is reaching operational limits – the consequences of which can result in serious or fatal injury (injury caused by the board halting and launching the rider into an unwarned nosedive).

75.     Defendant has an affirmative duty to disclose the Pushback safety warning defect, because the defect presents an unreasonable safety hazard. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).

76.     Due to the complexity and proprietary nature of the hardware and firmware systems involved with operation of the Onewheel vehicles, Defendant has exclusive knowledge regarding some of the facts that Plaintiffs and the Class Members are informed and believe support that Defendant misrepresented the safety of the subject Onewheels and that Defendant concealed the Pushback safety warning defect present in each of the subject Onewheel models.  However, there are a number publicly available facts demonstrating that Defendant had knowledge of the faulty pushback warning system and safety hazard prior to, and at the time of, selling the devices to Plaintiff and the Class Members.

///
///
///
///

## The Process Of Developing The XR's and Pint's Internal Firmware That Controls The Self-Balancing Provided Knowledge Of The Defects

77. The Onewheel's entire system that works to self-balance the vehicle is controlled by firmware developed by Defendant that is installed into the Onewheel's hardware during manufacturing. The firmware consists of computer code and a complicated algorithm that controls the board's hardware, including the motor and the battery. The process of developing the firmware necessary for a self-balancing vehicle to work would involve significant testing and adapting the firmware. This this situation, it is the firmware that ultimately instructs the Onewheel's motor to shut down if the sensors are overloaded. The Defendant's development of the firmware and testing would necessarily result in Defendant becoming aware that Pushback is unreliable and would not work as a proper safety warning system and boards would be prone to Unwarned Nosedives.

## Defendant's Declaration Of Conformity With Testing And Safety Standards

78. Defendant affirmatively represents in their warranty manual, for each of the Onewheel models at issue, that Defendant has performed testing to ensure that the Onewheels are operational and safe. Each Warranty Manual presented a "Declaration of Conformity," that the Onewheel product "is in conformity with the provisions of" particular European Council Directives and sections.

79. A Declaration of Conformity certifies that a consumer product has been tested by an accredited laboratory or test facility to make sure it is fully operational and safe before sale. The declarations specifically state that XR and Pint models are in conformity with EN 55022 Class B limits,[10] EN 55024,[11] EN

---

[10] EN 55024 defines the immunity test requirements for information technology equipment in relation to continuous and transient conducted and radiated disturbances. Tests within the standard include Electrostatic Discharges (ESD), Electrical Fast Transients (EFT), Surge, Power Frequency Magnetic Fields, Power interruptions, Radio Frequency Interference (RFI).

[11] EN 55024 defines the immunity test requirements for information technology equipment in relation to continuous and transient conducted and radiated disturbances. Tests within the standard include Electrostatic Discharges (ESD), Electrical Fast Transients (EFT), Surge, Power Frequency Magnetic Fields, Power interruptions, Radio Frequency Interference (RFI).

60204,[12] and EN ISO 12100.[13]

80.    Future Motion's Declarations of Conformity are signed by Founder and CEO of Future Motion, Kyle Doerksen.



**DECLARATION OF CONFORMITY**

**PINT: SELF-BALANCING ELECTRIC SKATEBOARD**

PRODUCT: Onewheel Pint: Self-Balancing Electric Skateboard
TYPE MODEL: OW1-00007-XX
MANUFACTURER: Future Motion Inc
MANUFACTURER ADDRESS:
1201 Shaffer Rd.
Santa Cruz, CA 95060, USA

Council Directive 2014/30/EU on Electromagnetic Compatibility:
EN 55022 Class B Limits
EN 55024
EN 60204
EN ISO 12100

The undersigned hereby declares, on behalf of Future Motion Inc. of Santa Cruz, CA, that the above-referenced product, to which this declaration relates, is in conformity with the provisions of:

The Technical Construction File is maintained at the corporate headquarters at 1201 Shaffer Rd, Santa Cruz, CA 95060, USA.

Signed _____    CE
Kyle Doerksen, Founder, CEO      15.02.2019



**DECLARATION OF CONFORMITY**

**ONEWHEEL+ XR: SELF-BALANCING ELECTRIC SKATEBOARD**

PRODUCT: Onewheel+ XR: Self-Balancing Electric Skateboard
TYPE MODEL: OW1-00006-00
MANUFACTURER: Future Motion Inc
MANUFACTURER ADDRESS:
1201 Shaffer Rd.
Santa Cruz, CA 95060, USA

EU Machinery Directive 2006_42_EG
Council Directive 2014/30/EU on Electromagnetic Compatibility:
EN 55022 Class B Limits
EN 55024
EN 60204
EN ISO 12100

The undersigned hereby declares, on behalf of Future Motion Inc. of Santa Cruz, CA, that the above-referenced product, to which this declaration relates, is in conformity with the provisions of:

The Technical Construction File is maintained at the corporate headquarters at 1201 Shaffer Rd, Santa Cruz, CA 95060, USA.

Signed _____    CE
Kyle Doerksen, Founder, CEO      15.02.2020

81.    By this Declaration, Defendant has represented that the subject Onewheels are fully operational and safe, pursuant to the identified directives which, amongst other parameters, require testing and risk assessment for consumer safety.

_____

[12] EN 60204 addresses each type of machine's "unique requirements to be accommodated to provide adequate safety," which includes electrical supply requirements, electromagnetic compatibility (EMC) requirements, over current and over voltage protection requirements, requirements for determination of the short circuit current rating of the electrical equipment, Protective bonding requirements, terminology, and protection against electric shock, Incoming supply requirements and switching, requirements pertaining to safe torque off, emergency stop, and control circuit protection, Symbols for actuators of control devices.  It is used along with specific standards that are considered applicable to components or features of machinery. The collateral standards confirm the safe intended use of the machinery based on the risk assessment of the manufacturer.

[13] EN ISO 12100 addresses safety of machinery - General principles for design - Risk assessment and risk reduction.

THIRD AMENDED COMPLAINT            28

82.     However, the issues of Onewheel's battery and motor systems being insufficient to power consistent and detectable Pushback (as explained in the preceding section detailing the product's safety defect) are so pronounced that such issues could not have gone undetected in safety testing processes. As such, this testing, if performed properly, suggests that Defendant knew of the defect at or before the time of its sale of the subject devices to Plaintiffs and the Class Members.

83.     Kyle Doerksen, Inventor and Chief Engineer of Onewheel and Founder/CEO of Future Motion, Inc., indicated Defendant is typically rushing to get products to the market because he and his team is "going about it as fast as [they could] in terms of developing and scaling."[14] This rush to market suggests a motive for Defendant to ignore known safety issues.

## Onewheel's Application Firmware Provides Data Regarding Unwarned Nosedive Incidents

84.     Defendant introduced a software application to use with its Onewheels by no later than 2017, which is another means by which it has been provided with knowledge of the Pushback warning safety defect at or before the time of its sale to Plaintiffs and the Class Members.

85.     Amongst other capabilities, Defendant's Onewheel application collects data on each Onewheel's performance, battery, shutdown, and other components.  Users share diagnostics with Onewheel in cases where the user perceives that the board has malfunctioned, is in need of repair, and/or in other circumstances.

86.     Future Motion states on its website:
        "Connect to the app with your Onewheel on and go to the "My Boards" page. Once connected, go into the "My Boards" page. Once connected, click on the gear icon to access the board's stats. When you scroll to the bottom

---

[14] *See* transcript of Piaggio Fast Forward podcast, Jeffrey Schnapp interview of Kyle Doerksen, Inventor and Chief Engineer of Onewheel and Founder and CEO of Future Motion, Inc., Episode 12, available at: https://www.piaggiofastforward.com/podcast/episode-12, August 28, 2020 [last accessed Aug. 1, 2022].

of the page, you will see a banner reading "SEND DIAGNOSTICS". Please tap the banner and it will give you an option to comment on the diagnostics. Follow up by submitting a ticket with Customer Support to let them know that you submitted diagnostics for review with your full name and email address. Please note that just sending diagnostics will not be met with a reply, you must have open a ticket with customer support to evaluate a diagnostic."[15]

87.     Since 2017, Defendant has received at least hundreds diagnostic data reports in conjunction warranty claims and "support tickets" that were opened due to customer complaints and requests for service, specifically as the result of the failure of the Pushback warning safety system, resulting in Unwarned Nosedives. As such, Defendant had knowledge of the defect, prior to and at the time of selling the vehicles to Plaintiffs and the Class Members.

## Consumer Complaints Reports Of Unwarned Nosedive And Personal Experience

88.     As set forth infra, there are voluminous consumer complaints regarding unwarned nosedive as the result of the inadequately powered Pushback safety warning system.  Such complaints date back to years before Plaintiffs and the Class Members purchased their Onewheels and provide with an additional means of knowledge that there was a hazardous and extremely dangerous defect with their pushback safety warning and the result of that defect was Unwarned Nosedive for which many individuals have been significantly injured.

89.     Moreover, on information and belief, it is alleged that a number of Defendant's officers, managers, and directors have personal experience with the defect, because they have personally experienced it while riding the device and because they individually and personally possess additional proprietary information that is not available to the public.

---

[15] https://onewheel.com/pages/faq "how do I send Onewheel my diagnostics?" [last accessed Aug. 1, 2022]

**Products Designed To Compensate For An Insufficient Pushback Safety Warning System**

90.     A number of third parties have attempted to protect riders with the creation of aftermarket accessories and equipment to compensate for Defendant's hazardous safety defect.

91.     For example, Land Surf, LLC has developed the aftermarket accessory, "FANGS" which are described as:

> "FANGS™ reduce the friction of the nose on the ground, so when your Onewheel's front bumper meets pavement, it won't stop instantly and throw you off from the sudden deceleration. FANGS™ give you a precious few seconds to either jump off your board in a controlled manner, or possibly regain control and keep riding. They are meant for low to mid-speed nosedive mitigation ( <= 16mph), although skilled riders have ridden out much higher speeds (over 23mph). Proven to be effective by many riders, FANGS™ are now considered standard equipment for new board owners.[16]



---

[16] https://land-surf.com/products/fangs™-2-1 [last accessed Aug. 1, 2022]

92.     One company, called BadgerWheel, has created products to reduce the hazards of riding Onewheels, including a product called "BadgerSense," which is a strip of lights that the rider can connect to the Onewheel's system and that provides the rider with real-time visual information regarding the board's current power, speed, and battery levels. BadgerWheel states that these lights allow the rider to "know how much power you're using at a glance." So that the rider can "Avoid nosedives."[17] An additional product, called "BadgerSite,"[18] couples with BadgerSense, so that a rider can "know exactly how hard you're pushing the board without taking your eyes off the trail."



///

[17] https://www.badgerwheel.com/shop-online/badgersense  [last accessed Aug. 1, 2022]
[18] https://www.badgerwheel.com/shop-online/badgersight-hud  [last accessed Aug. 1, 2022]

93.    These third parties have been attempting to offer products to make Onewheels safer, since at least 2018. As part of Defendant's business operations, it proactively takes steps to locate, identify, and monitor the use of third-party products that are being sold for Onewheels. These third parties and their products can be located in minutes through online searches. As a result, Defendant has been aware that a market has been create around the Onewheel's pushback warning safety defect that causes Unwarned Nosedives.

**Despite Knowledge Of The Safety Defect, Future Motion Continues To Fail To Disclose It, And Misrepresents That The Device Is Safe**

94.    Despite knowledge of the defective Pushback warning safety system, Defendant made, and continues to make, misrepresentations regarding the Onewheel's safety on its website, software application, on YouTube and in other forums.

95.    Since at least 2018, Onewheel has made the following statements on its website, in its FAQs regarding safety:   In response to the question "Are Onewheels safe?" Defendant states:

> Yes, Onewheel is safe to ride and tens of thousands of riders enjoy riding Onewheel safely everyday (sic). Like any boardsport, there are inherent risks to riding, but if you learn the basics, stay within your limits, and take time to practice you can enjoy Onewheel's amazing riding experience with confidence every time you step on your board. Onewheel doesn't have to be an adrenaline sport, in fact, it's probably the easiest boardsport in the world. With a large air filled tire, Onewheel can ride over bumps and cracks in pavement easily. It's important for riders to always wear a helmet while riding and respect the board's limits and Pushback safety feature.

///

///

///

96.     This is a misrepresentation, because the existence of the defective Pushback warning safety feature, of which Defendant is aware, negates that a rider could have "confidence every time [they] step on the board." Onewheel, instead, makes misrepresentations about the board's safety and conceals the defect, despite the fact that it has a duty to inform consumers of such hazards.

97.     Moreover, the phrase "the basics," as quoted in the above paragraph from Defendant's website, is a clickable hyperlink that takes the viewer to number of short videos.[19] No video is longer than two minutes.

98.     The first video, entitled "How to Ride a Onewheel (in 60 seconds)," is approximately one minute long and makes no mention of pushback, nosedive, or any safety or warning features on the product or the limits of the products capabilities.[20]

99.     Additionally, the phrase "pushback safety feature" is a clickable hyperlink that takes the viewer to a video entitled "What is Pushback?" It is a one minute and thirty-six second video with over 97 thousand views. It was posted on YouTube no less than four (4) years ago. (Defendant directs consumers to this video not only from the FAQ link, but from a number of locations in Defendant's website, owner manuals, and software application.

100.   The "What is Pushback?" video features "Christian from Onewheel" who states the following:

> Hey! Christian here with Onewheel. And today we are going to be talking about pushback. Pushback is a warning to the rider that you are approaching the limits of the board. You need to lean back and slow down. So, make sure you understand it before riding. During the pushback warning, with nose of the board will lift, signaling the rider to shift their weight back.

---

[19]     https://www.youtube.com/playlist?list=PLwHhGWG1Ijyu0UTlLWWFZEXSDewgtu6n3 [last accessed Aug. 1, 2022]

[20]https://www.youtube.com/watch?v=zvjdKJVQZNg&list=PLwHhGWG1Ijyu0UTlLWWFZE XSDewgtu6n3&index=1  "How to ride a Onewheel (in 60 seconds)" [last accessed Aug. 1, 2022]

Approaching top speed is a common reason you experience pushback and the speed you experience it at will change depending on your digital shaping setting. It's important to note that other factors such as tire pressure, rider weight, battery level and incline are equally as important in when you experience pushback.

You will also receive a pushback warning if the board detects any situation in which you need to slow down and get off. For example, you will get pushback if your board is running out of battery or if you are riding downhill at full charge and experience an overcharge situation. If the strength of pushback keeps increasing, you need to immediately slow down and stop. Once you experience Pushback do not continue to lead forward to accelerate. You are riding the board past its intended limits and you can get seriously hurt. Like any sport, it's important to take your time. Make sure you stay within your limits and you always wear a helmet. Hope this has been informative and we'll see you out there shreddin' some wheel.

101. In the preceding video, Defendant's representative states that Pushback will manifest not only when a rider is going too fast, he represents that a rider "**will also receive a pushback warning, if the board detects any situation in which you need to slow down and get off**." However, Defendant, and likely Christian himself, knows that this statement is not true. Defendant does not disclose that Pushback will *only* engage if there is enough power in the motor and battery to effectuate a warning to the rider in the moment that the warning is needed. When there is not enough power, there is a substantial chance the rider will encounter an Unwarned Nosedive, due the system's limits being reached and having to shut down to avoid fire or damaging other electrical system components..

102. With regard to speed limits of the Onewheels, the website states: "Pushback will tell you when you are reaching the board's limits. When you start to feel Pushback, you need to lean back and slow down."[21]

---

[21] https://onewheel.com/pages/faq "How fast do Onewheels go? [last accessed Aug. 1, 2022]

103. On Defendant's website the FAQ regarding pushback states:
What is Pushback?

> Pushback is a safety feature that lets the rider know they have reached the limits of the board and that they need to lean back and slow down. During Pushback, the nose of the board will lift gradually, signaling the rider to shift their weight back to slow down. It is absolutely critical to rider safety that Pushback is always respected. Pushback is not an arbitrary speed limit that we have decided upon to hold you back. It defines the actual limit that the board can safely go based on a number of parameters including tire pressure, rider weight, terrain, speed, charge levels, etc. If riders choose to ignore the Pushback warning and continue to lean forward, they can get seriously injured. If you'd like to watch tutorial videos, including one on Pushback, check out this link here.[22]

> You will also experience a Pushback warning when your Onewheel is running out of battery or in an overcharge situation (your board is charged to 100% and you go down hill, overcharging the battery). In these instances, it's important to lean back to slow down to a stop and then dismount the board.

104. Defendant, through the representations alleged herein, lead consumers to believe that the Pushback warning safety feature will actually and consistently engage to alert them that the board is reaching operational limits for one of many reasons of which the rider cannot or may not be aware, while they are utilizing the Onewheel. Furthermore, Defendant only discloses that "serious injury" can occur where a rider "choose[s] to ignore Pushback." Defendant fails to disclose that, in a number of common scenarios, the board does not have enough power to make the warning occur in a way that is strong enough to alert the rider or at all.

///

---

[22] The link sends consumers to the one minute and thirty-six second video Defendant posted on YouTube.

105.     Plaintiffs saw the safety and pushback representations made in Defendant's videos and on Defendant's website, as those representations are specifically alleged in the preceding paragraphs, and Plaintiffs believed and relied on such representations, prior to purchasing their Onewheel devices.  The videos and content alleged herein were viewed as part of Plaintiffs' research of the device, prior to making their purchases.

106.     The videos and statements alleged herein are available online in number of locations, specifically including on Defendant's official Onewheel YouTube channel, through Defendant's official website, and at the "Academy" section of Defendant's smartphone application, as cited herein.

107.     Said videos (linked from Defendant's website to YouTube and on Defendant's app) and statements (from Defendants FAQs), as identified herein, were viewed by Plaintiffs prior to purchase.  Plaintiffs relied on Defendant's statements and purchased their Onewheels believing that the vehicles would be of the quality that Defendant had affirmatively represented – vehicles that possessed a consistent, detectable, and reliable Pushback warning safety system that would alert riders when the board was reaching operational limits and before it shut down and Nosedived and/or exposure to serious injury.

108.     To the extent that Plaintiffs saw online consumer complaints about Unwarned Nosedive, such complaints were perceived to be the result of situations that would have been avoidable had a rider simply heeded the pushback safety warning.  Plaintiffs had this false perception because of Defendant's concealment and misrepresentations that Onewheels are "safe" as long as riders "respect the board's limits and Pushback safety feature" and concealment of the fact that Pushback often fails to engage properly or at all.

///

///

///

109. Plaintiffs further relied on the concealment and misrepresentation from Onewheel, after purchasing the product, in that they would have returned their Onewheels during the time in which they qualified for a refund had they learned of the defective pushback feature from Onewheel than by experiencing it personally and being told by Onewheel that the event was simply "user error."

110. Plaintiffs would not have purchased the subject Onewheel vehicles, had Defendant disclosed the defect with Pushback safety warning system.

111. Alternatively, if Plaintiffs or any Class Members decided to purchase the subject Onewheels knowing of the defect, it would only have been because Onewheel had implemented a fix of the safety issues (by a number of methods, which could include offering immediate repair, providing other means of warning in addition to Pushback, providing additional power sources for the board), and/or provided a significantly discounted price on the Onewheel. In any scenario, Plaintiffs would have responded differently and/or used their Onewheels differently, had Defendant not wrongfully concealed this safety hazard.

112. Defendant's statements in the above paragraphs demonstrate its misrepresentations and concealment of the product's pushback safety warning failures is not only a hazard to the rider, but to the public safety.

113. Defendant failed to sufficiently disclose to and/or warn consumers of crucial facts regarding the Onewheel's exceptionally dangerous design features, which constitute patently unsafe defects.

114. As alleged herein, Defendant offered, for distribution and sale, the Onewheel XR and Pint models with the specific intention and purpose that these vehicles are used throughout the United States by individuals of almost any age, without any specific training beyond their website and app.

///

///

///

115.   In conducting itself as described throughout this Third Amended Complaint, Defendant represented to consumers that the Onewheels were safe, of merchantable quality, fit for their intended and reasonably foreseeable uses, and had sufficient protections and warnings regarding potential dangers and hazards which reasonable consumers, including Plaintiffs and Class Members, would expect and assume to be provided, in order to make a decision whether to purchase or use a Onewheel.

116.   The defects and hazards described herein are inherent in every Onewheel and happens to all user, regardless of skill level and/or experience.

**Defendant's Warranty Representations**

117.   Within the Onewheel owner's manual Defendant warrants that the Onewheel will be free from defects in materials and workmanship.

118.   Defendant further states that if the Onewheel "proves defective" during the warranty period, Defendant will "Repair the [Onewheel] by means of telephone support, email support, or by providing service at no charge for arts or labor" or it will replace the Onewheel if it cannot repair the owner's Onewheel or it will refund the original amount paid if the defect cannot be repaired or corrected through replacement.

**Plaintiffs' Experiences**

**Plaintiff Smith's Experiences With His Onewheel**

119.   Plaintiff Smith is a veteran of the United States Army and served both as an infantryman and as a pilot.  During his time in the Army, Plaintiff Smith was trained in, among other things, various techniques for how to fall and/or jump out of vehicles without experiencing serious injuries.

120.   On or about June 19, 2020, Plaintiff Smith purchased a Onewheel XR from Defendant from Defendant's website for the retail purchase price.

///

///

121.   Plaintiff Smith first was exposed to the Onewheel by seeing other people using them.   After seeing this, and immediately prior to purchasing a Onewheel XR from Defendant, Plaintiff Smith visited Defendant's website and viewed the material Defendant posted on its website to research whether to purchase the Onewheel.

122.   The material Plaintiff Smith examined included videos and images of people riding Onewheels in various settings, including off road and in urban areas. In these videos and images people were shown carrying objects while riding Onewheels, and the Onewheel was made to appear to be easy to ride safely across these various uses and environments.

123.   Before purchasing his Onewheel XR, Plaintiff Smith watched Defendant's instructional videos on Defendant's website, including those on "pushback," how to safely charge, and how to use the Onewheel.

124.   From viewing this information on Defendant's website, Plaintiff Smith was left with the belief that so long as the user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding "pushback" when it occurred, the Onewheel would be safe and reliable.

125.   Additionally, in viewing this information on Defendant's website, including representations by Defendant that failure to heed "pushback" was the primary cause of accidents involving the Onewheel, Plaintiff Smith formed the belief that user error was the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's "pushback" feature.   Plaintiff Smith relied on these images, videos, and instructions provided on Defendant's website in forming these beliefs.

126.   These beliefs were the basis for Plaintiff Smith's decision to purchase a Onewheel XR, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable. His beliefs were formed based on the images, videos, and instructions provided on Defendant's website.

127. After purchasing his Onewheel XR, Plaintiff Smith downloaded the app for his mobile device that Defendant instructs its customers to use. On that app there are additional videos and demonstrations on how to use and operate the Onewheel XR including instructions regarding the "pushback" feature.

128. It was only after viewing the safety and instructional videos provided and/or made available by Defendant and reading the literature provided by Defendant did Plaintiff Smith begin using his Onewheel XR.

129. Plaintiff Smith followed Defendant's instructions and guidance for the safe operation of the Onewheel including never attempting to reach maximum speed, making sure to charge his Onewheel as directed, and being prepared to heed "pushback" if he experienced it.

130. On or about July 4, 2020, Plaintiff Smith was operating his Onewheel XR on a level dirt trail in Sacramento County, California. On that day, Plaintiff Smith was following the instructions and guidance provided by Defendant for the safe operation of the Onewheel, including not attempting to reach maximum speed, having made sure to charge his Onewheel as directed, and was prepared to heed "pushback" if he experienced it.

131. The trail Plaintiff Smith was traveling on was a man-made trail along the American River in Sacramento, California intended for bicycles, pedestrians, scooters, and other personal transportation devices.

132. Plaintiff Smith was traveling less than 10 miles per hour, with approximately 50 percent charge in his Onewheel's battery, along this level dirt path when, without any warning, his Onewheel shut off and stopped short, coming to an immediate and full stop without any slowdown period at all. One moment his Onewheel was traveling at nearly 10 miles per hour, and the next moment it was completely stopped.

///

///

133.   As his Onewheel came to this sudden, violent, stop, Plaintiff Smith was thrown from straight into the ground, from an Unwarned Nosedive, and received substantial lacerations and bruising to both legs.

134.   Plaintiff Smith did not experience any Pushback at any point before or during his Unwarned Nosedive.  If the Onewheel attempted to provide any Pushback it was already so near the limits of its power system that when it did the force of the Pushback was imperceptible to Plaintiff Smith.

135.   Plaintiff Smith received no warnings of any kind from the device, or the app connected to the device that he was approaching the limits of the Onewheel's performance or that its power system was overtaxed and about to shut down.

136.   After his Unwarned Nosedive, despite the lack of warning, Plaintiff Smith relied on Defendant's communications, advertisements, and instructions and presumed that his incident was somehow the result of user error.

137.   Over the next couple of months Plaintiff Smith's Onewheel continued to suddenly stop without warning while he was operating it.

138.   In one such incident Plaintiff Smith was traveling at approximately 12-15 miles per hour with approximately 40 percent charge in his Onewheel's battery and was fully prepared to heed Pushback, if he experienced it.  Plaintiff Smith was following all instructions provided by Defendant to operate the Onewheel safely.

139.   Despite following these instructions Plaintiff Smith's Onewheel, without any warning, shut off and stopped "short," coming to an immediate and full stop without any "slowdown" period at all.  One moment his Onewheel was traveling at approximately 12-15 miles per hour, and the next moment it was completely stopped.

///

///

140. Plaintiff Smith was thrown from his Onewheel and would have hit the ground if he had not been able to use his military training to "run if off" without falling.

141. Plaintiff Smith did not experience any Pushback at any point prior to or during his Unwarned Nosedive.

142. Plaintiff Smith received no warnings of any kind from the device, or the app connected to the device.

143. Having then concluding that the problems he was experiencing were not user-error after all, Plaintiff Smith contacted Defendant regarding his Onewheel's failures, transmitting the "diagnostic reports" that were generated by the device through the app.

144. After several communications with Defendant, Defendant first attempted to repair Plaintiff Smith's Onewheel remotely, as it offered in the warranty section of the owner's manual.

145. After Defendant tried, and failed, to repair Plaintiff Smith's Onewheel remotely multiple times, Plaintiff Smith, on Defendant's instructions, made one final attempt to repair his Onewheel by sending it back to Defendant so that Defendant could examine the physical hardware and replace or correct any defective parts.

146. Plaintiff Smith was informed by Defendant that, allegedly, there was a defect in the motherboard and charging system of his Onewheel.

147. After Defendant sent Plaintiff Smith his Onewheel back, claiming to have fixed the defect, Plaintiff Smith continued to experience the same problems with his Onewheel: it would, without any warning or Pushback, come to a sudden and violent stop.

///

///

///

148.   After these repeated failures to repair the Onewheel, initially remotely through instructing him on working through the diagnostics, and finally through Defendant physically attempting to repair his Onewheel directly, Plaintiff Smith determined that his Onewheel was inherently defective, not repairable, and unsafe to ride, no matter the precautions he took.

149.   Over the course of time when Plaintiff Smith rode his Onewheel, including multiple times when it came to a sudden, violent, stop, both before and after Defendant's attempts to repair it, Plaintiff Smith never once experienced the Pushback safety feature Defendant focused so heavily in the instructional and marketing materials Plaintiff Smith relied on in deciding to purchase and use a Onewheel.

150.   Had Plaintiff Smith known that the Onewheel was defective, that the pushback feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning, he would not have bought one.

**Plaintiff Rico's Experiences With His Onewheel**

151.   Plaintiff Rico is an experienced skateboarder and roller-blader, having done both for most of his life.

152.   On or about May 27, 2021, Plaintiff Rico purchased a Onewheel Pint from Defendant from Defendant's website for the retail purchase price.

153.   Plaintiff Rico was first exposed to the Onewheel by seeing people riding them in public and at his place of employment, the U.S. Naval Base in San Diego.

154.   Plaintiff Rico had a long walk (of nearly three miles) through a paved parking lot from where he was able to park his car to his place of work and thought that a Onewheel might save him time and effort.

155.   Plaintiff Rico decided to further investigate the Onewheel by going to Defendant's website and viewing the promotional and instructional videos and other materials found there.

156.    Plaintiff Rico viewed all of the promotional and instructional videos and other materials on Defendant's website that he was able to while he was investigating the Onewheel for purchase. This includes having seen images, provided by Defendant, of children riding Onewheel devices and other images of people riding Onewheels while carrying various objects.

157.    From viewing this information on Defendant's website, Plaintiff Rico was left with the belief that so long as the user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding Pushback when it occurred, the Onewheel would be safe and reliable to use. Plaintiff Rico relied on these images, videos, and instructions provided on Defendant's website in forming these beliefs.

158.    Additionally, in viewing this information on Defendant's website, including representations by Defendant that failure to heed Pushback was the primary cause of accidents involving the Onewheel, Plaintiff Rico formed the belief that user error was the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's Pushback feature.

159.    These beliefs were the basis for Plaintiff Rico deciding to purchase a Onewheel Pint, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable, beliefs that were formed based on the images, videos, and instructions provided on Defendant's website.

160.    Based on these beliefs, Plaintiff Rico formed a plan to purchase a Onewheel Pint, familiarize himself with the device, and then give his Pint to his minor son and to purchase a Onewheel XR for himself, as a potential father-son bonding activity.

161.    After purchasing his Onewheel Pint, Plaintiff Rico downloaded the app for his mobile device that Defendant instructs its customers to use. On that app there are additional videos and demonstrations on how to use and operate the Onewheel Pint, including instructions regarding the Pushback feature.

162.   It was only after viewing the safety and instructional videos provided and/or made available by Defendant, and reading the literature provided by Defendant, did Plaintiff Rico begin using his Onewheel Pint.

163.   Not having ridden a Onewheel before, and being aware of the potential dangers from operating such a device without familiarity with it, Plaintiff Rico decided to take his Onewheel Pint on a series of "test rides" on the cul-de-sac in front of his house when there was no traffic.

164.   As Plaintiff Rico grew more confident in riding the Onewheel through these test rides, he still noted that the device seemed to require a far greater deal of attention and focus than Defendant's promotional and instructional materials presented.

165.   In or around June 2021, while on one of his "test rides" of the Onewheel Pint (and traveling along a level surface at only 2-3 miles per hour), while making a gentle and wide turn, Plaintiff Rico hit a very small bump or rock in the road.

166.   Upon hitting this small bump or rock Plaintiff Rico's Onewheel immediately and rapidly accelerated and then equally rapidly decelerated throwing Plaintiff Rico from his Onewheel and into a sidewalk.

167.   Plaintiff Rico sustained injuries including scrapes and bruises on his back and legs.

168.   After this point, Plaintiff Rico's Onewheel would no longer function.

169.   Plaintiff Rico called Defendant to report the errors and request that his Onewheel be fixed. Defendant informed him that he would have to pay to ship his Onewheel to Defendant, and that they would charge him for any repairs, other than those found to be inherent defects in the device.

170.   Plaintiff Rico decided that he considered the Onewheel inherently unsafe and that it was not worth the cost to repair it, as he did not wish to continue to ride his Onewheel anyway.

171. Had Plaintiff Rico known that the Onewheel was defective, that the Pushback feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning, he would not have bought one.

**Plaintiff Reber's Experiences With His Onewheel**

172. Plaintiff Reber is an experienced skateboarder and roller-blader, having done both for most of his life.

173. On or about August 8, 2020, Plaintiff Reber purchased a Onewheel XR from Defendant from Defendant's website for the retail purchase price.

174. Prior to purchasing his Onewheel, Plaintiff Reber watched many videos of people using Onewheel devices, including, upon information and belief, videos posted by Defendant to social media websites such as Youtube.

175. Plaintiff Reber also went to Defendant's website to research the Onewheel device and the available accessories.

176. During Plaintiff Reber's research, he viewed promotional and instructional materials regarding the Onewheel, including photographs of people riding Onewheel devices on various surfaces, including off road and dirt surfaces, and carrying various objects while riding.

177. In the course of this research, Plaintiff Reber became aware of the Pushback feature and how it was supposed to work to alert a rider when the device was approaching any of a number of conditions that would make it unsafe to continue to operate including, but not limited to, an overcharged or undercharged battery, excessive speed, and other conditions.

178. From viewing this information on Defendant's website and information posted to social media, including by Defendant, Plaintiff Reber was left with the belief that so long as the user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding Pushback when it occurred, the Onewheel would be safe and reliable to use.

///

179. Plaintiff Reber relied on these images, videos, and instructions provided on Defendant's website and posted on social media by Defendant in forming these beliefs.

180. Additionally, in viewing this information on Defendant's website and social media, including representations by Defendant that failure to heed Pushback was the primary cause of accidents involving the Onewheel, Plaintiff Reber formed the belief that user error was the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's Pushback feature.

181. These beliefs were the basis for Plaintiff Reber deciding to purchase a Onewheel Pint, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable. His beliefs were formed based on the images, videos, and instructions provided on Defendant's website and on social media postings by Defendant.

182. On or about August 8, 2020, Plaintiff Reber purchased a Onewheel XR. Concurrently, he purchased multiple accessories from Defendant including substantial safety equipment.

183. This safety equipment and other accessories included wrist guards, a helmet, rail guards, and bumpers.

184. After purchasing his Onewheel XR, Plaintiff Reber downloaded the app for his mobile device that Defendant instructs its customers to use. On that app there are additional videos and demonstrations on how to use and operate the Onewheel XR including instructions regarding the "pushback" feature.

185. In all of the material he saw regarding "pushback" and Nosedives, Plaintiff Reber saw that Defendant blamed Nosedives on riders failing to heed "pushback" and that such Nosedives were therefore the result of operator error.

186. It was only after feeling he understood "pushback" that Plaintiff Reber started to ride his Onewheel XR.

///

187.   After using the Onewheel XR for several months, always being careful while riding, in or about May 2021 Plaintiff Reber was riding his Onewheel XR on a level asphalt surface at approximately 15 miles per hour with approximately 10-15 percent charge remaining in his battery.

188.   Without any warning, and without any recent changes in his riding of the Onewheel XR, Plaintiff Reber's Onewheel XR came to a sudden, violent, stop. One moment it was traveling at 15 miles per hour on a flat level surface and the next moment it just shut off and stopped.

189.   When Plaintiff Reber's Onewheel XR came to a sudden, violent stop, it threw him forward into the pavement causing significant bruising and causing substantial damage to the helmet he was wearing (which he had purchased from Defendant).  (see image below)



190.   Plaintiff Reber's Onewheel XR did not Pushback at all before he experienced an Unwarned Nosedive.

///

///

191.    In fact, in the nine months Plaintiff Reber owned his Onewheel XR prior to the above-described Unwarned Nosedive Plaintiff Reber never experienced Pushback.

192.    Until his Onewheel XR decided to send him in an Unwarned Nosedive, Plaintiff Reber had believed, based on Defendant's representations, that his never having experienced Pushback was due to his caution and skill in riding his Onewheel, not due to the Onewheel's defects and the defective nature of the Pushback feature.

193.    Based on this incident, and after Plaintiff Reber realized that the Pushback feature was defective and would not notify him of immediate danger, Plaintiff Reber determined that his Onewheel XR was inherently unsafe and he never rode it again.

194.    Plaintiff Reber contacted Defendant to see if they would repair or replace his Onewheel XR with a non-defective product, but when he reached out, he was told that he would have to pay for the significant shipping expense.

195.    Defendant did not offer to perform any "remote" repairs in this instance, neither did it offer to replace Plaintiff Reber's Onewheel XR, nor did it offer to refund Plaintiff Reber his money.

196.    Plaintiff Reber did not believe he should have to pay such expenses and did not send his Onewheel back to Defendant.

197.    Had Plaintiff Reber known that the Onewheel was defective, that the Pushback feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning, he would not have bought one.

**Plaintiff Loh's Experiences With His Onewheel**

198.    Plaintiff Loh is an experienced skateboarder.

199.    On or about April 1, 2021, Plaintiff Loh purchased a Onewheel Pint from Defendant.

///

200.    Plaintiff Loh viewed all of the promotional and instructional videos and other materials on Defendant's website, that he was able to, while he was investigating the Onewheel for purchase. This includes having seen images, provided by Defendant, of people riding Onewheels while carrying various objects.

201.    From viewing this information on Defendant's website Plaintiff Loh was left with the belief that so long as the user was operating the Onewheel as instructed, not exceeding the device's limits, and heeding Pushback when it occurred, the Onewheel would be safe and reliable to use. Plaintiff Loh relied on these images, videos, and instructions provided on Defendant's website in forming these beliefs.

202.    Additionally, in viewing this information on Defendant's website, including representations by Defendant that failure to heed Pushback was the primary cause of accidents involving the Onewheel, Plaintiff Loh formed the belief that user error was the cause of Nosedives, through people ignoring Defendant's warnings and the Onewheel's Pushback feature.

203.    These beliefs were the basis for Plaintiff Loh deciding to purchase a Onewheel Pint, as he would not have purchased a Onewheel if he did not believe the product was safe and reliable. His beliefs were formed based on the images, videos, and instructions provided on Defendant's website.

204.    After purchasing his Onewheel Pint, Plaintiff Loh downloaded the app for his mobile device that Defendant instructs its customers to use. On that app there are additional videos and demonstrations on how to use and operate the Onewheel Pint including instructions regarding the Pushback feature.

205.    It was only after viewing the safety and instructional videos provided and/or made available by Defendant and reading the literature provided by Defendant did Plaintiff Loh begin using his Onewheel Pint.

///

///

206.   On or about July 18, 2021, Plaintiff Loh was riding his Onewheel Pint on a level surface in a park near his home.  He had approximately 24 percent charge in his battery and was traveling at only 7 or 8 miles per hour.

207.   Without any warning, and without any recent changes in his riding of the Onewheel Pint, Plaintiff Loh's Onewheel Pint came to a sudden, violent, stop. One moment it was traveling at 7 or 8 miles per hour on a flat level surface and the next moment it shut off and stopped.

208.   When his Onewheel Pint performed this Unwarned Nosedive, Plaintiff Loh was thrown from his Onewheel onto the ground.

209.   Plaintiff Loh suffered significant injuries from his Unwarned Nosedive, which included fracturing his elbow.

210.   Plaintiff Loh did not experience any pushback before his Onewheel Pint came to a sudden and violent stop; one moment his Onewheel Pint was functioning normally, under typical and not extreme operating conditions, the next moment it stopped and threw him to the ground.

211.   Plaintiff Loh has not used his Onewheel Pint since the Unwarned Nosedive since he considers it too dangerous to ride.

212.   Had Plaintiff Loh known that the Onewheel was defective, that the Pushback feature did not work as Defendant claims, and/or that the Onewheel would suddenly stop without warning he would not have bought one.

**Notice and Consumer Complaints**

213.   Reports of injuries occurring due to the defects described herein causing Unwarned Nosedives to have been publicly posted on the internet for years. Despite Defendant's knowledge of the hazards posed by the Onewheel, Defendant failed to take any reasonable steps to prevent consumers such as Plaintiffs and Class Members from injuring themselves. Instead, Defendant continued to market its products online, representing that the device is a reliable, fun, and safe device for transportation and recreation for all skill levels and most ages. Meanwhile,

incidents that could *and do* produce serious injuries continue to occur with remarkable frequency.

214.  In addition to the fact that Defendant knew of the dangers posed by the Onewheel's defects, droves of Onewheel owners have posted stories, pictures, and videos on social media websites and outlets,[23] as well as Defendant's website, and have requested that Defendant remedy and/or address the Nosedive and safety/warning issues and defects.  As such, Defendant has undoubtedly been aware of these issues well before Plaintiffs purchased their Onewheels.

215.  Moreover, there is a feature on Future Motion's website where users can discuss issues in a forum.  There are over 240 posts related to the Nosedive phenomenon with over 70,000 views on Future Motion's website.  Many users have reported that they were not exceeding the speed limit and/or had sufficient battery life.  As an example, one consumer reported that the Onewheel froze when riding at a slow speed with 50 percent battery.  Another consumer reported that the Onewheel froze while riding on smooth pavement going only around 10 miles per hour.[24]  Other consumers who experienced the Onewheel seize reported that they did not receive a warning through the device's "pushback" feature and were using the device as intended.

216.  The following posts are representative of many on the Defendant's website and on YouTube:

> **"What is pushback", the one wheel talking head asks rhetorically. Pushback is a poorly thought out design feature where the board "warns" the rider that it will shut**

---

[23] A search for "Onewheel crash," on YouTube, yields numerous pages of video footage and accounts of Onewheel crashes and injuries.  The same results occur when the same search is performed on Facebook, Google, Instagram, and Tiktok to name a few.  Discovering voluminous consumer complaints regarding, and videos of severe injury occurring because of, the defects alleged herein takes little effort.

[24] *See* https://community.onewheel.com/tags/nosedive and
https://community.onewheel.com/tags/nose%20dive and
https://community.onewheel.com/topic/6944/nosediving and
https://community.onewheel.com/topic/8279/nosedive-on-flat-path-crash-3

**down to protect the motor (rider be damned). How about instead of the automatic nose dive to protect the motor, you engineer an auto slow down feature to protect the rider.**

**\*\*\***

**Yeah... my XR doesn't pushback. Ever. Does nosedive though. As my hospital bills can attest.**

**\*\*\***

**You guys need to address the nosedive issue immediately. This is dangerous AF. If the OW is approaching it's limit it should give an alert sound and it should automatically slow down for 1min if it exceeds 19mph. Nosediving should NEVER happen!**

**\*\*\***

**If a safety feature causes people to crash hard, head first, it's not rocket science to assume it's not a very good safety system. Kind of bedazzled why Onewheel hasn't figured that out yet and changed to a safer set up. Hard to take a company like that serious.**

**\*\*\***

**push back is a joke it works some of the time but not all of the time. Going up hill especially it just releases and then you get thrown off like a bucking bronco. The app makes loud noises when you lift off the pad why does it not make loud noises when you are in push back? Seems like we need any update. All I can say people is WEAR PADS AND A HELMET PLEASE Flying off at 10mph is no joke.[25]**

217. The following complaints are excerpts of numerous negative reviews found on Amazon:

///

---

[25] *See* https://onewheel.com/pages/faq and https://www.youtube.com/watch?v=WXYv3eq_9A4 (comments sections) [last accessed Aug. 1, 2022].

**[I]t breaks my heart to say that the Onehweel should be
recalled and prohibited from being distributed because of
its dangerous emergency stopping mechanism…..**

**The nature of my bitchh comes with its emergency brake
mechanism. While in motion the motor turns off forcing the
board to anchor to the ground sending the person on it
flying off like a dart. There's a pushback mechanic wich will
indicate the to slow down or the battery is below 30% to
prevent shut off. In my case there wasn't any warning. The
board shut off at 90% battery while I was riding at 25 miles
per hour. Now I know the counter argument some plev will
make is don't ride at 20 miles an hour but once you sync
with the board its so easy to become one with it thus losing
perception of speed. Like riding a car on the high way….**

**The worst part about it was how I could have potentially
broken my bones once it anchored to the ground at full
speed without warning and I could have potentially died.
Fortunately I was wearing a helmet……**

**This is the first time I've fallen in years. The Onewheel is
simply not reliable or safe at what I call fun mode. The
mechanism is designed to save the board NOT the rider.**[26]

**\*\*\***

**Easy to learn, excellent ride quality, versatile terrain
choices, awesome. On the other hand, based on my
experience and what hundreds of users say on forums: you
will fall and likely be injured, it is just a matter of time. The
frustrating part is that it could be prevented by adding some
simple safety features: 1. Fangs (wheels) under front 2.
Audio warning when the motor senses that is being
overloaded. When the motor is overloaded, it stops resulting
in a sudden "nosedive". I suffered major injuries due to an
unexpected nosedive. There was no discernible "pushback"
it happened 2-3 seconds after accelerating from a dead stop.
The manufacturer is quick to say it is "user error" but I
read all instructions, watched a dozen instructional videos
and had 50+ miles of experience already when this**

---

[26] *See* https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_arp_d_viewpnt_rgt?filterByStar=critical&pageNumber=1, reviewed in the United States, April 27, 2019, by user "Charles Sullivan," entitled "1.0 out of 5 stars DO NOT purchase a onewheel if you're a serious rider," [last accessed Aug. 1, 2022].

**happened. Snowboarded, skateboarded, surfed, windsurfed for over 20 years and never had injuries from those activities - except from this one. Wear a lot of protective equipment, and do not trust the board...**[27]

**\*\*\***

**Loved my onewheel until it powered off abruptly and tossed me on the ground. I suffered major knee injuries due to over-rotation of the lower leg. I'm now unable to walk and may require surgery for full recovery. The worst part is I didn't do anything wrong, meaning there is nothing I could've done differently to prevent this (or another) episode. There was no warning, no "push-back", nothing - the board just powered off while accelerating. It was going in a straight line so no heel/toe lift to cause erroneous disengagement. In fact, after I climbed back up, the lights were completely off indicating it's not a disengagement - but a full power-down. I even turned it back on to check the app, and it says it has 40% battery left.**

**I was lucky we mainly use the onewheel to move around the office only, so the accident happened on a nice flat surface. Otherwise I don't know how many stitches I'm going to need, in addition to the knee over-rotation that no kneepads or helmets could prevent. On hindsight, I should've realized this product is inherently unstable and if anything goes wrong (which it did), the rider is paying for it. The momentum you carry during such accidents are significant, that no amount of "fitness" can save you from injuring yourself (because of the suddenness and speed to which it happens). Your body simply cannot react fast enough.**

**It was fun while it lasted, but I really cannot recommend such a buggy product that involves a high level of risk. Had it powered off somewhere other than my office, I could've died... and that did happen to another unfortunate soul - I learned that he was killed after his one wheel powered off just like mine. That thought send chills down my spine.**

---

[27] *See* https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_arp_d_viewpnt_rgt?filterByStar=critical&pageNumber=1, reviewed in the United States, October 11, 2019, by user "adallos," entitled "2.0 out of 5 stars Great Ride but very Dangerous," [last accessed Aug. 1, 2022].

**Long story short, buy at your own risk - you've been warned.**[28]

\*\*\*

**Please do not purchase this device! Contrary to Onewheel's literature, the motor can and has shut off at any time without warning. Riding responsibly is not enough to keep you safe from unexpected shut-offs. I expect many riders have never experienced this problem, but unfortunately riding the onewheel is essentially playing Russian roulette. Please do not risk your life!**[29]

218.    As demonstrated by these and other consumer complaints, Defendant knew that its Onewheels are dangerously defective when being used as intended. Notwithstanding this knowledge, Defendant took no reasonable steps to warn consumers of such dangers, because it realizes that it could not market and sell the Onewheel if it were to allow consumers to fully understand the severity of the hazard posed using its products.

219.    Despite its knowledge of the hazards posed by the Onewheel's defects, Defendant had failed, and continues to fail, to take reasonable steps to repair, recall, reasonably instruct, reasonably warn, disclose, and advise consumers – either before or after their purchase – of the extreme hazards associated with the vehicle.

220.    Despite notice and knowledge of the defect from the numerous complaints it has received: social media postings, videos and other complaints, and its own internal records, Defendant has not recalled and/or offered an adequate

---

[28]    *See*    https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_arp_d_viewpnt_rgt?filterByStar=critical&pageNumber=1, reviewed in the United States, May 23, 2021, by user "Makkuro," entitled "1.0 out of 5 stars My medical bill will cost more than the board.," [last accessed Aug. 1, 2022].

[29]    *See*    https://www.amazon.com/Future-Motion-Onewheel-Off-Road-Skateboard/product-reviews/B01FRUT4Q8/ref=cm_cr_getr_d_paging_btm_next_2?filterByStar=critical&pageNumber=2, reviewed in the United States, October 11, 2021, by user "Jonathan Van Wickle," entitled "1.0 out of 5 stars Do Not Purchase," [last accessed Aug. 1, 2022].

repair to the Onewheel, nor has it offered non-defective replacements to its customers.

221. Like other activities, riders assume a number of basic risks associated with operating a mobility device; however, that does not include the risk of operating a defective.

222. A number of such riders have narrowly escaped and/or sustained traumatic injuries because of the Pushback defect. Because the risk of shut off and Nosedive, without warning (or without a sufficiently detectable warning), is so substantial and unpredictable, it is not the kind of risk that is inherent or that should be assigned to a consumer who engages in recreation or sports that are innately dangerous.

223. Because Defendant advertises and markets the vehicles as safe for almost any age[30] and skill level, and because the literature provided with the Onewheel vehicles does not adequately disclose or address the dangerousness of the product, reasonable consumers are not likely to discover, or have reason to discover, before purchase, what an unreasonably unsafe hazard their Onewheel poses. The Onewheels are not the safe, fun, and reliable transportation that Defendant represents the vehicles to be, and the Onewheels do not have safety features that perform as Defendant represents that those features do (e.g., heed the "pushback" warnings, and you will be safe).

224. Neither Plaintiffs, Class Members, nor any reasonable, objective consumer would have purchased a Onewheel, nor paid as much for them, had they known the true facts. Facts which Defendant had to, did, and continues to

---

[30] CEO and founder of Onewheel, Kyle Doerksen certainly sees the Onewheel as appropriate for children, as he states that Defendant saw an uptake in Onewheel purchases during the Pandemic because people "need stuff to do with their kids." *See* transcript of Piaggio Fast Forward podcast, Jeffrey Schnapp interview of Kyle Doerksen, Inventor and Chief Engineer of Onewheel and Founder and CEO of Future Motion, Inc., Episode 12, available at: https://www.piaggiofastforward.com/podcast/episode-12, August 28, 2020 [last accessed Aug. 1, 2022].

intentionally conceal from Plaintiff and Class Members to be able to sell these extremely dangerous vehicles.

225.   Defendant sold and continues to sell the Onewheel to its significant financial gain, despite knowledge of the extreme danger posed by these sudden seizures and without taking reasonable steps to mitigate the unreasonable danger or disclose the danger to consumers like Plaintiffs and Class Members.

226.   As a result of Defendant's conduct and omissions, Plaintiff and Class Members purchased and/or otherwise came to own these inherently dangerous and defective vehicles.

227.   As discussed herein, when Class Members seek warranty coverage for the Defect, even within the warranty period, Defendant often fails to respond, fails to adequately respond, fails to repair the issue, and/or denies warranty coverage. Despite Defendant's longstanding knowledge of the danger and defects as set forth herein, Defendant has an internal policy of refusing to provide warranty coverage for the repairs, when the design defects are encountered by consumers. Defendant further, with knowledge and deceptively, uses the defects set forth herein as a basis of voiding the warranty.

228.   Defendant has failed to institute any recall or supplemental warning to Plaintiffs and the Class Members, and Plaintiffs are informed and believe that Defendant has made no other efforts to mitigate for such known defects.

229.   Defendant intentionally, recklessly, and/or negligently concealed, suppressed, and omitted the risks, dangers, defects, and disadvantages of its Onewheel Pint and XR models, and marketed, sold, and distributed these dangerous vehicles as a safe when, in fact, Defendant had reason to know, or did know, knew that the Onewheels were not safe or even useable at all for the intended purposes. Defendant knew that the Onewheel posed a serious safety risk, including the risk of severe head injury, traumatic brain injury, broken bones, maiming, and other catastrophic physical injuries to all riders, including but not limited to

Plaintiff and Class Members – and to persons or property in the vicinity, when the vehicles unexpectedly, suddenly, and inevitably seize and stop.

230. Plaintiff and the Class Members have lost money and suffered monetary damages as a result of their purchases and use of Onewheel vehicles. Plaintiff and Class Members paid a readily ascertainable amount for their Onewheels. Plaintiff and Class Members have or will suffer further damage to the extent that they have or will incur the cost of replacing or retrofitting their Onewheels, and/or replacing them with other safe, merchantable products.

231. As a result of Defendant's unfair, deceptive, and/or fraudulent business practices and other wrongful acts Onewheel owners, including Plaintiff and Class Members, have suffered injuries including an ascertainable loss of money and/or property and/or loss in value.

232. This case seeks protection and relief for Onewheel owners for the harm they have suffered, and the safety risks they face, as the result of Defendant's breaches of express and implied warranties and Defendant's unfair and unlawful trade practices and violations of state laws.

## V. CLASS ALLEGATIONS

233. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek to represent a Class defined as:

> - All persons residing in the United States who purchased the Onewheel Pint or XR (the "Nationwide Class"), within the relevant statute of limitations period.

Excluded from the Class are persons who made such purchases for purpose of resale, all Court personnel involved in the handling of this case, Defendant, its affiliates, respective officers, directors and employees, and any entity that has a controlling interest in Defendant.

234. Plaintiffs also seek, pursuant to Fed. R. Civ. P. 23(c)(5), to represent the following subclasses:

- All persons residing in the United States who purchased the Onewheel Pint or XR directly from Defendant Future Motion (the "Nationwide Direct Purchase Subclass"), within the relevant statute of limitations period.

-All persons residing in California who purchased the Onewheel Pint or Onewheel XR (the "California Subclass"), within the relevant statute of limitations period.

-All persons residing in Hawaii who purchased the Onewheel Pint or Onewheel XR (the "Hawaii Subclass"), within the relevant statute of limitations period.

-All persons residing in Pennsylvania who purchased the Onewheel Pint or Onewheel XR (the "Pennsylvania Subclass"), within the relevant statute of limitations period.

235. Together, all of the above subclasses shall be collectively referred to herein as "The Subclasses."

236. Together, the California Subclass, the Hawaii Subclass, and the Pennsylvania Subclass shall be collectively referred to herein as the "State Subclasses."

237. Together, the Nationwide Class, the Nationwide Direct Purchase Subclass, the California Subclass, the Hawaii Subclass, and the Pennsylvania Subclass shall be collectively referred to herein as the "Class."

238. Subject to additional information obtained through further investigation and discovery, the above-described Class and Subclasses may be modified or narrowed as appropriate, including through the use of multi-state subclasses. As such, Plaintiffs reserve the right to modify, change, or expand the Class definitions.

**Numerosity**

239. Upon information and belief, the Class is so numerous and geographically dispersed that individual joinder of all members is impracticable. While the exact number and identities of individual members of the Class are

unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes that tens of thousands of Onewheels have been sold throughout the United States, including in California, Hawaii, and Pennsylvania.

**Existence and Predominance of Common Questions of Fact and Law**

240.    Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to:

- Whether the Onewheels are predisposed to the defects;
- Whether Defendant knowingly failed to disclose the existence and cause of the defects;
- When Defendant first learned of the defects;
- Whether Defendant's conduct constitutes a violation of the state consumer protection statutes and counts asserted herein;
- Whether Defendant's conduct constitutes a breach of express warranty;
- Whether Defendant's conduct constitutes a breach of implied warranty;
- Whether Defendant's conduct constitutes unjust enrichment; and
- Whether Plaintiffs and Class Members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

**Typicality**

241.    All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased a Onewheel with the defects. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

**Adequacy**

242.     Plaintiffs are adequate representatives because Plaintiffs' interests do not conflict with the interests of the Class and Sub-Classes that Plaintiffs seeks to represent, Plaintiffs have retained counsel that are competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the Class and Sub-Classes will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority**

243.     A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's sales records, warranty claims, registration records, and the database of complaints.

///

///

///

///

**Injunctive Relief**

244.   Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

**COUNT ONE**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

245.   Plaintiffs and the Class Members repeat and reallege paragraphs 1-72, 90-93, 117-212, 227, 233-244 as though fully set forth in this Count.

246.   Defendant provided Plaintiffs and Class Members with the express warranties set forth herein.

247.   Specifically, Defendant warranted that its Onewheels were free from defects in materials or workmanship; and that in the event the said vehicles suffered from defects in either of these respects, Defendant would correct such defects at no cost to Plaintiffs or Class Members, through remote repairs, physical repairs to the Onewheels, replacement or refund.

248.   Additionally, Defendant further represented "Future Motion provides paid repairs for faulty products which are out of warranty."

249.   Defendant's Onewheels were not free from defects in materials or workmanship because the vehicles suffer from the defects alleged herein.

250.   Defendant has refused to and continues to refuse to comply with the terms of its warranty to correct the defects outlined herein.

251.   Plaintiff(s) have complied with their obligations under the express warranty at all times relevant herein.

252.   As a result of Defendant's breach of express warranty, Plaintiffs and Class Members have suffered damages.

///

**COUNT TWO**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)**

253.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-72, 90-93, 117-212, 227, 233-244 as though fully set forth in this Count.

254.    Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Onewheel vehicles.  Defendant knew or had reason to know of the specific use for which the Onewheel vehicles were purchased.

255.    Defendant provided Plaintiffs and the Class Members with an implied warranty that the Onewheel vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Onewheel vehicles are not fit for their ordinary purpose of providing fun, reliable, and safe transportation / recreation, at the time of sale or thereafter, because, *inter alia*, the Onewheel vehicles suffer from the defects set forth herein. Therefore, the Onewheel vehicles are not fit for their particular purpose of providing fun and safe transportation / recreation.

256.    Defendant impliedly warranted that the Onewheel vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Onewheel vehicles and their components were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable and would not experience defects of the nature set forth herein; and (ii) a warranty that the Onewheel vehicles and their components would be fit for their intended use while the Onewheel vehicles were being operated.

257.    Contrary to the applicable implied warranties, the Onewheel vehicles and their components, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe product. Instead, the Onewheel vehicles suffer from the defects described herein.

///

258.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## COUNT THREE
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class Or, Alternatively, the Subclasses)

259.   Plaintiffs and the Class Members repeat and reallege paragraphs 1-72, 90-93, 117-212, 227, 233-244 as though fully set forth in this Count.

260.   Defendant has been, and continues to be, unjustly enriched, to the detriment of the Class, as a result of its conduct directed against Plaintiff and the Class Members and its resulting collection of money from the sale of the Onewheels.

261.   Defendant has unjustly benefitted through the unlawful and/or wrongful collection of money from the sale of the Onewheels and continues to so benefit to the detriment and at the expense of Class Members.

262.   Defendant had knowledge that this benefit was conferred upon them.

263.   Accordingly, Defendant should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and Class Members, who seek disgorgement of Defendant's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct and seek restitution and/or rescission for the benefit of the Plaintiff and Class Members, in an equitable and efficient fashion to be determined by the Court.

264.   Plaintiff and the Class Members are entitled to the imposition of a constructive trust upon Defendant such that their enrichment, benefit, and ill-gotten gains may be allocated and distributed equitably by the Court to and/or for the benefit of Class Members.

///

///

///

# COUNT FOUR

## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF EXPRESS WARRANTY

### (Cal. Civ. Code §§ 1791.2 & 1793.2(d))

### (On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)

265.   Plaintiffs and the Class Members repeat and reallege paragraphs 1-72, 90-93, 117-212, 227, 233-244 as though fully set forth in this Count.

266.   Plaintiffs and the Class Members who purchased Onewheels are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

267.   The Onewheels are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

268.   Defendant is a "manufacturer" of the Onewheels within the meaning of Cal. Civ. Code § 1791(j).

269.   Defendant made express warranties to Plaintiffs and the Class Members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

270.   Plaintiff Smith and Class Members have requested repairs of the defects set forth herein, pursuant to the express warranty, but have failed to receive such repairs.

271.   Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiffs and the Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Onewheels, or the overpayment or diminution in value of the vehicles.

272.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the Class Members are entitled to costs and attorneys' fees.

///

///

///

**<u>COUNT FIVE</u>**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF IMPLIED WARRANTY**

**(Cal. Civ. Code §§ 1791.2 & 1792)**

**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)**

273.    Plaintiffs and the Class Members repeat and reallege paragraphs 1-72, 90-93, 117-212, 227, 233-244 as though fully set forth in this Count.

274.    Plaintiffs and the Class Members who purchased Onewheels are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

275.    The Onewheels are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

276.    Defendant is a "manufacturer" of the Onewheels within the meaning of Cal. Civ. Code § 1791(j).

277.    Defendant impliedly warranted to Plaintiffs and the other Class Members that the Onewheel vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

278.    However, the Onewheel vehicles do not have the quality that a reasonable purchaser would expect due to the defects described herein.

279. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; and (4) conform to the promises or affirmations of fact made on the container or label.

280.    The Onewheel vehicles would not pass without objection in the trade because of the defects alleged herein.

281.    The Onewheel vehicles are not fit for the ordinary purpose for which they are used because of the defects alleged herein.

282. The Onewheel vehicles do not conform to the promises or affirmations of fact made by Defendant.

283. Defendant breached the implied warranty of merchantability by manufacturing and selling Onewheel vehicles containing the defects alleged herein. The existence of said defects have caused Plaintiffs and the other Class Members to not receive the benefit of their bargain and have caused Onewheel vehicles to depreciate in value.

284. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially impairs their value to Plaintiffs and the other Class Members. Plaintiffs and the other Class Members have been damaged as a result of the diminished value of the Onewheel vehicles.

285. Plaintiffs and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Onewheel vehicles, or the overpayment or diminution in value of their Onewheel vehicles.

286. Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class Members are entitled to costs and attorneys' fees.

## COUNT SIX
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)**

287. Plaintiffs and the Class Members repeat and reallege paragraphs 1-244, as though fully set forth in this Count.

288. California Business & Professions Code section 17200, *et seq.*, precludes unfair competition, i.e., the employment of any unlawful, unfair or fraudulent business acts or practices; and any unfair, deceptive, untrue or misleading advertising violate Cal. Bus. & Prof. Code section 17500. This

prohibition extends to any act, omission or conduct or pattern of activity engaged in within California which affects the rights of consumers within the State of California and elsewhere.

289.    In marketing and selling the Onewheel vehicles, and in otherwise causing the Onewheel vehicles to be placed into the stream of commerce for use by consumers nationally, in the State of California, and elsewhere without disclosing the serious hazard they posed, and in continuing to conceal this critical safety information regarding the dangers associated with the use of the Onewheels, Defendant knowingly made available for consumer use an inherently dangerous and patently unsafe product which is not safely useable for its intended purpose. Defendant was and remains obligated to disclose the hazards associated with the Onewheels because of the Class Members' reasonable expectation that the Onewheels would not, amongst other defects, under normal and expected use, suddenly and abruptly, halt, and Nosedive, thereby ejecting riders off the board, creating the risk of permanent bodily injury or death.  In failing to disclose this and other critical safety issues, which were known and apparent to Defendant, but not to reasonable consumers, including Plaintiffs and the Class Members, Defendant engaged in fraudulent, unlawful, and unfair conduct under Cal. Bus. & Prof. Code section 17200, as set forth herein.

290.    The conduct alleged in this Third Amended Complaint is unlawful within the meaning of the UCL in that Defendant knowingly violated the state and federal laws addressed herein.

291.    Defendant's conduct is unfair within the meaning of the UCL in that the alleged consumer injury is substantial, creating an unreasonable risk for catastrophic physical injury to any persons using the Onewheels.  There is no countervailing benefit to having or continuing to conduct themselves in the wrongful manner averred to herein.

///

292.   Were it not for the unfair competition of Defendant, Plaintiffs and the Class Members would not have purchased Onewheels and would not have subjected themselves to the risks inherent in the use thereof.

293.   The Class Members have and will continue to suffer injury in fact and monetary loss as a direct result of Defendant's unfair competition in that each has expended money to purchase Onewheels and has potentially or actually expended money for the treatment of injuries sustained due to the use thereof.

294.   As a result of Defendant's unfair competition, Plaintiffs and the Class Members are entitled to appropriate equitable relief including injunctive relief (including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and the Class Members with appropriate curative notice regarding the existence and cause of the design defect; and to correct its advertising and marketing practices as described herein), and available monetary relief in the form of restitution (including fluid recovery if certified as a class action).   Plaintiffs are also entitled to recover penalties as well as an award of attorneys' fees for prosecuting this action.

**COUNT SEVEN**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and the California Subclass)**

295.   Plaintiffs and the Class Members repeat and reallege paragraphs 1-244, as though fully set forth in this Count.

296.   California Business & Professions Code § 17500 states:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or

other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

297. Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

298. Defendant has violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Onewheels as set forth in this Complaint were material and likely to deceive a reasonable consumer.

299. Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, because of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their Onewheels, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Defendant with respect to the safety and reliability of the vehicles. Defendant's representations were untrue because the Onewheels are distributed with defects that can cause sudden stoppage that hurls the rider headfirst into the ground. Had Plaintiffs and the Class Members known this, they would not have purchased their Onewheels and/or paid as much for them. Accordingly, Plaintiffs and the Class Members overpaid for their Onewheels and did not receive the benefit of their bargain and have caused Onewheel vehicles to depreciate in value.

///

///

///

///

**COUNT EIGHT**

**VIOLATIONS OF CAL. CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, et seq.)**
**(On Behalf of the Nationwide Class Or, Alternatively, the Nationwide Direct Purchase Subclass and/or the California Subclass)**

300.  Plaintiffs and the Class Members repeat and reallege paragraphs 1-244, as though fully set forth in this Count.

301.  Defendant is a person as that term is defined in California Civil Code § 1761(c).

302.  Plaintiffs and the Class Members are "consumers" as that term is defined in California Civil Code §1761(d), and the Onewheels, described herein, constitute goods within the meaning of the CLRA.

303.  Defendant has violated, and continues to violate, the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale of the Onewheels to Plaintiff Smith, Plaintiff Rico, and the Class Members in violation of, *inter alia*, the following provisions:

   a.  Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

   b.  Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

   c.  Advertising goods and services with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

   d.  Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

///
///

e. Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

304. Plaintiffs and the Class Members, in purchasing and using Defendant's Onewheels, did reasonably act in response to Defendant's above representations or would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiffs and the Class Members have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

305. Defendant's unfair and/or deceptive acts and/or practices occurred repeatedly in Defendant's business, were and are capable of deceiving a substantial portion of the purchasing public, and imposed, and still impose, a serious safety risk on the public.

306. Defendant knew that the subject Onewheels and, specifically, the purported safety feature Pushback were defectively designed and/or manufactured and were inconsistent, unpredictable, and would fail, endangering unsuspecting consumers (by the board immediately shutting off and sending riders into Nosedive), and were not suitable for their intended use.

307. Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the subject Onewheels and, specifically, the defective nature of the Pushback feature and insufficient safety warnings, which result in the Onewheels abruptly stopping and Nosediving, because:

a. Defendant was in a superior position to know the true state of facts about the defects set forth herein;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Onewheels and had dangerous safety defects until manifestation of the defect; and

c. Defendant actively concealed the safety defect and the associated repair costs by asserting to Plaintiffs and Class Members that the cause of their problems with Pushback and Nosedive was the result of "user error."

308. In failing to disclose the defects and the associated safety risks and resulting repair costs, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

309. The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Onewheel vehicle or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Onewheels and their safety issues, they would not have purchased the Onewheels or would have paid less for them.

310. In accordance with California Civil Code § 1780(a), Plaintiffs and Class Members seek injunctive relief for Defendant's violations of the CLRA.

311. On or about December 10, 2021, on behalf of Plaintiffs Smith and Rico, Plaintiffs' counsel provided Defendant with notice of their violations of the CLRA, pursuant to California Civil Code § 1782(a) and (d), regarding the defect in the Onewheel models set forth herein. Defendant has not responded to Plaintiffs' requests and has refused to provide any relief requested to Plaintiffs or Class Members.

312. Plaintiffs and the other Class Members' injuries were proximately caused by Defendant's violations, acts, and/or omissions, as set forth herein.

313. As a result, Plaintiffs and the other Class Members seek all relief available under the CLRA. Plaintiffs seeks for themselves, and the Class Members, compensatory and punitive damages under the CLRA, and also seek to recover attorneys' fees and costs pursuant to California Civil Code §§ 1780 and 1781.

///

## COUNT NINE
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW
### (73 Pa. Stat. Ann. §§ 201-11, *et seq.*)
### (On Behalf of the Pennsylvania Subclass)

314. Plaintiff Reber and the Pennsylvania Subclass repeat and reallege paragraphs 1-244, as though fully set forth in this Count.

315. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce ..." 73 PA. STAT. ANN. § 201-3.

316. The Onewheel's design, manufacture, distribution, marketing, advertising, labeling, and sale of the Onewheel vehicles constitutes "trade and commerce" under 73 PA. STAT. ANN. § 201-2(3).

317. Defendant violated the UTPCPL by: representing that the Onewheel vehicles have certain safety characteristics and benefits that they do not have (73 PA. STAT. ANN. § 201-2(4)(v)); failing to comply with the terms of a written guarantee or warranty given to the buyer (73 PA. STAT. ANN. § 201-2(4)(xiv)); and engaging in deceptive conduct which creates a likelihood of confusion or misunderstanding about the Onewheel vehicles (73 PA. STAT. ANN. § 201-2(4)(xxi)).

318. Defendant's deceptive conduct and its false and misleading statements about Onewheel vehicle safety and dependability and omissions regarding the Nosedive and other defects set forth herein are facts that a reasonable person would have considered material in deciding whether or not to purchase (or how much they were willing to pay to purchase) the Onewheel vehicles.

319. Defendant's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff Reber and members of the Pennsylvania Subclass, and were likely to mislead reasonable consumers, including Plaintiff Reber and the Pennsylvania Subclass.

320. Had Defendant disclosed all material information regarding the Onewheel vehicle's defects, as alleged in this Third Amended Complaint, Plaintiff Reber and the Pennsylvania Subclass would not have purchased the Onewheel vehicles or would have paid less to do so.

321. Defendant's deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiff Reber, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Pennsylvania Subclass.

322. Plaintiff Reber and the Pennsylvania Subclass justifiably acted or relied to their detriment upon Defendant's misrepresentations and omissions of fact, as evidenced by Plaintiff Reber's and the Pennsylvania Subclass' purchasing of Onewheel vehicles.

323. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Reber and the Pennsylvania Subclass have suffered ascertainable loss and actual damages. Plaintiff Reber and the Pennsylvania Subclass would not have purchased the Onewheel vehicles or would have paid less for them had Defendant disclosed the truth about the defects alleged herein. Plaintiffs Reber and the Pennsylvania Subclass also suffered diminished value of their Onewheel vehicles.

324. Defendant had notice of its conduct as alleged herein.

325. Pursuant to 73 PA. STAT. ANN. § 201-9.2(a), Plaintiff Reber and the Pennsylvania Subclass also seek an order for: actual and treble damages; appropriate injunctive relief (including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff Reber and the Pennsylvania Subclass with appropriate curative notice regarding the existence and cause of the design defect; and to correct their

advertising and marketing practices as described herein); costs; and reasonable attorneys' fees.

## COUNT TEN

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. §§ 2314 and 2A212)
### (On Behalf of the Pennsylvania Subclass)

326.   Plaintiff Reber and the Pennsylvania Subclass repeat and reallege paragraphs 1-72, 90-93, 117-212, 227, 233-244, as though fully set forth in this Count.

327.   Defendant is and was at all relevant times a "merchant" with respect to Onewheel vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of Onewheel vehicles under § 2103(a).

328.   The Onewheel vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

329.   A warranty that the Onewheel vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied in law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

330.   Onewheel vehicles, when sold, and at all times hereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Onewheel vehicles are to be used. The Onewheel vehicles are inherently defective, as detailed in this Third Amended Complaint.

331.   Plaintiff Reber and the Pennsylvania Subclass suffered injuries due to the defective nature of the Onewheel vehicles and Defendant's breach of the implied warranty of merchantability.

332.   Defendant had notice of its breach as alleged herein.

333.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Reber and the Pennsylvania Subclass have been damaged in an amount to be proven at trial.

## COUNT ELEVEN

### VIOLATION OF HAWAII'S UNFAIR
### DECEPTIVE ACTS & PRACTICES STATUTE
### (H.R.S. §§ 481A, *et seq.*)

### (On Behalf of the Hawaii Subclass)

334.   Plaintiff Loh and the Hawaii Subclass repeat and reallege paragraphs 1-244, as though fully set forth in this Count.

335.   This cause of action is brought pursuant to Hawaii's UDAP, H.R.S. §§ 481A-1, et seq.

336.   Defendant is a "person" under H.R.S. § 481A-2 because it is a corporation.

337.   Defendant violated the UDAP by misrepresenting and omitting material facts regarding Subject Vehicles, and by engaging in the following practices proscribed by H.R.S. § 481A-3 in transactions that were intended to result in, and did result in, the sale of Onewheel vehicles:

> a. representing that Onewheel vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

> b. representing that Onewheel vehicles are of a particular standard, quality, or grade if they are of another;

> c. advertising Onewheel vehicles with intent not to sell them as advertised; and

> d. engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

338.   Defendant violated the UDAP by selling Onewheel vehicles it knew possessed defects, as set forth herein, exposing riders, pedestrians, and others on the road (cars, bicycles, etc.) to an unreasonable safety risk.  Defendant omitted from Plaintiff Loh and the Hawaii Subclass, to whom it had a duty to disclose, the material fact that the Onewheel vehicles were sold with defects, as set forth herein,

that created an unreasonable safety risk. This is a fact that a reasonable consumer would consider important in their purchase decision.

339. Pursuant to H.R.S. § 481A-4(a), Plaintiff Loh the Hawaii Subclass seeks a court order enjoining the above-described wrongful acts and practices of Defendant, ordering Defendant to extend repair remedies to the Hawaii Subclass, and awarding restitution and disgorgement.

340. Pursuant to H.R.S. § 481A-4(b), Plaintiff Loh and the Hawaii Subclass, seeks reasonable attorney's fees together with costs of suit. Defendant willfully engaged in the above trade practices knowing them to be deceptive.

## COUNT TWELVE

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (H.R.S. § 490:2-314)

### (On Behalf of the Hawaii Subclass)

341. Plaintiff Loh and the Hawaii Subclass repeat and reallege paragraphs 1-72, 90-93, 117-212, 227, 233-244, as though fully set forth in this Count.

342. Defendant is and was, at all relevant times, a "merchant" with respect to Onewheel vehicles as defined by H.R.S. § 490:2-104, and manufactured, distributed, warrantied and/or sold Onewheel vehicles.

343. Pursuant to H.R.S. § 490:2-314, a warranty that Onewheel vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold was implied by law in the instant transactions.

344. Plaintiff Loh and the Hawaii Subclass purchased Onewheel vehicles manufactured and sold by Defendant in consumer transactions.

345. Onewheel vehicles, when sold, and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which they are used. Onewheel vehicles left Defendant's possession and control with the defects alleged herein, and renders them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to public safety. Plaintiff Loh and the Hawaii Subclass

used their Onewheel vehicles in the normal and ordinary manner for which they were distributed and advertised.

346. Defendant knew before selling or leasing the Onewheel vehicles to Plaintiff Loh and the Hawaii Subclass, or earlier, that the Onewheel vehicles were manufactured with the defects alleged herein that may cause the vehicles to among other things to inexplicably Nosedive, rendering Onewheel vehicles unfit for their ordinary purpose.

347. Despite Plaintiff Loh and the Hawaii Subclass normal and ordinary use, maintenance, and upkeep, the Onewheel vehicles had defect that existed at the time Defendant transferred the Onewheel vehicles from its possession or control. The defect rendered Onewheel vehicles unfit for their ordinary use and incapable of performing the tasks they were distributed, sold, and advertised to perform.

348. As a result, the Onewheel vehicles are not of fair or average quality. Nor would the vehicles pass without objection in the recreational transportation industry. The fact that the defects set forth herein can cause and have caused death (and can and have resulted in numerous life-altering injuries) renders the Onewheel vehicles unsafe to use, and requires repair or replacement before safe, ordinary use can resume.

349. All conditions precedent have occurred or been performed.

350. Defendant had actual notice of its breach of warranty. Through consumer complaints, warranty records, communications with its agents and employees *inter alia*, Defendant knew of the defect, the existence and ubiquity of which it knew much earlier.

351. Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first issued these warranties and their limitations that the defect existed, and that certain defects would void said warranties.

Defendant also failed to take necessary actions to adequately disclose or cure the defects after the existence of the defects came to the public's attention, and squandered its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, cure its breaches of warranty, or otherwise attempt to resolve or address Plaintiff Loh's and the Hawaii Subclass' claims.

352.    As a direct and foreseeable result of the defect in Onewheel vehicles, as set forth herein. Plaintiff Loh and the Hawaii Subclass have suffered diminution in the value of Onewheel vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Onewheel vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

353.    Plaintiff Loh and the Hawaii Subclass have had sufficient direct dealings with Defendant or its agents to establish privity of contract between themselves and Defendant. Privity, nevertheless, is not required in this case because Plaintiff and the other Class Members were intended third-party beneficiaries of contracts between Defendant and its dealers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of Onewheel vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff Loh and the Hawaii Subclass. Privity is also not required because Plaintiff Loh and the Hawaii Subclass' Onewheel vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that this Court:

///

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class and Subclasses as defined above;

B. Appoint Plaintiffs as the representatives of the Class and Subclasses and their counsel as counsel for the Class and Subclasses;

C. Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs, Class Members, and Subclass Members are entitled;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Onewheels and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class and Subclass members with appropriate curative notice regarding the existence and cause of the design defect; and to correct the advertising and marketing practices as described herein;

F. Award reasonable attorney's fees and costs as permitted by law; and

G. Grant such further relief that this Court deems appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 1, 2022                    Respectfully submitted,


*/s/ John T. Stralen*
M. Anderson Berry, Esq.
Clayeo C. Arnold, Esq.
John T. Stralen, Esq.
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW**
**CORP.**
865 Howe Avenue
Sacramento, CA 95825

Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
carnold@justice4you.com
jstralen@justice4you.com

*Attorneys for the Plaintiffs and the Class*